**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

LISA GUARIGLIA, MICHELINE BYRNE and
MICHELE EMANUELE, individually and on
behalf of all others similarly situated,

               Plaintiffs

               v.

THE PROCTER & GAMBLE COMPANY, and
THE PROCTER & GAMBLE
DISTRIBUTING LLC,

               Defendants.

Case No. 2:15-cv-04307-JMA-SIL

**ORAL ARGUMENT REQUESTED**
**JURY TRIAL DEMANDED**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS THE PROCTER & GAMBLE COMPANY AND THE PROCTER &
## GAMBLE DISTRIBUTING LLC'S MOTION TO DISMISS THE COMPLAINT OR IN
## THE ALTERNATIVE TO STRIKE THE CLASS ALLEGATIONS

Trenton H. Norris*
trent.norris@aporter.com
Stephanie I. Fine*
stephanie.fine@aporter.com
**ARNOLD & PORTER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, California 94111
Telephone: (415) 471-3100
Facsimile:  (415) 415-3400

Susan L. Shin
susan.shin@aporter.com
**ARNOLD & PORTER LLP**
399 Park Avenue
New York, New York 10022-4690
Telephone: (212) 715-1000
Facsimile:  (212) 715-1399

*Attorneys for Defendants THE PROCTER & GAMBLE COMPANY*
*and THE PROCTER & GAMBLE DISTRIBUTING LLC*
*Admitted pro hac vice*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ......................................................................................................................... 3

LEGAL ANALYSIS.................................................................................................................... 3

I.     The Court Should Dismiss Plaintiffs' Claims Because They Offer Nothing More Than Legal Conclusions as the Basis for Every Claim. ............................... 4

       A.    Plaintiffs' Failure to Identify a Defect is Fatal to Their Claims. ................ 4

              1.    Plaintiffs' Claims of Breach of Implied Warranties Fall With Plaintiffs' Design and Manufacturing Defect Claims..................... 8

       B.    Plaintiffs' Failure to Identify a Material Omission or Misstatement Extinguishes Any of Plaintiffs' Remaining Claims................................... 9

II.     In the Alternative, the Court Should Strike the Class Allegations from the Complaint Because the Proposed Class Cannot Be Certified............................. 13

       A.    The Proposed Class of All Purchasers of Tide Pods Lacks Standing....... 15

       B.    Even a Class Only of Allegedly Injured Consumers Is Not Ascertainable............................................................................................. 16

       C.    Plaintiffs Cannot Establish That They Are Typical of the Proposed Classes......................................................................................................... 17

       D.    Plaintiffs Cannot Establish Commonality or Predominance Because Liability on Each Class Member's Claims Depends on Individualized Issues.......................................................................................................... 19

       E.    Plaintiffs Cannot Maintain a Nationwide Class Action............................ 22

       F.    Damages Cannot Be Measured on a Class-Wide Basis............................ 23

       G.    Certification of a Class Under Rule 23(b)(2) Would Be Inappropriate.... 24

CONCLUSION........................................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*Ackerman v. Coca-Cola Co.*,
   No. 09 CV 395, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ..............................24

*Am. Guarantee & Liab. Ins. Co. v. Cirrus Design Corp.*,
   No. 09 Cv. 8357, 2010 WL 5480775 (S.D.N.Y. Dec. 30, 2010)................................6

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..............................................................................15, 19, 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................3, 4

*Barban v. Rheem Textile Sys., Inc.*,
   No. 01-CV-8475, 2005 WL 387660 (E.D.N.Y. Feb. 11, 2005), *aff'd*, 147 F.
   App'x 222 (2d Cir. 2005).........................................................................................8

*Barrett v. Black & Decker (U.S.) Inc.*,
   No. 06 Civ. 1970, 2008 WL 5170200 (S.D.N.Y. Dec. 9, 2008)................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................3

*Berenblat v. Apple, Inc.*,
   Nos. 08-4969, 09-1649, 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ....................11

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010).................................................................................18

*Cabral v. Supple, LLC*,
   No. ED 12-00085, 2013 U.S. Dist. LEXIS 184170 (C.D. Cal. Feb. 14, 2013) ......................19

*Carlson v. The Gillette Co.*,
   No. CV 14-14201, 2015 WL 6453147 (D. Mass. Oct. 23, 2015)................................7

*Carrera v. Bayer Corp.*,
   727 F.3d 300 (3d Cir. 2013)...........................................................................16, 17

*Cavanagh v. Ford Motor Co.*,
   No. 13-CV-4584, 2014 WL 2048571 (E.D.N.Y. May 19, 2014) ....................1, 5, 6

*Charron v. Pinnacle Grp. N.Y. L.L.C.*,
   269 F.R.D. 221 (S.D.N.Y. 2010) ........................................................................17

*Colley v. Procter & Gamble Co.*,
   No. 1:16-cv-918, 2016 WL 5791658 (S.D. Ohio Oct. 4, 2016) ...........................15, 19, 21, 23

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ..................................................................................................14, 23

*Davito v. AmTrust Bank*,
   743 F. Supp. 2d 114 (E.D.N.Y. 2010) ...................................................................................14

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006).........................................................................................14, 16

*DiBartolo v. Abbott Labs.*,
   914 F. Supp. 2d 601 (S.D.N.Y. 2012).....................................................................................6

*Felix v. Northstar Location Servs., LLC*,
   290 F.R.D. 397 (W.D.N.Y. 2013).........................................................................................16

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982)............................................................................................................24

*Goldin v. Smith & Nephew, Inc.*,
   No. 12 Civ. 9217, 2013 WL 1759575 (S.D.N.Y. Apr. 24, 2013).........................5, 6, 8, 9, 10

*Goodman v. Genworth Fin. Wealth Mgmt., Inc.*,
   300 F.R.D. 90 (E.D.N.Y. 2014) ............................................................................................14

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009)....................................................................................................4

*Ilhardt v. A.O. Smith Corp.*,
   168 F.R.D. 613 (S.D. Ohio 1996) ........................................................................................23

*In re Fosamax Prods. Liab. Litig.*,
   248 F.R.D. 389 (S.D.N.Y. 2008) ..........................................................................................19

*In re Fosamax Prods. Liab. Litig.*,
   924 F. Supp. 2d 477 (S.D.N.Y. 2013)....................................................................................7

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*,
   966 F. Supp. 1525 (E.D. Mo. 1997), *aff'd*, 172 F.3d 623 (8th Cir. 1999)............................23

*In re: Gen. Motors LLC Ignition Switch Litig.*,
   No. 14-MD-2543, 2016 WL 796846 (S.D.N.Y. Feb. 25, 2016)............................................11

*In re Grand Theft Auto Video Game Consumer Litig. No. II*,
   251 F.R.D. 139 (S.D.N.Y. 2008) ....................................................................................22, 23

iii

*In re Initial Pub. Offerings Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006).............................................................................16

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    209 F.R.D. 323 (S.D.N.Y. 2002) ..................................................................19

*In re Vitamin C Antitrust Litig.*,
    279 F.R.D. 90 (E.D.N.Y. 2012) ............................................................16, 17

*Johnson v. Nextel Commc'ns. Inc.*,
    780 F.3d 128 (2d Cir. 2015)..........................................................................23

*Jones v. Allercare, Inc.*,
    203 F.R.D. 290 (N.D. Ohio 2001) ......................................................19, 21, 22

*Karhu v. Vital Pharm., Inc.*,
    No. 13-60768-CIV, 2014 WL 815253 (S.D. Fla. Mar. 3, 2014), *aff'd*, 621 F.
    App'x 945 (11th Cir. 2015) ..........................................................................17

*Kassman v. KPMG LLP*,
    925 F. Supp. 2d 453 (S.D.N.Y. 2013)...........................................................14

*Lewis v. Abbott Labs.*,
    No. 08 Civ. 7480, 2009 WL 2231701 (S.D.N.Y. July 24, 2009) ...............6, 8

*Loreto v. Procter & Gamble Co.*,
    No. 1:09-cv-815, 2013 U.S. Dist. LEXIS 162752 (S.D. Ohio Nov. 15, 2013) ....................15

*Luciano v. Eastman Kodak Co.*,
    No. 05-CV-6463T, 2006 WL 1455477 (W.D.N.Y. May 25, 2006) ...............13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)......................................................................................15

*Lyon v. Caterpillar, Inc.*,
    194 F.R.D. 206 (E.D. Pa. 2000).....................................................................23

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012)...........................................................................17

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .........................................................................23

*McGee v. E. Ohio Gas Co.*,
    200 F.R.D. 382 (S.D. Ohio 2001) .................................................................15

*Moheb v. Nutramax Labs. Inc.*,
    No. CV 12-3633, 2012 WL 6951904 (C.D. Cal. Sept. 4, 2012)...................19

iv

*Nationwide Life Ins. Co. v. Haddock*,
    460 F. App'x 26 (2d Cir. 2012) ...................................................................................24

*Newman v. RCN Telecom Servs., Inc.*,
    238 F.R.D. 57 (S.D.N.Y. 2006) .............................................................................20, 21

*Oakley v. Verizon Commc'ns Inc.*,
    No. 09 Civ. 9175, 2012 WL 335657 (S.D.N.Y. Feb. 1, 2012) ................................21

*Oscar v. BMW of N. Am., LLC*,
    No. 09 Civ. 11, 2012 WL 2359964 (S.D.N.Y. June 19, 2012)................................24

*Oscar v. BMW of N. Am., LLC*,
    274 F.R.D. 498 (S.D.N.Y. 2011) ...........................................................................22

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) .................................................................................15

*Pagan v. Abbott Labs., Inc.*,
    287 F.R.D. 139 (E.D.N.Y. 2012) ...........................................................................18

*Pai v. Springs Indus., Inc.*,
    795 N.Y.S.2d 98 (2005).............................................................................................9

*Punian v. Gillette Co.*,
    No. 14-CV-05028, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016).......................1, 7, 8, 10, 11

*Randolph v. J.M. Smucker Co.*,
    303 F.R.D. 679 (S.D. Fla. 2014) ............................................................................17

*Romberio v. UnumProvident Corp.*,
    385 F. App'x 423 (6th Cir. 2009) ...........................................................................15

*Sethavanish v. ZonePerfect Nutrition Co.*,
    No. 12-2907, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014) ...................................17

*Sokoloff v. Town Sports Int'l, Inc.*,
    778 N.Y.S.2d 9 (1st Dep't 2004) .......................................................................16, 18

*Solomon v. Bell Atl. Corp.*,
    777 N.Y.S.2d 50 (1st Dep't 2004) ..........................................................................22

*Spagnola v. The Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009).................................................................................16, 18

*Stewart v. Beam Global Spirits & Wine, Inc.*,
    No. CIV. 11-5149, 2014 WL 2920806 (D.N.J. June 27, 2014) ..............................17

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
No. 14-CV-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ...........................................12

*Surdo v. Stamina Prods., Inc.*,
No. 15-CV-2532, 2015 WL 5918318 (E.D.N.Y. Oct. 9, 2015)................................................5

*Vaccariello v. XM Satellite Radio, Inc.*,
295 F.R.D. 62 (S.D.N.Y. 2013) .............................................................................................21

*Viscusi v. P & G-Clairol, Inc.*,
346 F. App'x 715 (2d Cir. 2009) ............................................................................................5

*Viscusi v. Proctor [sic] & Gamble*,
No. 05-CV-01528, 2007 WL 2071546 (E.D.N.Y. July 16, 2007), *aff'd*, 346 F.
App'x 715 (2d Cir. 2009)........................................................................................................8, 9

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ...........................................................................................................20, 24

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ................................................................................................11

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266
(9th Cir. 2001)........................................................................................................................23

**STATUTES**

Federal Rules of Civil Procedure

Rule 12(b)(6) .............................................................................................................1, 2, 3, 25

Rule 12(f) ...................................................................................................................1, 2, 25

Rule 23 ...................................................................................................................15, 16, 22

Rule 23(a) ...................................................................................................................17

Rule 23(a)(2) ...................................................................................................................19, 20

Rule 23(b)(2) ...................................................................................................................24

Rule 23(b)(3) ...................................................................................................14, 16, 19, 20, 23

Rule 23(c)(1) ...................................................................................................................1, 2, 25

Rule 23(c)(1)(A) ...................................................................................................................13

Cal. Civ. Code

§ 1770(a)(5) ...........................................................................................................13
§ 1770(a)(7) ...........................................................................................................13
§ 1770(a)(9) ...........................................................................................................13

## PRELIMINARY STATEMENT

Defendants The Procter & Gamble Company and Procter & Gamble Distributing LLC, makers of Tide Pods single unit dose laundry detergent, submit this memorandum of law in support of their motion to dismiss, or in the alternative to strike the class allegations from, Plaintiffs' First Amended Complaint ("FAC" or "Complaint," attached hereto as Exhibit A) pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f), and 23(c)(1).

Plaintiffs seek to represent a nationwide class consisting of "[a]ll persons in the United States who purchased Tide Pods laundry detergent from the time that they were first distributed for purchase by the public…."  FAC ¶ 58A.  Plaintiffs allege in conclusory fashion that Tide Pods "produce permanent blue/purple stains on white and light colored laundry, even when used as directed by P&G on Tide Pods' packaging."  *Id*. ¶ 3.  Plaintiffs do not identify the cause of the staining.  Rather, they offer their own idiosyncratic experiences and allege that a few hundred, out of the millions of users (*i.e.*, tenths of one percent of all users), have voiced complaints about the product.  *Id*. ¶¶ 40, 60.  Essentially, Plaintiffs allege that a tiny fraction of Tide Pods packets cause staining, as evidenced primarily by anonymous postings that Plaintiffs have found on the internet.  *Id*. ¶¶ 34-40.  But Plaintiffs do not identify any particular defect in the products, much less a feasible alternative design.  Under clear and current case law, they cannot proceed. *Cavanagh v. Ford Motor Co.*, No. 13-CV-4584, 2014 WL 2048571, at *2 (E.D.N.Y. May 19, 2014).

As is well-established, just because a product results in some consumer complaints does not mean that it has a defect or that the manufacturer has misrepresented its characteristics. *Punian v. Gillette Co.*, No. 14-CV-05028, 2016 WL 1029607, at **6-9 (N.D. Cal. Mar. 15, 2016).  Where, as here, there are millions of consumers of the product, FAC ¶ 60, who use it

repeatedly and in a multitude of different conditions, some consumers will have complaints. Understanding this, as responsible companies, Defendants have a procedure to address complaints and, where warranted, compensate consumers. *See, e.g.*, *Id.* ¶ 40 (citing to Defendants' responses to complaints). If establishing a defect or misrepresentation required only the complaints of a tiny fraction of consumers, then the courts would be clogged with lawsuits like this one. Every mass-merchandised product would be deemed to have an unspecified "defect," manufacturers would be liable for multiple misrepresentations and omissions, and ordinary household products would carry lengthy, legalistic disclosures. But that is not the law. Plaintiffs *cannot* proceed without alleging specifically what defect there is in the design of Tide Pods.

Furthermore, this case cannot proceed as a class action. Because multiple deficiencies are apparent from the Complaint, a motion to strike the class allegations is appropriate at this stage. The proposed class of *all* purchasers of Tide Pods (including the vast majority who have experienced no staining) lacks standing; a class is not ascertainable, even if limited to those alleging injuries; Plaintiffs cannot establish typicality, commonality, or predominance due to individualized issues and varying laws; and damages cannot be measured on a class-wide basis.

Accepting Plaintiffs' factual allegations as true, in the absence of a well-pleaded design or manufacturing defect, allegations of any feasible alternative design for Tide Pods, any possible material omission or misrepresentation, and an appropriately limited class definition, this Court should dismiss with prejudice Plaintiffs' entire Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6). In the alternative, the Court should strike the class allegations from the Complaint pursuant to Rules 12(f) and 23(c)(1).

**BACKGROUND**

On July 23, 2015, Plaintiffs filed their original complaint, alleging that Defendants' Tide Pods "have serious design defects … that cause them to produce permanent blue/purple stains on white and light colored laundry, even when used as directed by P&G on Tide Pods' packaging." Compl. ¶ 3, Dkt. No. 1.  On October 2, 2015, Plaintiffs amended their complaint to add a claim for damages under the California Consumers Legal Remedies Act.  FAC ¶ 168, Dkt. No. 9.  The Amended Complaint alleges ten causes of action.  *Id*. ¶¶ 71-168.  Plaintiffs seek class certification, injunctive and declaratory relief, damages, and costs and attorneys' fees.  FAC ¶¶ 81, 96, 100, 127, 135, 149, 168, Prayer for Relief.  Despite the length of the Complaint, Plaintiffs make no specific allegation of a design defect.  Plaintiffs offer only the legal conclusion that Tide Pods "have serious design defects," an allegation lacking any semblance of specificity that is repeated throughout the Complaint.

On September 30, 2016, the Court granted Defendants' request for a Pre-Motion Conference, requested a proposed briefing schedule for Defendants' Motion, and stayed discovery until the Motion is decided.  On October 7, 2016, the Court denied Plaintiffs' Motion to Compel and found as moot Defendants' Motion for Protective Order.  On October 14, 2016, the Court approved the parties' proposed briefing schedule for this motion.

**LEGAL ANALYSIS**

To survive a motion to dismiss, a complaint must plead sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6).  While allegations of material fact are assumed to be true and viewed in the light most favorable to the plaintiff, the Court need not accept as true allegations that are conclusory, legal

conclusions, unwarranted deductions of fact, or unreasonable inferences.  *Iqbal*, 556 U.S. at 678-79.  Courts are "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id*. at 678 (internal citation omitted).  Thus, in considering whether to grant a motion to dismiss, courts are guided by two principles:

> First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is *inapplicable to legal conclusions*," and "*[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice*."

and

> "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citing *Iqbal*) (emphases added).

**I.    The Court Should Dismiss Plaintiffs' Claims Because They Offer Nothing More Than Legal Conclusions as the Basis for Every Claim.**

Plaintiffs' Complaint should be dismissed because all of their claims are based on the factually unsupported legal conclusion that Tide Pods contain a defect.  Plaintiffs *assume* that Tide Pods have a design defect because they claim to have experienced staining.  But this alleged *harm* is not a substitute for pleading a *design* defect.  Plaintiffs' failure to describe in any detail any alleged design or manufacturing defect in Tide Pods is fatal to all of their claims.  Furthermore, Plaintiffs fail to identify any material omission or misstatement beyond those premised on their assumption that there is some unspecified defect.

**A.    Plaintiffs' Failure to Identify a Defect is Fatal to Their Claims.**

Plaintiffs offer only the conclusory allegation that Tide Pods "have serious design defects."  FAC ¶ 3.  A design defect claim should be dismissed "'where [the] plaintiff fails to plead facts identifying *how the device is defectively designed* or *the existence of a feasible*

*alternative design*.'"  *Cavanagh v. Ford Motor Co.*, No. 13-CV-4584, 2014 WL 2048571, at *2

(E.D.N.Y. May 19, 2014) (emphasis added).[1]  Here, Plaintiffs have pleaded neither.

Plaintiffs conclude that Tide Pods have a design defect, but they do not even attempt to

articulate the basis for this conclusion, much less identify a design defect in the Tide Pods that

caused the alleged staining.  Alleging harm (staining) is no substitute for alleging a design

defect.  Plaintiffs' failure to meet this most basic requirement of pleading is fatal to their claims.

*See Goldin v. Smith & Nephew, Inc.*, No. 12 Civ. 9217, 2013 WL 1759575, at *4 (S.D.N.Y. Apr.

24, 2013) (dismissing design defect claim where "[p]laintiff states that the product poses a risk of

harm because of its propensity to [result in the harm plaintiff suffered], but does not identify any

particular problem in the design of the product"); *Cavanagh*, 2014 WL 2048571, at *3

(dismissing design defect claim because "conclusory allegations do not suffice to state a claim

for design defect"); *Surdo v. Stamina Prods., Inc.*, No. 15-CV-2532, 2015 WL 5918318, at *4

(E.D.N.Y. Oct. 9, 2015) (dismissing design defect claim for failure to "allege how the product is

defectively designed").  This failure mandates dismissal of the entire Complaint because all ten

counts are premised on the existence of a design defect.

Plaintiffs also fail to allege any feasible alternative design for Tide Pods, another basic

element of a design defect claim.  *See Goldin*, 2013 WL 1759575, at *4 (dismissing design

defect claim for failure to allege alternate design); *see also Cavanagh*, 2014 WL 2048571, at *2

---

[1] The law in this section is applicable to all of Plaintiffs' defect claims, whether pleaded under the headings of strict liability, negligence, or breach of warranty.  *Cavanagh*, 2014 WL 2048571, at *5; *see also Viscusi v. P & G-Clairol, Inc.*, 346 F. App'x 715, 716 (2d Cir. 2009) ("[I]t is well settled that, whether [an] action is pleaded in strict products liability, breach of warranty or negligence, it is a consumer's burden to show that a defect in the product was a substantial factor in causing the injury.") (citation omitted); *Goldin v. Smith & Nephew, Inc.*, No. 12 Civ. 9217, 2013 WL 1759575, at *6 (S.D.N.Y. Apr. 24, 2013) ("New York courts generally consider strict products liability and negligence claims to be 'functionally synonymous.") (internal quotations omitted).

("a design defect claim is properly dismissed 'where [the] plaintiff fails to plead…the existence of a feasible alternative design"); *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 622 (S.D.N.Y. 2012) (granting motion to dismiss as to negligent and strict liability design defect claims where plaintiff failed to allege an alternative design). Further, it would not be enough for Plaintiffs to suggest that other detergents never result in staining (a fact Plaintiffs have not and cannot reasonably allege); "[r]ather, the question is whether a safer alternative design for *this* product existed – and, more precisely, whether Plaintiff[s] ha[ve] alleged that fact in [their] Complaint." *Goldin*, 2013 WL 1759575, at *4 (emphasis in original). Having alleged no feasible alternative design, Plaintiffs' design defect claims, and all derivative claims, cannot stand.

Similarly, to state a claim for a *manufacturing* defect, Plaintiffs are required to plead "'[1] that a specific product unit was defective as a result of "some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction," and [2] that the defect was the cause of plaintiff's injury.'" *Cavanagh*, 2014 WL 2048571, at *3. A manufacturing defect claim must be dismissed "where the plaintiff 'has not alleged that "the particular [product] … had a defect as compared to other samples of that [product]."'" *Id.* Here, Plaintiffs' manufacturing defect claim fails because the Complaint contains no allegations regarding the manufacturing process and does not allege that just some Tide Pods were defective as a result of a manufacturing error. *See id.* (dismissing manufacturing defect claim where "the Complaint does not supply any facts regarding the manufacturing process, nor does it allege that the [product] was defective as compared to other [products] manufactured by Defendants"); *Lewis v. Abbott Labs.*, No. 08 Civ. 7480, 2009 WL 2231701, at *6 (S.D.N.Y. July 24, 2009) (same); *Am. Guarantee & Liab. Ins. Co. v. Cirrus Design Corp.*, No. 09 Cv. 8357, 2010 WL 5480775, at *3 (S.D.N.Y. Dec. 30, 2010) (dismissing manufacturing defect claim because

"Plaintiffs [did] not only fail [ ] to specify the defective component but ... also failed to adequately allege any deviations from the manufacturing process, improper workmanship, or defective materials"); *see also Barrett v. Black & Decker (U.S.) Inc.*, No. 06 Civ. 1970, 2008 WL 5170200, at *11 (S.D.N.Y. Dec. 9, 2008) ("Plaintiff fails to plead which part of the [product] was defective, or in what way some particular defect caused plaintiff's injury.").

Even if some unspecified defect in the Tide Pods that Plaintiffs used did cause the alleged staining – as opposed to the alleged staining stemming from any other possible cause – various courts have acknowledged that "'[a]ll consumer products, indeed all manufactured products, have *some* propensity to fail. … No reasonable consumer would believe otherwise.'" *Punian*, 2016 WL 1029607, at **6-9 (citing *Carlson v. The Gillette Co.*, No. CV 14-14201, 2015 WL 6453147, at *5 (D. Mass. Oct. 23, 2015)). Defendants are aware of no case "where a court has found that such an unspecified potential to fail suffices to allege a material product defect. Rather, … cases finding that a company has a duty to disclose a product defect have identified *a particular design or manufacturing defect and described the connection between the defect and the harm to the plaintiff.*" *Id.* at *14 (emphasis added). The potential failure of some tiny fraction of Tide Pods packets, among the hundreds of millions of packets sold, does not make a design or manufacturing defect claim. *See* FAC ¶¶ 40, 43, 60.

Additionally, Plaintiffs' attempted claims of failure to warn must be dismissed. A failure to warn claim first requires a plaintiff to allege that the defendant had a *duty* to warn. *In re Fosamax Prods. Liab. Litig.*, 924 F. Supp. 2d 477, 486 (S.D.N.Y. 2013). Plaintiffs have alleged no facts supporting that such a duty exists. *See, e.g.*, FAC ¶¶ 101-118. Plaintiffs have alleged only that Defendants "had a duty to exercise reasonable care in the design, manufacture, sale, and/or distribution of Tide Pods, including a duty to ensure that Tide Pods did not permanently

stain laundry," and that Defendants "[f]ailed to accompany Tide Pods with proper warnings regarding the possibility of permanent staining to white and light colored laundry." *Id*. ¶¶ 104, 106.c; *see also id*. ¶ 114.  Plaintiffs have not properly alleged design or manufacturing defects, and, to state the obvious, Plaintiffs cannot base their failure to warn claims on a non-existent hazard or on some "unspecified potential to fail." *Punian*, 2016 WL 1029607, at *14.[2]

As this Court has made clear, "[t]here must be something wrong with the product, and if nothing is wrong there will be no liability." *Barban v. Rheem Textile Sys., Inc.*, No. 01-CV-8475, 2005 WL 387660, at *8 (E.D.N.Y. Feb. 11, 2005), *aff'd*, 147 F. App'x 222 (2d Cir. 2005). Thus, because Plaintiffs have failed to allege any design, manufacturing, or warning defect, Counts V and VI of their Complaint should be dismissed.

**1.    Plaintiffs' Claims of Breach of Implied Warranties Fall With Plaintiffs' Design and Manufacturing Defect Claims.**

An implied warranty claim requires defective design or manufacture, among other things. *See Goldin*, 2013 WL 1759575, at *5.  Here, without sufficient claims for defective design or manufacture, Plaintiffs' claims of breaches of implied warranties of merchantability and fitness for a particular purpose (Counts I and II) cannot stand.  *See id.* ("Plaintiff has not adequately pleaded facts in support of her allegation that the [product] was defective.  Therefore, [the warranty claim] must be dismissed."); *Lewis v. Abbott Labs.*, 2009 WL 2231701, at *6.

Moreover, simply because a product does not perform as expected in every respect does not mean that a warranty has been breached.  *See Viscusi v. Proctor* [*sic*] *& Gamble*, No. 05-CV-01528, 2007 WL 2071546, at *13 (E.D.N.Y. July 16, 2007) (implied warranty "does not mean that the product will fulfill a 'buyer's every expectation'" but rather it "'provides for a minimum

---

[2]  Plaintiffs' so-called "failure to warn" claims are mere reiterations of Plaintiffs' omission-based claims, masquerading as tort claims.  All of Plaintiffs' omission-based claims must be dismissed, as explained below, and with them must go Plaintiffs' alleged failure to warn claims.

level of quality'"), *aff'd*, 346 F. App'x 715 (2d Cir. 2009).  The *Viscusi* court also cited to a New York case for the proposition that "'[w]hen a product is widely sold and easily purchased, "the mere fact that an infinitesimal number experienced a discomforting reaction is not sufficient to establish that the product was not fit for the purposes intended."'"  *Id.* (citing to *Pai v. Springs Indus., Inc.*, 795 N.Y.S.2d 98, 100 (2005)).  Plaintiffs are a few among an infinitesimal fraction – relative to the total number of consumers and packets in use – to claim staining problems with respect to Tide Pods.  That is insufficient to establish breaches of implied warranties.  Accordingly, Counts I and II should be dismissed in conjunction with Counts V and VI.

> **B.     Plaintiffs' Failure to Identify a Material Omission or Misstatement Extinguishes Any of Plaintiffs' Remaining Claims.**

Plaintiffs' remaining claims rely on the existence of an omission or misrepresentation.  Specifically, Plaintiffs allege that Defendants "[f]ailed to accompany Tide Pods with proper warnings regarding the possibility of permanent staining to white and light colored laundry," and that Tide Pods "do not contain any disclosures about the risk [of] staining."  FAC ¶¶ 31, 106.c; *see also id*. ¶ 114.  These allegations do not give rise to a cause of action because Plaintiffs have not sufficiently alleged that there is an underlying defect.

In fact, courts regularly dismiss causes of action based on claims of omissions or misrepresentations when plaintiffs have failed to plead the underlying defect claims.  For example, in *Goldin v. Smith & Nephew, Inc.*, No. 12 CIV. 9217, 2013 WL 1759575, at *4 (S.D.N.Y. Apr. 24, 2013), the plaintiff alleged causes of action for strict products liability under manufacturing defect, design defect, and failure to warn theories of liability, as well as breach of implied and express warranties, negligence, and violations of New York's consumer protection statute.  *Id*. at *2.  After describing why the plaintiff had failed to plead the defect-based causes of action, and dismissing those claims, the court dismissed the plaintiff's allegations of

misleading representations and omissions for the same reasons it dismissed the plaintiff's other allegations. *Id.* at *7. *See also Punian*, 2016 WL 1029607, at **2, 6-14 (dismissing plaintiff's consumer protection causes of action, based on alleged misrepresentations and failure to disclose, because defendants did not make affirmative misrepresentations and plaintiff failed to "plausibly allege a material defect" in the products, among other reasons).

Likewise, because Plaintiffs here have failed to plead any defect in Tide Pods that would regularly result in staining, Defendants had no duty to include a disclosure about the alleged potential for staining.  Plaintiffs allege no facts establishing that Tide Pods cause staining as a result of a specific product defect, rather than as a result of a host of other potential causes. Simply because Plaintiffs and ostensibly a handful of other consumers allege that they experienced staining does not mean that Defendants are required to disclose that remote possibility to their millions of other satisfied consumers who use the product routinely without incident. *See, e.g.*, *Punian*, 2016 WL 1029607 at **14-15.  Every product results in complaints, and complaints can stem from a variety of factors.  The allegation of the existence of hundreds of complaints, out of millions of users of a product (and exponentially more actual uses), does not show a defect and does not require a disclosure. *See* FAC ¶¶ 40, 60; *see also Punian*, 2016 WL 1029607 at *11.  Without any actual, identified defect in Tide Pods, Plaintiffs have no basis for any claim, and there is no actionable "omission." *See Goldin*, 2013 WL 1759575, at *7.

Moreover, even if Plaintiffs had adequately alleged the existence of a defect, they still did not adequately allege that Defendants were aware of any such defect.  Plaintiffs alleged that Defendants were aware "that Tide Pods can cause blue/purple stains on laundry," primarily on the basis of alleged consumer complaints posted on the internet.  FAC ¶ 33; *see also id.* ¶¶ 34-41. But awareness of consumer complaints, or even awareness that "'[a]ll consumer products, indeed

all manufactured products, have *some* propensity to fail,'" *Punian*, 2016 WL 1029607, at *7, is not the same as awareness of a defect.  *See Berenblat v. Apple, Inc.*, Nos. 08-4969, 09-1649, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) (dismissing complaint on the ground that a customer complaint and knowledge of a defect were not the same); *see also In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543, 2016 WL 796846, at *6 n.3 (S.D.N.Y. Feb. 25, 2016) (in the context of evidentiary issues stemming from reliance on consumer complaints, citing to *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012), in which the court states that "[s]ome courts have expressed doubt that customer complaints in and of themselves adequately support an inference that a manufacturer was aware of a defect, noting that complaints posted on a manufacturer's webpage merely establish the fact that some consumers were complaining.  By themselves they are insufficient to show that [the manufacturer] had knowledge [of the defect].").  Plaintiffs' allegation that there is some unknown number of complaints does not show that Defendants knew of a defect that would give rise to a duty to disclose.  *See Punian*, 2016 WL 1029607, at *10.  Without a duty to disclose, Defendants cannot be liable for omission or failure to disclose (or warn).

Furthermore, Plaintiffs have not alleged valid affirmative misrepresentation claims. Plaintiffs allege that Defendants advertised Tide Pods as a "multi-dimensional laundry detergent that features three chambers especially designed to brighten, fight stains and clean," and as a "detergent, stain remover, and brightener."  FAC ¶¶ 30-31 (internal quotations omitted). Defendants' statements of general usefulness of Tide Pods are not misrepresentations because there is no alleged defect in Tide Pods.  A basic product representation does not become a material misrepresentation solely because a small number of users claim to have experienced problems with the product.  *See Punian*, 2016 WL 1029607, at *7.  Plaintiffs have not pleaded

any design or manufacturing defect that would indicate that staining is so likely to result that the truthful statements about the product's use as a detergent are rendered false or misleading. To the extent these allegations are intended to state claims for affirmative misrepresentations, those claims must be dismissed because Plaintiffs do not allege any facts showing that these representations were false – *i.e.*, that Tide Pods did not function as detergent, stain remover, and brightener. Plaintiffs do not allege the false or misleading nature of any of these, or any other, affirmative statements: Plaintiffs specifically do not allege that Tide Pods do not clean laundry, remove stains, and brighten laundry. Hence, Plaintiffs have not alleged a valid misrepresentation claim.

The absence of any material omission or false or misleading statement disposes of the rest of Plaintiffs' claims, as follows:

- Count III, Various Unfair and Deceptive Trade Practices Acts, fails because it is based on a material misstatement or omission, which is not alleged. FAC ¶ 92.

- Count IV, the claim for Unjust Enrichment, fails because it is based on the duplicative allegations that Tide Pods have a defect, or that Defendants misrepresented the quality of Tide Pods, conclusions that Plaintiffs have not adequately supported with factual allegations. FAC ¶ 99. Moreover, an "unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *26 (E.D.N.Y. Sept. 22, 2015).

- Count VII, Florida Deceptive and Unfair Trade Practices Act, fails because Plaintiffs have not identified any material misstatement or omission. FAC ¶ 123.

- Count VIII, the Deceptive Acts and Practices Sections of New York's General Business Law, fails because it is based on the allegation that there is a design defect, which has not been pleaded, and an omission regarding the same defect.  FAC ¶ 133.

- Count IX, California's Unfair Competition Law, fails because it is based on the theories of design defect and material misstatements or omissions, none of which have been pleaded.  FAC ¶¶ 138-40.

- Count X, California Consumers Legal Remedies Act, fails because such a claim must be supported by an allegation of a misrepresentation.  Cal. Civ. Code §§ 1770(a)(5), (7), and (9).  Plaintiffs have pleaded no material misrepresentation.  FAC ¶¶ 158-63.

Without a properly alleged omission, and without allegations of the false or misleading nature of any particular affirmative statement, these remaining Counts should be dismissed.

This leaves none of Plaintiffs' claims standing.  Plaintiffs' Complaint fails to identify any alleged design defect in Tide Pods, any feasible alternative design for Tide Pods, any manufacturing or warning defect, or any connection between a product defect and the staining they experienced.  This Court should dismiss the Complaint in its entirety and with prejudice, because all of the claims are based on the factually unsupported legal conclusion that Tide Pods contain a defect.

## II.     In the Alternative, the Court Should Strike the Class Allegations from the Complaint Because the Proposed Class Cannot Be Certified.

Rule 23(c)(1)(A) calls for a determination "whether to certify the action as a class action" at "an early practicable time after a person sues."  While consideration of this question often occurs after the pleading stage, there is no bar to its earlier consideration.  To the contrary, "a court may decide the issue of certification based on a review of the complaint prior to a party's motion to certify the proposed class."  *Luciano v. Eastman Kodak Co.*, No. 05-CV-6463T, 2006

13

WL 1455477, at *3 (W.D.N.Y. May 25, 2006).  *See also Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) (holding that "a party may move to strike class claims even before discovery") (citing *Davito v. AmTrust Bank*, 743 F. Supp. 2d 114, 115-16 (E.D.N.Y. 2010)).

To be certified, a proposed class must satisfy several "rigorous" standards.  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *see also Goodman v. Genworth Fin. Wealth Mgmt., Inc.*, 300 F.R.D. 90, 100-01 (E.D.N.Y. 2014).  Based on the Complaint, the proposed class cannot be certified for multiple reasons.

Fundamentally, the members of the proposed class must have Article III standing. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).  But in this case, Plaintiffs propose a class comprised of millions of consumers who have not experienced the alleged harm. Plaintiffs are likewise not typical of the vast majority of members of the class they seek to represent, *i.e.* the millions of consumers who have *not* experienced staining.  And in the absence of a common alleged defect, the Court will not be able to find that common issues predominate over individualized issues.  Without a common defect, it also will not be possible to differentiate the few who suffered the alleged harm (staining caused by a specific defect) from the millions more who suffered no harm at all, or whose staining was caused by some other factor.  Likewise, even among those who may have been harmed by a common defect, the damages incurred will necessarily vary depending on what items of laundry were stained, meaning that individual "mini-hearings" would be necessary to determine the amount each consumer should recover.  In short, the Court will not be able to find, under Rule 23(b)(3), that a class action is "superior to other available methods for fairly and efficiently adjudicating" the claims, particularly in light of the comprehensive complaint and compensation program that Defendants operate.

**A.      The Proposed Class of All Purchasers of Tide Pods Lacks Standing.**

Since 2012, the period at issue in Plaintiffs' Complaint, Defendants have sold Tide Pods

to millions of consumers across the country.  FAC ¶ 60.  Plaintiffs do not – and cannot – allege

that all users of Tide Pods are injured or damaged, or that Tide Pods fail to perform as expected

for all, or even most, of those millions of consumers.  To the contrary, Plaintiffs allege on

"information and belief" that "hundreds" of consumers may have been injured, but the "proposed

Class and Subclasses consist of many thousands, hundreds of thousands or as many as millions

of persons throughout the United States."  *Id.* ¶¶ 40, 43, 60.

A proposed class is facially "overbroad if it includes significant numbers of consumers

who have not suffered any injury or harm." *Loreto v. Procter & Gamble Co.*, No. 1:09-cv-815,

2013 U.S. Dist. LEXIS 162752, at *12 (S.D. Ohio Nov. 15, 2013); *Colley v. Procter & Gamble

Co.*, No. 1:16-cv-918, 2016 WL 5791658, at *8 (S.D. Ohio Oct. 4, 2016); *McGee v. E. Ohio Gas

Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th

Cir. 2006) (affirming denial of class certification where the proposed class "could include

millions . . . who have no grievance").  Furthermore, if "individualized fact-finding" is necessary

to ascertain which class members were actually injured, class treatment is inappropriate.  *See

Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009).

Rule 23 must be interpreted consistently with Article III.  *Amchem Prods., Inc. v.

Windsor*, 521 U.S. 591, 613 (1997).  Article III standing requires individual plaintiffs to suffer an

injury-in-fact that is causally connected to a defendant's alleged wrongdoing.  *See Lujan v.

Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Without an "injury in fact," the vast majority

of putative class members (who have not experienced staining of any sort, much less from a

common defect) lack Article III standing.  *See id.*

15

As Plaintiffs implicitly acknowledge, there are millions of satisfied customers who use Tide Pods regularly to meet their laundry needs and do *not* experience the harm alleged in the Complaint.  FAC ¶¶ 40, 43, 60.  Yet Plaintiffs' proposed class consists of everyone who ever bought the product.  *Id*. ¶ 58A.  The proposed class is composed of millions of satisfied customers with no complaints, no alleged injuries, no damages, and therefore no grievance.  *See Id*. ¶ 60.  This Court would be required to engage in individualized fact-finding sessions to identify the hundreds – among millions – of consumers who were actually injured.  Because "no class may be certified that contains members lacking Article III standing," *Denney*, 443 F.3d at 264, Plaintiffs' proposed class cannot be certified.[3]

**B.      Even a Class Only of Allegedly Injured Consumers Is Not Ascertainable.**

Even if the class could be alleged to contain only the small number of consumers who experienced staining, such a class is not ascertainable.  "Class ascertainability is 'an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3).'"  *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013).  Courts in the Second Circuit, like other courts, recognize that Rule 23 contains an implied requirement of ascertainability.  *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 116 (E.D.N.Y. 2012); *see also Felix v. Northstar Location Servs., LLC*, 290 F.R.D. 397, 401 (W.D.N.Y. 2013).

---

[3] Although Plaintiffs may argue that class members who have not experienced staining were harmed by paying a premium for Tide Pods based on the marketing, FAC ¶ 61, in the absence of an omission or misstatement, this argument is irrelevant.  These consumers are not dissatisfied with Tide Pods in the manner alleged by Plaintiffs.  *See e.g.*, *Spagnola v. The Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (plaintiff's receipt of adequate insurance coverage was fatal to his overpayment claim); *Sokoloff v. Town Sports Int'l, Inc.*, 778 N.Y.S.2d 9, 10-11 (1st Dep't 2004) (dismissing plaintiff's claim where he received the benefits set forth in his gym contract).

16

For a class to be ascertainable, the class definition must be based on "objective criteria," and it must be "administratively feasible" to identify class members without conducting "a mini-hearing on the merits of each case." *Charron v. Pinnacle Grp. N.Y. L.L.C.*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).  Class members must be ascertainable to protect the due process rights of both absent class members and the defendant. The ascertainability requirement ensures that class members can be identified "in a manner consistent with the efficiencies of a class action." *Carrera*, 727 F.3d at 307.

Here, a hypothetical class of consumers who have experienced staining due to the unspecified defect in Tide Pods is not ascertainable.  Without a specifically-alleged defect, the Court will be unable to differentiate those who experienced staining due to that defect from those who experienced staining for some other reason (or for no apparent reason).  At a minimum, this will require the Court to undertake an individual analysis of each putative class member's allegedly stained clothing, use or misuse of Tide Pods, and engagement with Defendants' existing process for handling complaints and compensation.  FAC ¶ 40.  These "mini-hearings," lacking in objective criteria, defeat ascertainability.  *See In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90 at 116.[4]

## C.    Plaintiffs Cannot Establish That They Are Typical of the Proposed Classes.

The typicality requirement of Rule 23(a) is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to

---

[4] Beyond these issues with ascertainability, should the case proceed, the Court will face the same administrative feasibility question, presented in *Carrera*, as to whether a class can be certified when the records of sales to individual class members are not uniformly available for the products at issue.  *See Carrera*, 727 F.3d at 307-12; *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593-94 (3d Cir. 2012); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 689 (S.D. Fla. 2014); *Stewart v. Beam Global Spirits & Wine, Inc.*, No. CIV. 11-5149, 2014 WL 2920806, at **3-4 (D.N.J. June 27, 2014); *Karhu v. Vital Pharm., Inc.*, No. 13-60768-CIV, 2014 WL 815253, at *3 (S.D. Fla. Mar. 3, 2014), *aff'd*, 621 F. App'x 945 (11th Cir. 2015); *Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-2907, 2014 WL 580696, at **5-6 (N.D. Cal. Feb. 13, 2014).

prove the defendant's liability." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).  As the Complaint makes clear, Plaintiffs' alleged injury – the staining of laundry – is one that the vast majority of the proposed class members have never suffered.  FAC ¶¶ 40, 43, 60.  Plaintiffs' claims will do nothing to advance the nonexistent claims of absent class members, and are therefore atypical.  *See Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 150 (E.D.N.Y. 2012) (plaintiff claiming damages for certain expenses not typical because most class members did not incur such expenses).[5]

Plaintiffs' counsel attempts to deal with this problem by arguing that *every* purchaser of Tide Pods paid an unjustified "premium price" for Tide Pods.  The theory appears to be that the price of the product reflects the fact that it is advertised as "detergent plus stain remover plus brightener," FAC ¶¶ 7, 13, 19, and since Plaintiffs allege staining, that price is therefore too high.  This is, in essence, an argument that customers do not get the benefit of their bargain; they pay for a product with a valuable attribute (cleaning laundry) and what they receive does not have that attribute.  The problem with the theory as applied in *this* case is that its premise – that the product does not clean laundry – is incorrect for the overwhelming majority of the proposed class's members, as the Complaint's allegations show.

A purchaser for whom the product or service works as advertised cannot have paid an unjustified price premium.  *See Spagnola*, 574 F.3d at 74; *Sokoloff*, 778 N.Y.S.2d at 10-11;

---

[5] *Pagan* involved a recall of a powdered infant formula that was potentially contaminated with insect parts.  Plaintiffs sued under Section 349 based on the defendant's alleged failure to warn consumers of the dangers associated with consuming the product.  They sought to represent all New York residents who purchased recalled products.  287 F.R.D. at 143.  The district court denied class certification on several grounds, including plaintiffs' failure to demonstrate typicality.  The court observed that only a small percentage of recalled products were actually contaminated.  *Id.* at 148.  Consumers who purchased products that did not contain insect parts were not injured because they received the benefit of their bargain.  Consequently, the named plaintiffs failed to demonstrate that their claims were typical.  *Id.* at 149-50.

*Cabral v. Supple, LLC*, No. ED 12-00085, 2013 U.S. Dist. LEXIS 184170, at *5 (C.D. Cal. Feb. 14, 2013); *Moheb v. Nutramax Labs. Inc.*, No. CV 12-3633, 2012 WL 6951904, at *3 (C.D. Cal. Sept. 4, 2012).  Plaintiffs do not claim that any of the advertised characteristics were not present for themselves or any of the members of the proposed class.  The vast majority of the proposed class therefore did not pay a "premium" for an attribute that they did not receive.  That Plaintiffs believe that they themselves did pay such a premium, on the basis of their allegations of staining, makes them atypical of most members of their proposed class.  *See also Colley*, 2016 WL 5791658, at *10 ("While Plaintiffs allege that they have suffered physical injury, they have conceded that tens of millions of putative class members experienced no physical harm from [the products].  Thus, their claims cannot be 'typical' of uninjured consumers.").

Even if the class definition were restricted to those who alleged staining as a result of the supposed design defect in Tide Pods, Plaintiffs could not satisfy the typicality requirement, for the same reasons noted above.  Claims that require fact-specific determinations on issues such as causation are inherently unsuitable for class treatment; no individual's claim is "typical."  *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 399 (S.D.N.Y. 2008); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002); *Jones v. Allercare, Inc.*, 203 F.R.D. 290, 300 (N.D. Ohio 2001).

> **D.   Plaintiffs Cannot Establish Commonality or Predominance Because Liability on Each Class Member's Claims Depends on Individualized Issues.**

Likewise, because liability on each class member's claim would depend on highly individualized issues and facts, Plaintiffs' class claims cannot satisfy either Rule 23(a)(2)'s requirement that "there are questions of law or fact common to the class" or Rule 23(b)(3)'s "far more demanding" requirement that common issues predominate over individual ones.  *Amchem*

*Prods.*, 521 U.S. at 615.  Plaintiffs must not only allege but prove these elements, and they cannot.

As the Supreme Court explained in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), under Rule 23(a)(2), commonality demands a common contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  In other words, "[w]hat matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.* (emphasis in original) (citation omitted).

Under Rule 23(b)(3), the court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members."  The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623.  To adjudicate claims and defenses, this Court would be required to resolve innumerable facts that are individual to each class member under a wide array of legal standards across 51 jurisdictions.  The individualized nature of these issues precludes any finding of commonality and predominance.

Plaintiffs propose merely "common questions" that are not answerable by common evidence and yield different answers for each putative class member.  *Dukes*, 564 U.S. at 349-50.  But commonality requires more than simply naming a question common to the class with a high level of generality.  *See id.*  Plaintiffs will not be able to prove, as they must, that class members suffered "*the same injury*," that it resulted from the same defect, that a common question can unify the class by generating "common answers," or that these common questions "predominate" over individualized inquiries.  *Id.* (emphasis added); *see also Newman v. RCN Telecom Servs.,*

20

*Inc.*, 238 F.R.D. 57, 75-76 (S.D.N.Y. 2006); *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013); *Oakley v. Verizon Commc'ns Inc.*, No. 09 Civ. 9175, 2012 WL 335657, at **13-15 (S.D.N.Y. Feb. 1, 2012).

The proposed class, however, requires innumerable individualized inquiries into each consumer's experience with Tide Pods.  Plaintiffs' claims are premised on the assertion that they suffered staining by using Tide Pods.  FAC ¶¶ 3, 6-25.  But their individual experiences are not enough to establish commonality or predominance across the entire purported class.  Plaintiffs do not allege that Tide Pods caused staining for all those who used the products, or that each class member's alleged staining was the same in type or degree, much less in cause (which remains unspecified).  As noted above, and as Plaintiffs allege in their Complaint, millions of Tide Pods were sold over the relevant time period.  *Id.* ¶ 60.  But according to Plaintiffs' own allegations, the number of people who have complained of staining is in the hundreds, *id.* ¶¶ 40, 43, a "mere fraction of the total."  *See Jones*, 203 F.R.D. at 301 (denying class certification where "plaintiffs do not allege that the [products] automatically cause [problems for] all those [using] the products"); *see also Colley*, 2016 WL 5791658, at *5-6, n.5.  Class certification would require the Court to engage in a detailed, case-by-case examination of the cause, nature, and degree of each class member's alleged injury, and the individual circumstances surrounding each class member's use of Tide Pods.  To determine liability, injury, and damages, the Court would have to assess, among other things: (1) whether the consumer's laundry was damaged at all; (2) whether the consumer followed the instructions for use; (3) whether the consumer's washing machine functioned properly; (4) whether the consumer overfilled the load; and (5) whether the alleged damage was the result of a host of other potential causes, such as color transfer from other clothes in the load or certain forms of soiling on other clothes in the load.  In light of these

individualized inquiries, courts consistently hold that classes seeking recovery for individual damages cannot be certified. *See, e.g.*, *In re Grand Theft Auto Video Game Consumer Litig. No. II*, 251 F.R.D. 139, 145-46 (S.D.N.Y. 2008); *Jones*, 203 F.R.D. at 300; *Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 56 (1st Dep't 2004).

In *Oscar v. BMW of North America, LLC*, 274 F.R.D. 498, 511-13 (S.D.N.Y. 2011), the plaintiffs alleged that the defendant had manufactured defective tires. In declining to certify the class for lack of predominance, the court explained that even if plaintiffs could demonstrate a common defect, "they would still need to demonstrate that this defect caused each class member's [tire] to puncture. But tires can puncture for any number of reasons, and not all of these reasons will relate to the defect." *Id.* Likewise, laundry may be stained for a wide variety of reasons that have nothing to do with the detergent used. The fact that causation would have to be assessed on a case-by-case basis for the class Plaintiffs have proposed is another reason that class certification is inappropriate.

**E.     Plaintiffs Cannot Maintain a Nationwide Class Action.**

Moreover, Plaintiffs cannot maintain a nationwide class action applying all fifty states' laws to the putative class members' claims because these laws are disparate. For putative, nationwide, consumer-protection class actions, New York choice-of-law principles require this Court to apply the law of the state where each class member purchased Tide Pods to that class member's claims. *In re Grand Theft Auto Video Game Consumer Litig. No. II*, 251 F.R.D. at 146-47. The nationwide class claims therefore cannot satisfy Rule 23 requirements.

Plaintiffs have primarily alleged breach of warranty, unjust enrichment, and consumer protection claims. The standards governing these claims vary widely by state:

> Most of the courts that have addressed the issue have determined that the consumer-fraud and breach-of-warranty laws in the fifty states differ in relevant respects. … Because these differences are all relevant—indeed, some of them are

> outcome determinative, … there are actual conflicts among the states' consumer-fraud and warranty laws.  Likewise, several courts have determined that the states' unjust-enrichment laws vary in relevant respects.

*Id.*; *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012); *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997), *aff'd*, 172 F.3d 623 (8th Cir. 1999); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 219 (E.D. Pa. 2000); *Colley*, 2016 WL 5791658, at *7.

Plaintiffs also have alleged common law product liability claims, and states differ in their approaches to such claims as well.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) ("[T]he laws of negligence, product[s] liability, and medical monitoring all differ in some respects from state to state."); *Ilhardt v. A.O. Smith Corp.*, 168 F.R.D. 613, 620 (S.D. Ohio 1996).

The predominance of individualized issues and varying legal questions prevents class certification.  *See Johnson v. Nextel Commc'ns. Inc.*, 780 F.3d 128, 146 (2d Cir. 2015); *see also Colley*, 2016 WL 5791658, at *7.

**F.    Damages Cannot Be Measured on a Class-Wide Basis.**

Additionally, for certification under Rule 23(b)(3), damages must be capable of measurement on a class-wide basis.  *See Comcast Corp.*, 133 S. Ct. at 1430.  Here, even if Plaintiffs could establish liability – which they cannot – damages would depend on whether each class member's clothing was irreparably stained, whether the damage was caused by any defect in Tide Pods or the user's own error, the value or replacement value of any damaged clothes, and whether the class member had already been compensated by Defendants through the existing process for handling complaints.  *See, e.g.*, FAC ¶ 40 (citing to Tide's responses to complaints, including offers to "speak with someone about your experience and perhaps try another version of Tide" or "replace the Pods with another version of Tide," or for "a replacement for your

23

purchase").  As such, damages are not capable of measurement on a class-wide basis, making

certification of Plaintiff's proposed class inappropriate.  *See Oscar v. BMW of N. Am., LLC*, No.

09 Civ. 11, 2012 WL 2359964, at *4 (S.D.N.Y. June 19, 2012); *Ackerman v. Coca-Cola Co.*, No.

09 CV 395, 2013 WL 7044866, at *20 (E.D.N.Y. July 18, 2013).

    **G.**    **Certification of a Class Under Rule 23(b)(2) Would Be Inappropriate.**

Finally, the certification of a class under Rule 23(b)(2) is only appropriate "when a single

injunction or declaratory judgment would provide relief to each member of the class."  *Dukes*,

564 U.S. at 360.  Given the infinitesimal number of complaints regarding Tide Pods in

comparison to the sales, the number of satisfied customers potentially lumped into the class far

outweighs those who are complaining.  An injunction or declaratory judgment would provide no

relief to the majority of the class, making certification under Rule 23(b)(2) inappropriate.

Furthermore, Plaintiffs' Complaint alleges Plaintiffs and other class members are entitled to

damages.  *See* FAC Prayer for Relief.  But "unless merely 'incidental' to the requested

declaratory or injunctive relief, claims for individualized monetary damages preclude class

certification under Rule 23(b)(2)."  *Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26, 29

(2d Cir. 2012) (citing to *Dukes*, 564 U.S. 338, 360-64 (2011).  Thus, Plaintiffs' proposed class

cannot be certified under Rule 23(b)(2).

In short, it is "plain enough from the pleadings" that Plaintiffs' proposed class is

deficient.  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  Accordingly, if the

Court were to decide not to dismiss the entirety of Plaintiffs' Complaint, it can and should still

strike the class allegations.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice under Rule 12(b)(6).  In the alternative, the Court should strike the class allegations from the Complaint pursuant to Rules 12(f) and 23(c)(1).


Dated:  November 3, 2016                    Respectfully submitted,

                                           **ARNOLD & PORTER LLP**

                                           */s/ Trenton H. Norris*
                                           Trenton H. Norris (admitted *pro hac vice*)
                                           Stephanie I. Fine (admitted *pro hac vice*)
                                           **ARNOLD & PORTER LLP**
                                           Three Embarcadero Center, 10th Floor
                                           San Francisco, CA 94111
                                           Telephone: (415) 471-3100
                                           trent.norris@aporter.com
                                           stephanie.fine@aporter.com

                                           Susan L. Shin
                                           **ARNOLD & PORTER LLP**
                                           399 Park Avenue
                                           New York, NY  10022-4690
                                           Telephone: (212) 715-1000
                                           susan.shin@aporter.com

                                           *Attorneys for Defendants THE PROCTER &*
                                           *GAMBLE COMPANY and THE PROCTER &*
                                           *GAMBLE DISTRIBUTING LLC*

# Exhibit A

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

LISA GUARIGLIA, MICHELINE BYRNE ) 
and MICHELE EMANUELE, individually ) Case No.: 2:15-cv-04307
and on behalf of all others similarly situated, )
                             ) **AMENDED CLASS ACTION**
                 Plaintiffs, ) **COMPLAINT**
                             )
      v. )
                             )
THE PROCTER & GAMBLE COMPANY, ) **JURY TRIAL DEMANDED**
and THE PROCTER & GAMBLE )
DISTRIBUTING LLC, )
                             )
                 Defendants. )
                             )

Plaintiffs Lisa Guariglia, Micheline Byrne and Michele Emanuele (collectively the "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following based upon personal knowledge as to their own acts, and otherwise upon information and belief based on the investigation of counsel:

## INTRODUCTION

1.       This class action is brought by Plaintiffs individually and on behalf of all persons in the United States who purchased Tide Pods laundry detergent from the time that they were first distributed for purchase by the public in mid-March 2012 through the present and were damaged thereby ("Class Members"). As set forth in more detail *infra*, Plaintiffs bring a variety of common law and statutory claims for **unfair and deceptive trade practices, consumer protection, breach of warranty, unjust enrichment, and product liability, all of which involve the same core issues of fact and law.**

2.       Tide Pods were, and are, manufactured, marketed, distributed, promoted, and/or sold by Defendants The Procter & Gamble Company ("P&G") and/or The Procter & Gamble

Distributing LLC ("P&G Distributing") (collectively, "P&G Companies" or "Defendants"). On information and belief, P&G Companies first offered Tide Pods for sale nationally in or around March 2012.

3.      This action is brought to remedy violations of law in connection with P&G's design, manufacture, marketing, advertising, and selling of Tide Pods. Tide Pods have serious design defects (collectively "Design Defects") that cause them to produce permanent blue/purple stains on white and light colored laundry, even when used as directed by P&G on Tide Pods' packaging.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d) because this action is between citizens of different states, a class action has been pled, and the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

5.      Venue is proper in this District under 28 U.S.C. §1391 (a), (b), and (c); 28 U.S.C. §1407; and 15 U.S.C. §22. P&G Companies do substantial business in the State of New York and within this District, advertise in this District, receive substantial compensation and profits from the sales of Tide Pods, and have made material omissions and misrepresentations and breaches of warranties in this District and Plaintiff Lisa Guariglia resides in this District so as to subject them to personal jurisdiction in this District.

## PARTIES

**Plaintiffs**

6.     Plaintiff Lisa Guariglia ("Guariglia") resides in the State of New York, Town of Islip.  On or about August 2012, Plaintiff purchased her first package of Tide Pods, which were designed, manufactured and/or distributed by Defendants.

7.     Guariglia purchased Tide Pods in New York, in significant part, based on Defendants' representations in the media and on its packaging that Tide Pods were a detergent plus stain remover plus brightener and based on the convenience of the product.  She saw no warnings on the product or in any media communications issued by Defendants or elsewhere that Tide Pods would stain her white or light colored laundry and that it would do so even if she followed the manufacturers' directions.  Shortly following the purchase, Guariglia started using Tide Pods as a replacement for liquid detergent on a regular basis.  Guariglia started noticing blue/purple stains on her white and light colored laundry but it was not until a few months after she had started using Tide Pods, and had already purchased additional Tide Pods, that she realized that the stains were caused by the product.  At that time, she stopped using Tide Pods.

8.     Guariglia always used Tide Pods according to the instructions on the packaging by placing Tide Pods in the washer drum first and then placing the laundry in the drum without overstuffing the machine.  Guariglia used various water temperatures as well as numerous washing settings when using Tide Pods.

9.     Guariglia attempted to get the blue/purple stains out of the laundry by running it through additional washes, using hot water and using liquid detergent as well as pre-treating the stains with Shout®.  Despite significant effort, Guariglia was unsuccessful in removing the blue/purple stains.  Guariglia discarded the unused portion of the Tide Pods.

10.     Guariglia estimates that Tide Pods ruined at least $200 worth of laundry, including towels, sheets and clothing items.

11.     At the point of sale, Guariglia did not know, and had no reason to know, that the Tide Pods had Design Defects as set forth herein, and would not have bought the Tide Pods had Plaintiff known the truth about them.

12.     As a result of the foregoing, Guariglia has been damaged.

13.     Plaintiff Micheline Byrne ("Byrne") resides in the State of Florida. Byrne purchased Tide Pods in Florida, in significant part, based on Defendants' representations in the media and on its packaging that Tide Pods were a detergent plus stain remover plus brightener and based on the convenience of the product.  She saw no warnings on the product or in any media communications issued by Defendants or elsewhere that Tide Pods would stain her white or light colored laundry and that it would do so even if she followed the manufacturers' directions. On or about October 2012, Byrne purchased her first package of Tide Pods, which were designed, manufactured and distributed by Defendants.

14.     Byrne used Tide Pods according to the instructions on the packaging by placing Tide Pods in the washer drum first and then placing the laundry in the drum without overstuffing the machine.  Byrne used various water temperatures as well as numerous washing settings when using Tide Pods.

15.     Byrne first noticed the blue/purple stains on her families' white and light colored laundry in December of 2012, after her son and daughter came home from college and both started complaining that many articles of their clothing had blue/purple stains after Byrne had washed their laundry.  Byrne used Tide Pods for at least another year and a half before she realized it was the Tide Pods that were causing the blue/purple stains.

16.     Byrne tried to get the blue/purple stains out of the laundry by using stain removers and rewashing the laundry in hot water, but this did not work.  She also unsuccessfully tried using bleach and washing the laundry numerous times.  Byrne has estimated that Tide Pods damaged at least $500 worth of laundry, most of which was clothing.  Byrne also discarded the unused portion of the Tide Pods.

17.     At the point of sale, Byrne did not know, and had no reason to know that the Tide Pods had Design Defects as set forth herein, and would not have bought the Tide Pods had Plaintiff known the truth about them.

18.     As a result of the foregoing, Byrne has been damaged.

19.     Plaintiff Michele Emanuele ("Emanuele") resides in the State of California. Emanuele purchased Tide Pods in California, in significant part, based on Defendants' representations in the media and on its packaging that Tide Pods were a detergent plus stain remover plus brightener and based on the convenience of the product.  She saw no warnings on the product or in any media communications issued by Defendants or elsewhere that Tide Pods would stain her white or light colored laundry and that it would do so even if she followed the manufacturers' directions. On or about March 2013, Plaintiff purchased her first package of Tide Pods, which were designed, manufactured and distributed by Defendants.

20.     A few months following the purchase, Emanuele started noticing blue/purple stains on her white and light colored laundry but it was not until at least six months after she had started using Tide Pods, and had already purchased additional Tide Pods, that she realized that the stains were caused by the product.  At that time, she stopped using Tide Pods.

21.     Emanuele always used Tide Pods according to the instructions on the packaging by placing Tide Pods in the washer drum first and then placing the laundry in the drum without

overstuffing the machine. Emanuele used various water temperatures as well as numerous washing settings when using Tide Pods.

22.     Emanuele was not able to get these stains out after running the laundry through additional washes, using hot water, liquid detergent as well as bleach. Despite significant effort, Emanuele was unsuccessful in removing the blue/purple stains. Emanuele also discarded the unused portion of the Tide Pods.

23.     Emanuele estimates that Tide Pods ruined at least $650 worth of laundry, including towels, sheets and clothing items.

24.     At the point of sale, Emanuele did not know, and had no reason to know that the Tide Pods had Design Defects as set forth herein, and would not have bought the Tide Pods had Plaintiff known the truth about them.

25.     As a result of the foregoing, Emanuele has been damaged.

**Defendants**

26.     P&G is an Ohio corporation whose principal place of business is located at One Procter & Gamble Plaza, Cincinnati, Ohio 45202. P&G engages in business throughout the State of Ohio and the United States. P&G is engaged in the business of manufacturing, marketing, and distributing health care and branded consumer products under various brand names including Charmin, Bounty, Vicks, Tide Pods, Tide, Always, Oral-B, Crest, Gillette, Braun, Pantene, Bounty, Dawn, Gain, Olay, Cover Girl, Ivory, Secret, and Downy. In addition to this direct conduct, as the parent company of P&G Distributing, P&G is liable for the actions of P&G Distributing under basic doctrines of agency and corporate law.

27.     P&G Distributing is a Delaware corporation whose principal place of business, upon information and belief, is One Procter & Gamble Plaza, Cincinnati, Ohio 45202. P&G

Distributing engages in business throughout the State of Ohio and the United States. P&G Distributing is a wholly owned subsidiary of Defendant P&G. P&G Distributing distributed Tide Pods to the stores in which Plaintiffs and the other Class Members bought Tide Pods during the relevant period.

## FACTUAL ALLEGATIONS

28.    P&G directs and controls all significant aspects of the sale of its Tide products, including the manufacturing, marketing, packaging, distribution, and pricing. P&G products are sold at thousands of retail stores throughout the United States and on consumer retail websites.

29.    In early 2012, P&G embarked on an approximately $150 million marketing campaign for Tide Pods which carried the theme "Pop in. Stand out." This campaign appeared in various media outlets including traditional, digital, mobile, and social media, as well as in stores. This ad campaign invited customers to simply "pop" the product into the washing machine and see the resulting "stand out" clean.

30.    On March 6, 2012, P&G, in a press release, introduced Tide Pods as its new "breakthrough technology" laundry detergent that took eight years to develop. The press release describes Tide Pods as a "multi-dimensional laundry detergent" that features three chambers "especially designed to brighten, fight stains and clean." Tide Pods "also feature a best-in-class film that dissolves and works effectively in all water temperature." The March 6, 2012 press release emphasized the fact that "40% of people do their laundry in cold water most of the time" and "Tide Pods are made with a new, best in class film that dissolves and works effectively in all water temperatures-even those that are nearly freezing."

31.    Tide Pods are sold in numerous count packages. Each Tide Pod is called a pac. The front of each package states that Tide Pods are a "detergent", "stain remover" and

"brightener." The back of each package includes instructions on how to use the pacs as follows: "(1) Handle with dry hands; (2) Add pac to drum; (3) Add clothes; and (4) Close package after use." The package directions state that Tide Pods "[d]issolve[ ] in all temperatures." The package also contains warnings to "KEEP OUT OF THE REACH OF CHILDREN AND PETS". The directions do not contain any disclosures about the risk that permanent blue/purple staining may occur on white and light colored laundry when the detergent is used as instructed. P&G failed to inform consumers, through the directions on the packaging or any other written disclosure, even when consumers use Tide Pods as instructed by P&G, that blue/purple staining will result due to defects in the design of Tide Pods.

32.     Tide Pods are marketed as a detergent, stain remover, and brightener but, rather than cleaning laundry, removing stains, and brightening laundry, Tide Pods actually have the opposite result, by causing permanent blue/purple stains on white and light colored laundry even when used the proper way according to the package directions.

33.     On numerous consumer websites as well as on P&G's own website, P&G has acknowledged that Tide Pods can cause blue/purple stains on laundry and insists that this staining can only occur when the consumer is not using the product correctly.

34.     On February 20, 2014, *Consumer Reports* published an article about the problem with Tide Pods. The article, "Users of Tide Pods speak out about stained laundry-Tide responds to reports of purple and blue stains," reported that *Consumer Reports* observed a number of reports on their website and others about the multicolored Tide Pods leaving purple and blue stains on laundry. The article published the following complaint from its website:

> 'This product dissolves poorly and has ruined my son's pullover
> (cream colored) and left purple stains on the fabric,' wrote one of
> our readers in a user review. 'It was a beautiful piece of laundry
> that is now ruined! I am not a happy customer!' Neither was

another reader who wrote: 'Tide Pods left bluish/purple stains on white towels, and other whites (socks, tee shirts, and pillowcases). This product should be taken off the market until they figure out the problem.'

35. The February 20, 2014 *Consumer Reports* article stated that *Consumer Reports* reached out to P&G with respect to these complaints and received the following response, in an email, from Tracey L. Long, who handles inquiries about fabric care for P&G:

'The most common contributors to the development of a blue/purple stain on fabrics is not placing the pac into the washing machine drum BEFORE adding the clothes and/or overstuffing machine with laundry,' Long wrote in an e-mail. 'This is important to ensure machine has enough space to provide the agitation needed for the best clean and to maximize contact with 'free water' in the machine.'

36. In the same article, Long went on to offer these tips:

- Do not place the pod in the dispenser drawer.

- Do not open the pod/pac or use for pretreating.

- Do not use Tide Pods in prewash cycles.

Long also made some recommendations for removing stains from laundry that was caused by the Tide Pods. "We expect any unintended fabric staining should be treatable by washing the stained item again via another wash load using either a Tide Pod or Liquid Tide laundry detergent," Long wrote. If that doesn't work, Tide recommends:

- Rinse the stain under hot water to remove as much as possible.

- Gently wring the excess water from the item and lay it out flat.

- Apply household rubbing alcohol to the stain, making sure it covers the entire stain. (Test on similar fabric or inside fold first.)

- Let the stain soak for at least 10 minutes-the longer the better.

- Using warm or hot water, rinse the fabric. This should remove the stain.

- If the stain has not been completely removed, repeat the steps above.

37. On April 18, 2014, the *Consumerist* published an article, written by Laura Northrup titled, "Detergent Pods Shouldn't Be This Hard To Figure Out". One reader of the *Consumerist* reported that the pods stained her laundry and after contacting Tide she received the following response that indicated very different usage directions then what was on their packaging.

Thanks for contacting Tide, Lauren!

I'm sorry your Tide Pods didn't dissolve and stained some of your laundry. We appreciate your bringing this to our attention, and I'm sharing your report with the rest of our Tide Team. If you haven't done so already, I hope you'll try the product again with the following tips for best results:

- Always add Tide Pods to the drum of the washing machine BEFORE loading the clothes.

- Do not use a 'delicate' cycle for heavy loads. Do not use a quick cycle or less than 30 minutes.

- Switch to a warm setting during the winter months or whenever water is exceptionally cold.

- Do not overload your washer.

38. The *Consumerist* article further stated that *Consumer Reports* had responded to an email from the *Consumerist* regarding the staining issue with Tide Pods and stated that a P&G representative explained to Consumer Reports the following:

The most common contributors to the development of a blue/purple stain on fabrics is not placing the pac into the washing

machine drum BEFORE adding the clothes and/or overstuffing
machine with laundry. This is important to ensure machine has
enough space to provide agitation needed for the best clean and to
maximize contact with 'free water' in the machine.

39.    *Consumer Reports* magazine tells of dozens of online complaints about the

product     leaving     red,     blue,     or     purple     stains     on     white     laundry.

http://www.consumerreports.org/cro/appliances/laundry-and-cleaning/laundry-detergents/

laundry-detergent-ratings/models/user-reviews/tide-pods-99044978.

40.    P&G maintains a website for its Tide products at http://tide.com/en-us (the "Tide

Website"). The following is a very small sampling of complaints by consumers, regarding the

blue/purple stains on laundry caused by Tide Pods as reported on the Tide Website. There are

easily hundreds more similar complaints related to blue/purple stains caused by Tide Pods on the

Tide Website:[1]

### 'My whites are GREY!!!' November 8, 2014

'I have been using Tide pods for about 8 months and I love the
concept-- BUT I've been noticing that my white things are now a
silver gray color and my husband even remarked that his socks
look a little blueish!!! I am returning the 2 bags I have and will
look for something without that pretty blue and orange color, and
see if I can salvage my laundry.' - Rookie954, Colorado.

Response from Tide:

Fabric Care Community Manager, Consumer Care, December 3,
2014

Oh no! We're sorry to hear about this and would like to help! If
you're placing the POD® directly in the machine before adding
clothes and not overloading, then we're not sure what could be
causing the problem. We would like to chat about this at 1-855-
236-3353. In addition, if you'd like to try Tide PODS® without

---

[1] http://reviews.tide.com/7389/tide-laundry-detergent-pacs/tide-tide-pods-reviews/reviews.
htm?sort=rating&dir=asc.

dyes or perfumes, we highly suggest Tide Free & Gentle PODS®. Thanks!

**'Stained whites' October 24, 2014**

'I have used Tide for years and was delighted to try the Tide pods. I thought I was using them successfully until I started to notice lavender/blue splotches on my husband's white undershirts. Eventually, my whites have become stained also.  I realize now that this is a Tide Pod problem.  I used them correctly and any efforts of remediation (using bleach, re-washing, etc., etc.) do not work as the clothes have been washed AND dried and those stains are SET. T hanks for nothing, Tide.  I will be using other detergents from now on.'- SeaPort, Illinois.

Response from Tide:

Fabric Care Community Manager, Consumer Care, November 6, 2014

We're really sorry to hear that you're having trouble with our PODS®!  If you're placing the POD® directly in the machine and not overloading, then we will need to hear some more details to find out what is going wrong here.  Please call us at 1-855-236-3353. Thank you!

**'Tide Pods' October 21, 2014**

'I have always used tide.  Recently tried the pods and have been greatly disappointed.  blue spots all over white t shirts and other whites.' - sclark, ohio

Response from Tide:

Fabric Care Community Manager, Consumer Care, November 6, 2014

Oh no!  We're sorry that your first time with our PODS® let you down.  Did you place the POD® directly in the machine before adding clothes?  If you did this and did not overload, then we are not sure what could have caused this.  Please call us at 1-855-236-3353 if this problem persists and if you cannot get those stains out. We would like to help!

**'Not what I expected' October 10, 2014**

'I've been a Tide user for many years so I assumed the Pods would do a great job with less work.
Now my whites have wide blue streaks in them, hubby's shirts have streaks or stains that I can't remove.
I do read the directions and put the pods in the machine first.
I will have to discard the rest of the Pods I'm sorry to say.' - missannie, Melbourne, FL

Response from Tide:

Fabric Care Community Manager, Consumer Care, November 6, 2014

We're sorry to hear this! Overloading can also be an issue here. If you think this is a recurring issue or if you cannot get the stains to come out, please call us at 1-855-236-3353. Thanks for giving us a try!

**'Tide Pods' October 10, 2014**

'Absolutely hate this product! I was done washing my clothes so I put them in the dryer. When I took them out I noticed a hard light purple spot on my clothes. I soon realized that it was what was left of the pod. It apparently did not dissolve all the way when they were getting washed so when I dried my clothes they were little hard spot on multiple laundry. So I washed them again with a liquid detergent from a different brand, and it turned out great! No hard spots and I didn't have to wash my clothes twice. I would not recommend this product to anyone.' - Avery, Atlanta

Response from Tide:

Fabric Care Community Manager, Consumer Care, November 6, 2014

Avery, we're sorry to hear that you've had trouble with your PODS®. We don't expect this to happen if you follow the instructions. If you placed the POD® directly in the machine before adding clothes and did not overload, then you should not be experiencing this problem. If this is the case, please call us at 1-855-236-3353. Thank you!

**'There is a problem with Pods' October 1, 2014**

'We have been washing clothes for decades and have used Tide exclusively for all of these years. We recently switched to Tide

Pods and immediately noticed bluish/purple stains appearing on clothes, bed sheets, and wash cloths. The stains seem to be particularly bad in the perspiration area of shirts. Numerous clothes have been ruined.

The Pods are always put in first, we never overload the machine, and the washers are less than two years old. There is a problem!' - Harry C, San Antonio, TX

Response from Tide:

Fabric Care Community Manager, Consumer Care, October 6, 2014

This is so strange, Harry! Please call us at your convenience at 1-800-879-8433 so that we can figure out what is going wrong here. Thank you!

**'Blue problem!' September 18, 2014**

'This product has a problem. It leaves blue stains on white or lightly colored (ex.; light yellow) and other garments. And subsequent washing with Tide Pods or Tide detergent doesn't resolve the stain. After decades of using only Tide I will be looking for another detergent. I really hope you can get this problem solved.' - Peewee, Lexington, ky

Response from Tide:

Fabric Care Community Manager, Consumer Care, October 6, 2014

We're sorry to hear that you've had issues with this product and we would like to help. First, be sure that you are adding the POD® to the machine's drum first before adding clothes and do not overload. If you follow these instructions and experience the same results, please call at 1-800-879-8433. Thank you!

**'Correct the problem!' July 15, 2014**

'I too have had issues with blue staining in my laundry while using the Tide Pods. After reading all of the negative reviews, when can we expect a solution. How about remove the blue dye in the product?'- Tideboohoo, Edison, NJ

Response from Tide:

14

Fabric Care Community Manager, Consumer Care, August 1, 2014

Hi there! We're so sorry about your bad experience with these PODs. We are trying to help all of our customers with this issue. First, follow these tips. Always put your POD in the machine before you add clothes and water. Never overload and don't use the dispenser drawer. If you are certain that you have followed all of these steps and this has still happened, please give us a call at 1-800-879-8433 so that we can get to the bottom of it. Thank you!

**'Stains clothes, leaves sticky residue 'lump'' July 9, 2014**

'I am tired of seeing people being told that if instructions are followed as directed, the pods will dissolve completely. This is not true. I've had a sticky residue 'lump' left on my clothes at least three times, (doesn't come off, btw) and now my favorite white shorts are stained with a blue streak.
There are times I have to fill the washer completely and the pod still doesn't dissolve, and then I have to run it with no clothes in for a minute to get the pods to pop. Then I have to add the clothes, pushing them down into the water. FAR from convenient!
It's sad when you have to check your clothes completely when they come out of the washer to make sure you don't set the stains by putting them directly into the dryer. And the sticky lump will also remain on your clothes after the dryer. Again...how is this more convenient?'
- Shelley678, PA

Response from Tide:

Fabric Care Community Manager, Consumer Care, August 1, 2014

Hi there, Shelley. So we always advise putting the POD right in the drum before you add water or laundry. If you get any plastic dried on your clothes, be sure to soak the garment in hot water for at least an hour. This should ensure that it dissolves.
A member of our team at 1-800-879-8433 can help you figure out what is going wrong here! We hope that we can be of some help here. Thank you!

**'Disappointed' July 4, 2014**

'I have used Tide product for a while but most recently have switched to the PODS. HUGE mistake!!! They have destroyed bath towels and laundry by leaving a blue/purple stain on my laundry. You do not notice on dark laundry but can not hide it on

15

light colors. I will not by this product again.' - Chef, Honesdale, PA

Response from Tide:

Fabric Care Community Manager, Consumer Care, August 1, 2014

Hi there, Chef! We're so sorry that you have had issues with our Tide PODs. This could very well be a simple fix. Always throw in your POD directly in the machine before you load your clothes and never overload. We would love to get some more details about this incident if you could give us a call at 1-800-879-8433. Thanks!

**'ruined my clothes' June 20, 2014**

'Used Tide pods for 3 reasons, less waste, convenience, good cleaning record. NO LONGER THE CASE! I followed the directions and ruined so many clothes I could scream. A brand new uniform is RUINED as well as a new T and some other clothes. RUINED with PURPLE/BLUE STAINS. and I didn't notice them until they were dry and nothing is taking the stains out.'- lass, corpus christi, texas

Response from Tide:

P&G Community Manager, Consumer Care, June 25, 2014

We're sorry to hear about your experience with Tide Pods. Often, it is sufficient to wash the stained item again via another wash load using either a Pod or a liquid laundry detergent. If this does not work:
Rinse the stain under hot water to remove as much as possible.
Gently wring the excess water from the item and lay it out flat.
Apply household rubbing alcohol/burning alcohol to the stain, making sure it covers the entire stain. (Test on similar fabric or inside fold first.)
Let the stain soak for at least 10 minutes – the longer the better.
Using warm or hot water, rinse the fabric and this should remove the stain.
If the stain has not been completely removed, repeat the steps above
If you'd like to speak with someone about your experience and perhaps try another version of Tide, please give us a call at 1-(800) 879-8433. We're here Monday through Friday from 9 a.m. to 6 p.m. ET.

16

**'As everyone said-They don't dissolve.' May 25, 2014**

'I got these, wanting to simplify my laundry room, having a pretreater, oxi, and tide pods, but its not meant to be. I read the instructions, and followed them to a T. My laundry came out with the casing fused to my husband's clothes, and with blue dye all over. I use soft water, and a great washing machine, so what gives?
I have resorted to pre-dissolving my 'easy and simple' pods before I add them to the wash. I am doing this, just so I don't waste them. I am really unhappy, as other tide, especially Tide Ultra white and bright with bleach was rated really well. I am just so upset that all my husband's work close were destroyed. If this is happening to you, I advise you to get ride of them, or dissolve them immediately before use. Really shocked that this is a tide product.'
- Raceheal, Mn

Response from Tide:

Fabric Care Community Manager, Consumer Care, June 5, 2014

We're sorry to hear about the Pods not dissolving completely in your washing machine and your husbands work laundry. We've extensively tested the Pods and feel certain they'll dissolve completely and not stain when used as directed.
Here are some tips for using the Pods so they dissolve completely:
Add the Pod to drum of washing machine before loading the clothes.
Do not use 'Delicate' cycle for heavy loads.
Do not use a quick cycle less than 30 minutes.
Pods cannot be used in pre-wash cycles.
Do not place in the dispenser drawer.
Pods can be used in temperatures ranging from 20 to 95 degrees C (68 to 203 degrees F).
If you'd like to speak with someone about your experience and perhaps try another version of Tide, please give us a call at 1-(800) 879-8433. We're here Monday through Friday from 9 a.m. to 6 p.m. ET.
Thanks!

**'Tide PODS are horrible' May 20, 2014**

'I wash my clothes at a laundromat since I live in NYC. It was nice to not have to lug a big bottle of detergent with me along with a big bag of clothes! I first used it in cold water and got the same

results as everyone else....gobs and purple stains.  I realized I could not use them in a cold water wash do decided to then only use them for hot water and the SAME thing happened!

I would then go home and try to hand wash these gobs and stains out which was a pain to go over every piece of laundry that you just washed!  Of course I would miss a few and the gobs then dried and became crusty and hard.

I don't understand Tide's CUSTOMER SERVICE.  SO MANY people have complained on this site and they just keep sending the same automated/pre-written response instead of acknowledging that the might actually be an issue!  I have used TIDE for years and my mother used to use TIDE as well but I am so disappointed that I may switch brands all together just out of principle!' - Maye, New York, NY

Response from Tide:

Fabric Care Community Manager, Consumer Care, June 5, 2014

We're sorry you're disappointed with our response, but it's what we have found to be helpful to others who have had the same experience.

All of our products are thoroughly tested before they go on the market, and we feel confident Tide Pods work well when used as directed.

Still, if you'd like to speak with someone about your experience and perhaps try another version of Tide, please give us a call at 1-(800) 879-8433.  We're here Monday through Friday from 9 a.m. to 6 p.m. ET.

**'Tide Pods STAINED my cloth' April 19, 2014**

'As any college student would be, I was very excited about the convenience of these tide pods as I often have to travel to campus to do laundry.  However, I would highly recommend customers buy a different brand or different type of laundry detergent.  Tide pods are supposed to be an easy way to ensure the cleanliness of my laundry, including the removal of stains, when it did the exact opposite!  The 'stain removal' swirls on the top of the pods STAINED my clothes!  I read the instructions, making sure that my loads were not full, washing on the warmest water my clothes could handle, and putting the pod in the washing machine first.  What happened? --> in the very first load, 4 articles of laundry became stained with dark blue dots, and a few orange ones.  Being a college student, as mentioned before, I do not have the spare money to go out and buy new clothes.  I do what I can to take care

of my clothes, ensuring I get the most use out of them, and Tide Pods have prevented me from doing so. Unfortunately, I bought the giant bin of these pods at Costco and will be donating them to a shelter. I am very upset with this product and have told my family and friends to start using Arm & Hammer products from now on.'- Emmmm4, Ann Arbor, MI

Response from Tide:

Fabric Care Community Manager, Consumer Relations, April 25, 2014

We're sorry about your experience with the Tide Pods. Since this is not what we'd expect, we'd like to talk to you to get more information and perhaps replace the Pods with a different version of Tide.
Please give us a call at 1-(800) 879-8433. We're here Monday through Friday from 9 a.m. to 6 p.m. ET. Thanks!

**'Disappointed' April 1, 2014"**

'I started using tide pods almost a year ago and loved them until recently.
Now all my whites are coming out with purple spots all over them.
I'm going back to liquid even though I love the convenience of the pods. Tide has a great idea but need to improve on their idea. A lot of stained clothes will be ending up in the landfills. Can't even donate to charity due to stains.' - AnnaMae, CA

Response from Tide:

Fabric Care Community Manager, Consumer Relations, April 25, 2014

Hi, AnnaMae.
We're concerned about your report, since the Pods should still be working the same way you'd expect. We'd like to talk to you to find out more about your experience and perhaps replace the Pods with another version of Tide.
Please give us a call at 1-(800) 879-8433. We're here Monday through Friday from 9 a.m. to 6 p.m. ET. Thanks!

**'Tide Pods…' March 24, 2014**

'When Pods first came out, I absolutely loved them. I was having trouble with my front load washer and liquid detergent staining my

19

bath towels, and I thought Pods was a great solution to that problem. They're very convenient to use, but then my whites started getting purple stains on them, and for a while, I couldn't figure out where the stains were coming from. Then it dawned on me, the pods are very colorful, and low and behold, one of the colors is purple! Mystery solved. I won't be purchasing Pods again, unless the purple color is removed from the mix. I've had to replace a good many of my husband's undershirts, which has been costly. When I contacted P&G about the problem, they essentially said there was no problem, due to extensive testing on their end with no stain results. They're sending me a coupon in the mail for a free Tide detergent (up to 64 uses). I don't understand how so many people have stained clothes, and P&G thinks there is no problem. That's baffling.' - Kasimir, Newark, OH

Response from Tide:

Fabric Care Community Manager, Consumer Relations, April 25, 2014

We're sorry to hear about your experience with the Tide Pods. Due to the extensive testing we've done, we feel certain that when used as directed, Tide Pods will dissolve completely and not stain laundry.
It may also be helpful to know that if you have a stain, rewashing the laundry with another Pod or with another version of Tide will remove it.
Thanks for posting your review and allowing us to replace your Tide Pods purchase.

**'Bluish/purple stains' March 6, 2014**

'I would like to briefly share my experience using Tide Pods. Started to see bluish/purple stains on all of my white clothes. Took a while to figure out that the root cause was the Tide Pods. Had already thrown out/cut up for rags many of these stained clothes/sheets as the stains would not come out.
I contacted tide 'customer service' (I use this term loosely). I was told that no problem existed and that consumers who had these stains were not intelligent enough to follow their label directions. Even though they insisted no staining problems existed, I was given a SIX step process to remove the stains. Hmmmm. Let me see - no problem exists, but they have a process in place to correct said nonexistent problem.
For anyone with internet access, please research for yourself to see whether or not Tide is for you. Although the company says no

20

problems exist, there are many, many testaments out there to the contrary.

After the Tide 'customer service' response, I have decided that it is not for me. Using their product should not require a SIX step process to correct the resulting damage this product causes.' - Thsbud, Mo

Response from Tide:

Fabric Care Community Manager, Consumer Relations, April 25, 2014

We're sorry you're disappointed with the response you received from our Consumer Relations representative.

While we understand your frustration, we wouldn't put a product on the market that ruined laundry.  We did extensive testing on Tide Pods and feel certain that when used as directed they don't leave stains.

We hope when you called you were offered a replacement for your purchase so you could try another version of Tide.

We appreciate you taking the time to review the Pods!

41.     The responses to the staining complaints reported to the Tide Website regarding

Tide Pods are consistent.  If the consumer did not state specifically that he or she followed the

instructions and placed the pods in the washer first, then P&G's response is that the pods must be

placed in the washer first.  If the consumer stated that he or she placed the pods in the washer

first, then P&G's response can contain a number of solutions which include: "Do not use

'Delicate' cycle for heavy loads; Do not use a quick cycle less than 30 minutes; Pods cannot be

used in pre-wash cycles; Do not place in the dispenser drawer; Pods can be used in temperatures

ranging from 20 to 95 degrees C (68 to 203 degrees F)."

42.     It is important to note that these additional washing directions provided by P&G

in response to customer complaints of staining are not included on the Tide Pods packaging, and

if a consumer did not become privy to these additional washing instructions (it would most likely

be in response to a complaint to P&G of staining), it would already be too late to avoid the

staining problem and the resulting ruined laundry. In addition, P&G's remedial instructions contradict P&G's March 6, 2012 press release introducing Tide Pods.

43. P&G reiterated over and over, in its responses to consumer complaints, that it would not put a product on the market that would ruin laundry, that Tide Pods have been successfully tested, and it is certain that if used as directed, Tide Pods do not stain laundry. However, it is clear from Plaintiffs' experiences, as well as those of the customer complaints set forth above, and the hundreds of additional complaints on the Tide Website, that even when used as directed, Tide Pods permanently stain white and light colored laundry. In fact, as is evidenced from the experiences of Plaintiffs and numerous other consumers, these stains, contrary to P&G's representations, are permanent and do not come out even after following P&G's stain removal directions.

44. Plaintiffs and the other Class Members experienced, and continue to experience, blue/purple staining on white and light colored laundry, despite following the instructions for use of Tide Pods on the packaging.

45. P&G had exclusive knowledge that Tide Pods have a Design Defect and that the Design Defect causes permanent blue/purple stains on white and light colored laundry, facts not known to Plaintiffs and the other Class Members. P&G's exclusive knowledge of these material facts gave rise to a duty to disclose such facts, which it failed to perform.

46. Further, as the blue/purple staining became undeniable, P&G began recommending, in its replies to complaints, the additional usage directions that do not appear on or with Tide Pods packaging.

47. P&G intended for customers to believe its statements and representations that Tide Pods were effective as a detergent, stain remover, and brightener. However, P&G

concealed material facts regarding Tide Pods, including the serious Design Defects which caused Tide Pods to stain and ruin white or light colored laundry and be unusable in the manner for which Tide Pods were advertised, marketed, and sold, even though consumers used Tide Pods as instructed by P&G.

48.     P&G knew and was aware, or should have known and been aware, before marketing and selling Tide Pods, that they were inherently defective because even when used as instructed, Tide Pods were substantially likely to cause blue/purple stains on white and light colored laundry.  P&G nonetheless failed to warn its customers of the Design Defects inherent in Tide Pods or the staining problems which would result from the alleged defects.

49.     P&G has profited either directly or indirectly, by concealing the nature of the Design Defects and misrepresenting the cause of the blue/purple stains associated with the defects, which have enabled it to continue to profit from its sale of Tide Pods.

50.     P&G admits and acknowledges that blue/purple staining is directly caused by Tide Pods.  Despite this knowledge, P&G has failed to take the necessary steps to adequately design and/or test Tide Pods to ensure that they were free from Design Defects complained of herein.  Instead, P&G sold and continues to sell Tide Pods even though it knew, or was reckless in not knowing, that they (a) contained inherent material defects; (b) were not of merchantable quality; and (c) would result in causing permanent blue/purple stains on white and light colored laundry, even when used as instructed.

51.     Despite having repeated notice of the above-described Design Defects in Tide Pods and despite the reasonable expectations of consumers created by P&G's marketing of Tide Pods, P&G has engaged in the following routine, albeit wrongful course of conduct, where P&G:

       a.     Designed, manufactured, and sold Tide Pods with Design Defects that caused blue/purple stains on white and light colored laundry;

b.  Failed to disclose that Tide Pods had Design Defects that caused permanent blue/purple stains on white and light colored laundry;

c.  Continued to manufacture, market, advertise, distribute, and sell Tide Pods to consumers when it knew or should have known Tide Pods had Design Defects that caused permanent blue/purple stains on white and light colored laundry;

d.  Failed to disclose the nature of the defects to consumers;

e.  Failed to disclose that Tide Pods are not of merchantable quality;

f.  Failed to implement a recall to adequately announce, remedy, and correct the defects for consumers; and

g.  Failed to disclose that despite following the recommended instructions on use by P&G, consumers would still experience permanent blue/purple stains on white or light colored laundry.

52.  To this day, P&G continues to conceal material information from users, consumers, and the public that, among other things, Tide Pods are: (a) inherently defective; and (b) not of merchantable quality.

53.  Defendants' failure to disclose the Design Defects of the Tide Pods and their representations related to the Tide Pods were designed to increase sales of the Tide Pods and a reasonable person would attach importance to Defendants' misrepresentations in determining whether to purchase the Tide Pods.

54.  All jurisdictional prerequisites have been and/or are hereby satisfied by and through the filing and service of this Complaint.  Moreover, in light of the thousands of complaints consumers have made directly to P&G; complaints posted on the internet and other forums; and P&G'S refusal to effectively resolve the staining problems, any additional pre-suit complaints or other notice to P&G would have been futile.

## TOLLING

55. **Discovery Rule**. Plaintiffs' claims accrued upon discovery that Tide Pods caused permanent staining on their white and light colored laundry even when used according to the manufacturer's directions, indicating that Tide Pods have Design Defects. Because P&G Companies concealed the fact that Tide Pods have Design Defects which cause permanent staining on white and light colored laundry even when used according to manufacturer's directions, Plaintiffs did not discover and could not have discovered this fact through reasonable and diligent investigation until after they experienced the staining, could reasonably exclude other potential causes of the staining, and discovered that Tide Pods caused the staining.

56. **Active Concealment Tolling**. The statute of limitations has been tolled by P&G Companies' knowing and active concealment of the fact that Tide Pods caused permanent staining on white and light colored clothing. P&G Companies kept Plaintiffs ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiffs. Plaintiffs could not reasonably have discovered the fact that Tide Pods would cause permanent staining to their white and light colored laundry due to Design Defects even when used according to manufacturer's directions.

57. **Estoppel**. P&G Companies were and are under a continuous duty to disclose to Plaintiffs and the other members of the Class the true character, quality, and nature of Tide Pods. At all relevant times, and continuing to this day, P&G Companies knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of Tide Pods. Plaintiffs and the other members of the Class reasonably relied upon P&G Companies' affirmative misrepresentations, and knowing, affirmative, and/or active concealment. Based on

the foregoing, P&G Companies are estopped from relying on any statutes of limitation in defense of this action.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, under Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.  The Class and Subclasses that Plaintiffs seek to represent are defined as follows:

A.     **Nationwide Class**: All persons in the United States who purchased Tide Pods laundry detergent from the time that they were first distributed for purchase by the public, in mid-March 2012 through the present.

B.     **New York Subclass**: All persons in New York who purchased Tide Pods laundry detergent from the time that they were first distributed for purchase by the public, in mid-March 2012 through the present.

C.     **Florida Subclass**: All persons in Florida who purchased Tide Pods laundry detergent from the time that they were first distributed for purchase by the public, in mid-March 2012 through the present.

D.     **California Subclass**:  All persons in California who purchased Tide Pods laundry detergent from the time that they were first distributed for purchase by the public, in mid-March 2012 through the present.

59.     Excluded from the proposed Class and Subclasses are (i) P&G Companies, any entity in which P&G has a controlling interest, and P&G Companies' officers, directors, legal representatives, predecessors, successors, and assigns; and (ii) any member of the immediate families of excluded persons.

60.     The proposed Class and Subclasses consist of many thousands, hundreds of thousands or as many as millions of persons throughout the United States, making individual joinder of all proposed Class and Subclass Members impractical.

61.     All proposed Class and Subclass Members share a united interest in the fair, just, and consistent determination of the questions of law and fact necessary to the adjudication of P&G Companies' liability, which predominate over questions affecting only individual members. These key common liability questions include:

a.      whether Tide Pods are defective such that they permanently stain laundry even when the consumer follows directions;

b.      whether the Defendants failed to properly warn consumers about the defect;

c.      whether and when Defendants knew or should have known that Tide Pods were defective;

d.      whether any of the representations made by Defendants regarding Tide Pods and their qualities were materially misleading or failed to disclose material information about the permanent stains they can cause on laundry even if used according to directions;

e.      whether Defendants' conduct violated state consumer protection statutes and state fraud and deceptive practice acts;

f.      whether Defendants breached implied warranties covering Tide Pods;

g.      whether Defendants were unjustly enriched at the expense of Plaintiffs and the other members of the proposed Class and Subclasses;

h.      whether Defendants' marketing and pricing of the Tide Pods causes reasonable consumers to pay more for Tide Pods as opposed to liquid detergent;

      i.      whether Defendants negligently designed, manufactured, distributed, marketed, tested, and/or sold Tide Pods;

      j.      whether a national class or statewide classes, and/or other Subclasses, are superior, within the requirements of Rule 23(b)(3), on any of the claims.

62.    The proposed Class and Subclasses are also united on fundamental questions regarding its members' entitlement to damages and equitable relief, including:

      a.      whether proposed Class and/or Subclass Members are entitled to damages and/or equitable relief based on their payments, in whatever form, for Tide Pods and related costs incurred as a result of purchase;

      b.      if proposed Class and/or Subclass Members are so entitled, what is the appropriate scope, extent and measure of damages and equitable relief that should be awarded;

      c.      whether proposed Class and/or Subclass Members are entitled to attorneys' fees, prejudgment interest, and costs and expenses of suit.

63.    Plaintiffs' claims are typical of the claims of the other members of the proposed Class and Subclasses because Defendants uniformly misrepresented the effectiveness of Tide Pods, and uniformly and actively suppressed, concealed, and failed to disclose the risk of damage to white or light colored laundry associated with the products on the product label and in advertisements.  Defendants' uniform conduct deprived Plaintiffs and all other members of the proposed Class and Subclasses of their ability to make an informed decision about whether to use and/or pay for P&G's Tide Pods.

64.    Plaintiffs and their counsel will fairly and adequately assert and protect the interests of all members of the proposed Class and Subclasses.  Plaintiffs have retained counsel

who are competent and experienced in complex class action litigation, including consumer litigation. Plaintiffs have no interest adverse to those of any absent Class and/or Subclass Members, with respect to the key common issues of Defendants' product design, labeling, and marketing.

65.     All members of the proposed Class and/or Subclasses share a common interest in the determination of all factual and legal issues pertinent to Defendants' liability through the disgorgement and restitution of Tide Pods revenue unjustly obtained by Defendants.

66.     Class certification is proper under Fed. R. Civ. P. 23(b)(l)(A) because the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and Subclasses and establish incompatible standards of conduct for Defendants.

67.     Class certification is proper under Fed. R. Civ. P. 23(b)(l)(B) because the prosecution of separate actions by individual Class and/or Subclass Members would create a risk of adjudications with respect to individual Class and/or Subclass Members which would, as a practical matter, be dispositive of the interest of the other members not parties to these adjudications and/or substantially impair their ability to protect these interests.

68.     Class certification is proper under Fed. R. Civ. P. 23(b)(3) because common issues of law and fact predominate over any questions affecting only individual members of the Class and/or Subclasses, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

69.     Class adjudication is superior to individual litigation, which would foreclose the ability of most Class and/or Subclass Members to litigate their claims, impose an undue burden on the courts, and result in inconsistent determination of common issues. The Court may employ

issue certification under Rule 23(c)(4)(B) to address any variation of law, fact, or interest from the standpoint of fairness, efficiency, and economy, in order to avoid denial of class treatment which would require reversion to repetitive and piecemeal individual litigation.

70. The need for Class-wide notice presents no barrier to certification because notice can be effectively disseminated to the proposed Class and Subclasses by techniques commonly used in consumer class actions. Notice may be provided to Class and/or Subclass Members under the requirements of Fed. R. Civ. P. 23(c)(2) by such combination of print publication, broadcast publication, internet publication, and/or first class mail that this Court determines best comports with Fed. R. Civ. P. 23(c)(2) class notice form, content, and dissemination techniques, as used in other consumer cases and as recommended by the Manual for Complex Litigation, 4th, and the Federal Judicial Center.

## COUNT I

### Breach of Implied Warranty of Merchantability
**(Asserted by Plaintiffs and the other members of the Nationwide Class against both Defendants)**

71. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

72. The Uniform Commercial Code §2-314 provides that, unless excluded or modified, a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. P&G Companies marketed, promoted, manufactured, and/or sold Tide Pods and placed them into the stream of commerce. P&G Companies knew, or had reason to know, of the ordinary use for which Tide Pods were purchased, and impliedly warranted that Tide Pods were of merchantable quality and fit for such

use as laundry detergent.  Contrary to these representations, Tide Pods were defective as they caused permanent stains on white and light colored laundry.

73.     At all times, 48 of the 50 United States and the District of Columbia have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability.  The relevant statutes are codified as: Ala. Code §7-2-314; Alaska Stat. §45.02.314; Ariz. Rev. Stat. Ann. §47-2314; Ark. Code Ann. §4-2-314; Cal. Com. Code §2314; Colo. Rev. St §4-2- 314; Conn. Gen. Stat. Ann. §42a-2-314; 6 Del. C. §2-314; D.C. Code §28:2- 314; Fla. Stat. Ann. §672.314; Ga. Code Ann. §11-2-314; Haw. Rev. Stat. §490:2-314; Idaho Code §28-2- 314; 810 Ill. Comp. Stat. Ann. 5/2-314; Ind. Code Ann. §26-1-2-314; Iowa Code Ann. §554.2314; Kan. Stat. Ann. §84-2-314; Ky. Rev. Stat. Ann. §355.2-314; La. Civ. Code Ann. art. §2520; 11 Me. Rev. Stat. Ann. §2-314; Md. Code Ann. §2-314; Mass. Gen. Laws Ch. 106 §2-314; Mich. Comp. Laws Ann. §440.2314; Minn. Stat. Ann. §336.2-314; Miss. Code Ann. §75-2-314; Mo. Rev. Stat. §400.2-314; Mont. Code Ann. §30-2-314; Nev. Rev. Stat. U.C.C §104.2314; N.H. Rev. Ann. §382-A:2-314; N.J. Stat. Ann. §12A:2-314; N.M. Stat. Ann. §55-2- 314; N.Y. U.C.C. Law §2-314; N.C. Gen. Stat. Ann. §25-2-314; N.D. Stat §41-02-314; Ohio Rev. Code Ann. §1302.27; Okla. Stat. tit. 12A §2-314; Or. Rev. Stat. §72.3140; 13 Pa. Stat. Ann. §2314; RI. Gen. Laws §6A-2-314; S.C. Code Ann. §36-2-314; S.D. Stat. §57A-2-314; Tenn. Code Ann. §47-2-314; Tex. Bus. & Com. Code Ann. §2-314; Utah Code Ann. §70A-2- 314; Va. Code §8.2-314; Vt. Stat. Ann. 9A §2-314; W. Va. Code §46-2-314; Wash. Rev. Code §62A 2- 314; Wis. Stat. Ann. §402.314; and Wyo. Stat. §34.1-2-314.

74.     As designers, manufacturers, producers, marketers, and/or sellers of Tide Pods, P&G Companies are "merchants" within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

31

75.     P&G Companies designed, manufactured, distributed, marketed, and/or sold Tide Pods and represented to Plaintiffs and the other Class Members that they manufactured and sold Tide Pods that complied with all applicable state and federal laws and regulations.  Further, by selling Tide Pods to Plaintiffs and the other Class Members, P&G Companies derived a substantial amount of revenue, and continue to do so.

76.     Tide Pods are "goods," as defined in the various states' commercial codes governing the implied warranty of merchantability.

77.     As merchants of Tide Pods, P&G Companies knew that purchasers relied upon them to design, manufacture, distribute, and/or sell Tide Pods that would be effective laundry detergent that would clean their laundry rather than cause permanent stains on their white and light colored laundry.

78.     P&G Companies designed, distributed, manufactured, and/or sold Tide Pods to consumers, and they knew that such products would be used by the consumers to wash their laundry.

79.     At the time that P&G Companies designed, manufactured, sold, and/or distributed Tide Pods, P&G Companies knew the purpose for which the products were intended and impliedly warranted that the products were of merchantable quality; were free of manufacturing defects; were free of design defects; and were safe and fit for their ordinary purpose---as laundry detergent.

80.     P&G Companies breached their implied warranties in connection with the sale of Tide Pods to Plaintiffs and other Class Members.  Tide Pods are not fit for their ordinary purposes which involved cleaning laundry without adding permanent stains.  They were not free

of defects, as evidenced by the permanent stains which appeared on white and light colored laundry.

81.     As a direct and proximate result of P&G Companies' breach of implied warranties, Plaintiffs and the other Class Members are entitled to damages available under applicable law, including, but not limited to, the purchase price of Tide Pods.

**COUNT II**

**Breach of the Implied Warranties of**
**Merchantability and Fitness for a Particular Purpose**
**(Asserted by Plaintiffs and the other members of the Nationwide Class against both Defendants)**

82.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 70 above as if fully set forth herein.

83.     P&G Companies sold and promoted Tide Pods and placed them into the stream of commerce. P&G Companies knew or had reason to know of the particular purpose for which Tide Pods were purchased and impliedly warranted to consumers that Tide Pods were of merchantable quality and fit for such use.

84.     Plaintiffs and the other Class Members reasonably relied upon the expertise, skill, judgment, and knowledge of P&G Companies and upon their implied warranty that Tide Pods were of merchantable quality and fit for their particular purpose and intended use as laundry detergent.

85.     P&G Companies knew, should have known, or had reason to know that Plaintiffs and Class Members were influenced to purchase Tide Pods because of P&G Companies' expertise, skill, judgment, and knowledge in creating laundry detergent with this new technology, and furnishing Tide Pods for that use to consumers.

33

86. P&G Companies' Tide Pods were not of merchantable quality and were not fit for their intended particular use because they had the capacity to cause permanent stains on white and light colored laundry.

87. P&G Companies breached the implied warranty of fitness for a particular purpose in violation of the following state statutes: Ala. Code §7-2-314, et seq., Alaska St. §45.02.314, et seq., Ariz. Rev. Stat. Ann §47-2314, et seq., Ark. Code Ann. §4-2-314, et seq., Cal. Comm. Code §2314, et seq., Co. Rev. St. §4-2-314, et seq., Conn. Gen. Stat. Ann, §42a-2-314, et seq., 6 Del. C. §2-314, et seq., D.C. Code §28:2-314, et seq., Fla. Stat. Ann. §672.314, et seq., Ga. Code. Ann. §11-2-314, et seq., Haw. Rev. Stat. §490:2-314, et seq., Id. Code §28-2-314, et seq., Ill. Comp. Stat. Ann. Ch. 810, 5/2-314, et seq., Ind. Code Ann. §26-1-2-314, et seq., Iowa Code Ann. §554.2314, et seq., Kansas Stat. Ann. §84-2-314, et seq., Ken. Rev. Stat. Ann. §355.2-314, et seq., La. Civ. Code Ann. Art. 2520, et seq., 11 Maine Rev. Stat. Ann. §2-314, et seq., Md. Code Ann., Com. Law §2-314, et seq., Mass. Gen. Laws Ann. Ch. 106 §2-314, et seq., Mich. Comp. Laws Ann. §440.2.314, et seq., Minn. Stat. Ann. §336.2-314, et seq., Miss. Code Ann. §75-2-314, et seq., Missouri Rev. Stat. §400.2-314, et seq., Mont. Code Ann. §30-2-314, et seq., Nev. Rev. Stat. U.C.C. §104.2314, et seq., N.H. Rev. Stat. Ann. §382-A:2-314, et seq., N.J. Stat. Ann. §12A:2-314, et seq., N.M. Stat. Ann. §55-2-314, et seq., N.Y. U.C.C. Law 2-314, et seq., N.C. Gen. Stat. Ann. §25-2-314, et seq., N.D. Stat. §41-02-314, et seq., Ohio Rev. Code Ann. §1302.27, et seq., 12A Okla. Stat. §2-314, et seq., Or. Rev. Stat. §72.3140, et seq., 13 Pa. Stat. Ann. §2314, et seq., RI. Gen. Laws §6A-2-314, et seq., S.C. §36- 2-314, et seq., S.D. Stat. 57A-2-314, et seq., Tenn. Code Ann. §47-2-314, et seq., Tex. Bus. & Com. Code Ann. §2.314, et seq., Vt. Code Ann. §70A-2-314, et seq., Va. Code Ann. §8.2-314, et seq., Vt. Stat. Ann. §9A-2-314,

et seq., Wa. Rev. Code §62A.2-314, et seq., W.Va. Code §46-2-314, et seq., Wis. Stat. Ann. §402.314, et seq., Wyo. Stat. §34.1-2-314, et seq.

88.     As a proximate cause of P&G Companies' breach of warranty of fitness for a particular purpose, Plaintiffs and the other members of the Class suffered ascertainable losses, injuries, and damages as specified herein in an amount to be determined at trial.

### COUNT Ill

### Violation of the Various Unfair and Deceptive Trade Practices Acts
**(Asserted by Plaintiffs and the other members of the Nationwide Class against both Defendants)**

89.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 70 above as if fully set forth herein.

90.     P&G Companies had a statutory duty to refrain from unfair or deceptive acts or practices in the design, development, promotion, sale, and/or manufacture of Tide Pods.

91.     Had P&G Companies not engaged in the deceptive conduct described above, Plaintiffs and the other Class Members would not have purchased and/or paid for Tide Pods.

92.     P&G Companies' deceptive, unconscionable, or untruthful representations and material omissions to consumers and the public regarding the true nature of Tide Pods purchased and used by Plaintiffs and the other Class Members, constituted unfair and deceptive acts and practices in violation of the following state consumer protection statutes: Ala. Code §-8-19- 1, et seq.; Alaska Stat. §45.50.471, et seq.; Ariz. Rev. Stat. §44-1522, et seq.; Ark. Code §4-88- 101, et seq.; Cal. Civ. Code §1770, et seq., and Cal Bus. & Prof Code §17200, et seq.; Colo. Rev. Stat. §6-1-105, et seq.; Conn. Gen. Stat. §2-1 l0a, et seq.; 6 Del. Code §§2511, et seq., and 2531, et seq.; D.C. Code §28-3901, et seq.; Fla. Stat. §501.201, et seq.; Ga. Stat. §§10-1-372, et seq., 10-1-392 and 10-1-420; Haw. Rev. Stat. §480-1, et seq.; Idaho Code §48-601, et seq.; 815 ILCS

§505/1, et seq.; Ind. Code Ann. §24-5-0.5-1, et seq.; Iowa Code §714.16, et seq.; Kan. Stat. §50-623, et seq.; Ky. Rev. Stat. §367.170, et seq.; La. Rev. Stat. §51: 1401, et seq.; 5 Me. Rev. Stat. §205A, et seq.; Md. Com. Law Code §13-101, et seq.; Mass. Gen. L. Ch. 93 A, et seq.; Mich. Comp. Laws Ann. §445.90 1, et seq.; Minn. Stat. §§325D.43, et seq.; 325 F.67, et seq.; and 325 F.68, et seq.; Miss. Code Ann. §75-24-1, et seq.; Vernon's Ann. Missouri Stat. §407.010, et seq.; Mont. Code Ann. §30-14-101, et seq.; Neb. Rev. Stat. §59-1601, et seq.; Nev. Rev. Stat. Ann. §59S.0903, et seq.; N.H. Rev. Stat. §358-A: 1, et seq.; N.J. Rev. Stat. §56:8-1, et seq. ;N.M. Stat. §57-12-1, et seq.; N.Y. Gen. Bus. Law §§349, et. seq,. and 350-e, et seq.; N.C. Gen. Stat. §75-1.1, et seq.: N.D. Cent. Code §§51-12-01, et seq., and 51-15-01, et seq.; Ohio Rev. Stat. §1345.01, et seq.; Okla. Stat. §15 751, et seq.; Or. Rev. Stat. §6464.605, et seq.; 73 Pa. Stat. §201-1, et seq.; RI. Gen. Laws. §6-13.1-1, et seq.; S.C. Code Laws §39-5-10, et seq.; S.D. Codified Laws §37-24-1, et seq.; Tenn. Code §47-18-101, et seq.; Tex. Bus. &Com. Code §17.41, et seq.; Utah Code §13-11-1, et seq.; 9 Vt. §2451, et seq.; Va. Code §59.1- 196, et seq.; Wash. Rev. Code §19.86.0 10, et seq.; West Virginia Code §46A-6-101, et seq.; Wis. Stat. §100.20, et seq.; and, Wyo. Stat. §40-12-101, et seq.

93.     Plaintiffs and the other Class Members relied upon P&G Companies' misrepresentations and/or omissions in buying P&G Companies' Tide Pods.

94.     Plaintiffs will provide any required notice to appropriate entities regarding P&G Companies' unfair and deceptive trade practices.

95.     As a direct and proximate result of P&G Companies' wrongful conduct, Plaintiffs and the other Class Members have been damaged by paying for Tide Pods and, in many cases, having permanently stained laundry that can no longer be used.

96.     As a direct and proximate result of P&G Companies' wrongful conduct, Plaintiffs and the other Class Members are entitled to the damages available under applicable law.

### COUNT IV

### <u>Unjust Enrichment</u>
**(Asserted by Plaintiffs and the other members of the
Nationwide Class against both Defendants)**

97.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 70 above as if fully set forth herein.

98.     At all times relevant hereto, P&G Companies designed, sold, distributed, marketed, and/or manufactured Tide Pods that had the capacity to and, in many cases, did permanently stain white and light colored laundry with blue/purple stains.

99.     Plaintiffs and the other Class Members conferred upon P&G Companies, without knowledge of the inherent dangers of P&G Companies' Tide Pods, payment for such products, benefits that were non-gratuitous. P&G Companies accepted or retained the non-gratuitous benefits conferred by Plaintiffs and other Class Members even though Plaintiffs and the other Class Members were not receiving products of the high quality, nature, fitness or value that had been represented by P&G Companies and reasonable consumers would have expected. Retaining the non-gratuitous benefits conferred upon P&G Companies by Plaintiffs and the other Class Members under these circumstances is unjust and inequitable.

100.     Accordingly, Plaintiffs and the other Class Members are entitled to, and hereby seek, disgorgement and restitution of P&G Companies' wrongful profits, revenue, and benefits in a manner established by the Court and available under applicable law.

## COUNT V

### Negligent -Design, Manufacturing Defect and Failure to Warn
**(Asserted by Plaintiffs and the other members of the**
**Nationwide Class against both Defendants)**

101.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 70 above as if fully set forth herein.

102.    P&G Companies designed, manufactured, sold, and/or distributed Tide Pods to consumers.

103.    Tide Pods had the capacity, and in many cases, did actually cause permanent blue/purple stains on laundry.

104.    P&G Companies had a duty to exercise reasonable care in the design, manufacture, sale, and/or distribution of Tide Pods, including a duty to ensure that Tide Pods did not permanently stain laundry.

105.    P&G Companies failed to exercise reasonable care in the design, manufacture, sale, and/or distribution, of Tide Pods.

106.    Specifically, P&G Companies was negligent in its design, manufacture, testing, inspection, sale, and/or distribution of Tide Pods in that they:

a.    Failed to use reasonable care in designing and/or manufacturing Tide Pods so as to avoid the permanent staining of laundry;

b.    Failed to conduct adequate quality testing of Tide Pods to determine the efficacy of Tide Pods prior to sale; and

c.    Failed to accompany Tide Pods with proper warnings regarding the possibility of permanent staining to white and light colored laundry.

107.     Despite the fact that P&G Companies knew, or in the absence of negligence should have known, that Tide Pods could cause permanent staining to white and light colored laundry, even when used as directed, P&G Companies continued to market and sell Tide Pods to consumers, including Plaintiffs and members of the Class, despite the fact that Tide Pods had the capacity, and in many cases, did actually cause permanent staining to white and light colored laundry.

108.     P&G Companies' negligence proximately caused Plaintiffs and the other members of the Class to be injured financially.

109.     Plaintiffs' negligence claims relate to injuries that they and Class members sustained as a result of Tide Pods.

**COUNT VI**

**Strict Liability- Design Defect/Manufacturing Defect and Failure to Warn**
**(Asserted by Plaintiffs and the other members of the**
**Nationwide Class against both Defendants)**

110.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 70 above as if fully set forth herein.

111.     P&G Companies designed, manufactured, sold and/or distributed Tide Pods to consumers.

112.     P&G Companies designed, manufactured, sold, and/or distributed Tide Pods that were defective in design and/or manufacturing.  Further, Tide Pods were defective when they left the control of the P&G Companies such that the foreseeable risks of this product exceeded the benefits associated with the design or manufacturing of the same.

113.     P&G Companies knew or should have known that Tide Pods could cause permanent staining to white and light colored laundry due to the defective nature of this product.

39

114.    P&G Companies knew that Plaintiffs and the other members of the Class would use Tide Pods to wash their laundry but failed to inform Plaintiffs and the other members of the Class that this product would most likely cause permanent staining to white and light colored laundry even if used according to the directions on the packaging.

115.    Tide Pods were expected to and did reach Plaintiffs and the other members of the Class without substantial change in condition.

116.    Tide Pods, as designed, manufactured, sold, and/or distributed by P&G Companies, were defective due to inadequate warning and inadequate inspection and testing, and inadequate reporting regarding the results of quality-control testing and safety inspections, or lack thereof.

117.    Had Plaintiffs and the other members of the Class been warned about the capacity of Tide Pods to cause permanent staining to white and light colored laundry, they would not have purchased, acquired, or otherwise obtained Tide Pods, nor would they have used Tide Pods.

118.    As a direct and proximate result of the defective condition of Tide Pods as designed, manufactured, sold, and/or distributed by P&G Companies, Plaintiffs and the other members of the Class have been financially injured.

**COUNT VII**

**Violation of Florida's Deceptive and Unfair Trade Practices Act,**
**F.S.A., 501.201, *et seq*. ("FDUTPA")**
**(Asserted by Plaintiff Byrne and the**
**other members of the Florida Subclass against both Defendants)**

119.    Plaintiff Byrne repeats and realleges the allegations contained in paragraphs 1 through 5, 13 through 18 and 26 through 70 above as if fully set forth herein.

120.    Plaintiff Byrne brings this claim on behalf of herself and the other members of the Florida Subclass.

121.    At all relevant times, Byrne and all other members of the Florida Subclass were consumers within the meaning of FDUTPA.

122.    At all relevant times hereto, Defendants engaged in trade and/or commerce within the meaning of FDUTPA.

123.    The practices of Defendants violated FDUTPA for, among other things, one or more of the following reasons:

a.  Defendants omitted and concealed material facts from its communications and disclosures to Plaintiff Byrne and all other members of the Florida Subclass regarding the defect inherent in Tide Pods;

b.  Defendants made false and/or misleading statements of material fact regarding Tide Pods, which statements were likely to deceive the public; and

c.  Defendants knew, or were reckless in not knowing, that their statements about Tide Pods were false and/or misleading.

124.    By the conduct described herein, Defendants have engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

125.    The representations and omissions by Defendants were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions.

126.    Had Defendants disclosed all material information regarding Tide Pods to Plaintiff Byrne and all of the other members of the Florida Subclass, they would not have purchased Tide Pods.

127.     The foregoing acts and practices proximately caused Byrne and the other members of the Florida Subclass to suffer actual damages in the form of, among other things, money spent on their Tide Pods purchases and stained laundry that was not suitable for use, and they are entitled to recover such damages, attorneys' fees, and costs of suit.

### COUNT VIII

**Violations of Sections 349 and 350 of New York General Business Law:**
**<u>Deceptive Acts and Practices</u>**
**(Asserted by Plaintiff Guariglia and the**
**other members of the New York Subclass against both Defendants)**

128.     Plaintiff Guariglia repeats and realleges each and every allegation contained in paragraphs 1 through 12 and 26 through 70 above as if fully set forth herein.

129.     Plaintiff Guariglia brings this claim on behalf of herself and the New York Subclass.

130.     New York's General Business Law prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions.  Specifically, N.Y. Gen. Bus. Law §349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

131.     N.Y. Gen. Bus. Law §350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce [.]"

132.     N.Y. Gen. Bus. Law §349(h) provides, in part, that "any person who has been injured by reason of any violation of this section may bring...an action to recover his damages or fifty dollars, whichever is greater, or both such actions. . . . The court may award reasonable attorney's fees to a prevailing plaintiff."

133.     Defendants have engaged in deceptive practices in the sale of the defective Tide Pods including: (1) selling Tide Pods with Design Defects that cause white or light colored

laundry to develop blue/purple stains with normal use; and (2) failing to disclose and/or concealing this known defect.

134.     The unfair and deceptive trade acts and practices have directly, foreseeably, and proximately caused damages and injury to Plaintiff Guariglia and the other members of the New York Subclass.

135.     As a result, Plaintiff Guariglia is entitled to bring an action on her own behalf and on behalf of the other members of the New York Subclass to recover their actual damages or fifty dollars for herself and each other member of the New York Subclass, whichever is greater, or both such actions.  The Court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.  The Court may award reasonable attorney's fees to a prevailing plaintiff.

### COUNT IX

**Violation of California's Unfair Competition Law "UCL"**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**
**(Asserted by Plaintiff Emanuele and the**
**other members of the California Subclass against both Defendants)**

136.     Plaintiff Emanuele repeats and realleges each and every allegation contained in paragraphs 1 through 5 and 19 through 70 above as if fully set forth herein.

137.     Plaintiff Emanuele brings this claim on behalf of herself and the other members of the California Subclass.

138.     California Business and Professions Code §17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendants engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business and Professions Code § 17200, in that

Defendants' representations and advertising were likely to deceive the public as to the true effectiveness of the Tide Pods.

139.   Defendants has engaged in unfair, unlawful, and fraudulent business practices by: (1) selling Tide Pods with Design Defects that cause white or light colored laundry to develop blue/purple stains with normal use; and (2) failing to disclose and/or concealing this known defect.

140.   Defendant intentionally concealed and/or failed to disclose that the Tide Pods have a Design Defect, and that the Design Defect causes white or light colored laundry to develop blue/purple stains with normal use for the purpose of inducing Plaintiff Emanuele and the other members of the California Subclass to purchase the Tide Pods.

141.   The facts concealed and/or not disclosed by the Defendants to Plaintiff Emanuele and the other members of the California Subclass are material facts that a reasonable person would have considered important in deciding whether or not to purchase and/or use the Tide Pods.

142.   Plaintiff Emanuele and the other members of the California Subclass justifiably acted or relied to their detriment on the concealment and/or non-disclosed facts as evidenced by their purchase and/or use of defective Tide Pods.

143.   Had Plaintiff Emanuele and the other members of the California Subclass known of the Design Defect, they would not have purchased and/or used the Tide Pods.

144.   By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business and Professions Code § 17200 et seq.

145.    Defendants' acts and practices have deceived and/or are likely to deceive members of the consuming public and members of the California Subclass.

146.    Defendants knowingly sold Plaintiff Emanuele and the other members of the California Subclass and other consumers, Tide Pods with defects that have rendered the Tide Pods unusable for the purposes for which they were sold.

147.    Defendants' acts and practices are unlawful because they violate Cal. Civ. Code §§ 1709 and 1710.  Defendants' acts and practices are also unlawful because they violate Cal. Commercial Code § 2313.

148.    Plaintiff Emanuele and the other members of the California Subclass have been injured as a direct and proximate result of Defendants' violations of the foregoing California statutes.

149.    Plaintiff Emanuele and the other members of the California Subclass have been damaged and are entitled to injunctive relief, attorneys' fees, and costs available under Section 17200, et seq.

**COUNT X**

**Violation of the California Consumers Legal Remedies Act "CLRA"**
**(Cal. Civ. Code §§ 1750 *et seq.*))**
**(Asserted by Plaintiff Emanuele and the other Members of the**
**California Subclass against both Defendants)**

150.    Plaintiff Emanuele repeats and realleges each and every allegation contained in paragraphs 1 through 5 and 19 through 70 above as if fully set forth herein

151.    Plaintiff Emanuele brings this claim on behalf of herself and the other members of the California Subclass.

152.    This claim arises under the CLRA, California Civil Code §§ 1750, et seq.

45

153.     At all relevant times, Plaintiff Emanuele was a "consumer" as that term is defined in Cal. Civ. Code § 1761(d).

154.     At all relevant times, the Tide Pods constituted "goods" as that term is defined in Cal. Civ. Code § 1761(a).

155.     At all relevant times, the Defendants constituted "person" as that term is defined in Cal. Civ. Code § 1761(c).

156.     At all relevant times, Plaintiff's purchases of Tide Pods constituted "transactions" as that term is defined in Cal. Civ. Code § 1761(e).

157.     At all relevant times, Defendants provided "services" to Plaintiff Emanuele within the meaning of Cal. Civ. Code § 1761(b).

158.     The CLRA provides in relevant part that the "following methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which result in the sale or lease of goods or services to any consumer are unlawful: (5) representing that goods . . . have . . . approval, characteristics, uses, benefits…which they do not have; . . . (7) Representing that goods . . . are of a particular standard, quality or grade . . . if they are of another; . . . and (9) advertising good . . . with the intent not to sell them as advertised." Cal. Civ. Code §§ 1770(a)(5), (7), and (9).

159.     Defendants made representations that the Tide Pods would perform as represented and, as set forth above, were false, deceptive and/or misleading and were made in violation of the CLRA.

160.     Defendants intentionally concealed and/or failed to disclose that the Tide Pods have a design and/or manufacturing defect and that the Design Defects had the capacity to and, in many cases, did actually cause blue/purple stains on white and light colored laundry, for the

purpose of inducing Plaintiff Emanuele and the other members of the California Subclass to purchase the Tide Pods.

161.     Defendants had exclusive knowledge that the Tide Pods had a defect and that the defect had the capacity to and, in many cases, did actually cause blue/purple stains on white and light colored laundry, facts not known to Plaintiff Emanuele and the other members of the California Subclass.  Defendants' exclusive knowledge of these material facts gave rise to a duty to disclose such facts, which it failed to perform.

162.     The facts concealed and/or not disclosed by Defendants to Plaintiff Emanuele and the other members of the California Subclass are material facts that a reasonable person would have considered important in deciding whether or not to purchase the Tide Pods.

163.     Had Plaintiff Emanuele and the other members of the California Subclass known that the Tide Pods defect had the capacity to and, in many cases, did cause blue/purple stains on white and light colored laundry, they would not have purchased and/or used the Tide Pods.

164.     As a direct and proximate result of Defendants' violations of the foregoing laws, Plaintiff Emanuele and the other members of the California Subclass have been injured.

165.     On August 4, 2015, pursuant to §1782 of the CLRA, Plaintiff's counsel served Defendants by certified mail, return receipt requested, with notice of their  violations of the CLRA.

166.     Defendants have failed to provide appropriate relief for its violations of the within 30 days of receipt of the CLRA demand notice.  Accordingly, pursuant to Sections 1780 and 1782(b) of the CLRA, Plaintiff is entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

167.     Defendants' violations of the CLRA were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

168.     Consequently, Plaintiff and the other members of the California Subclass are entitled to actual and punitive damages against Defendants for its violations of the CLRA.   In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the other members of the California Subclass are entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the other members of the California Subclass, ordering payments of costs and attorneys' fees, and other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

## **PRAYER FOR RELIEF**

**WHEREFORE, Plaintiffs, for themselves and all others similarly situated, respectfully request that this Court enter a judgment against P&G Companies and in favor of Plaintiffs, and grant the following relief:**

A.     Determine that this action may be maintained as a class action with respect to a national class and with subclasses as asserted above, pursuant to the appropriate subsections of Rule 23 of the Federal Rules of Civil Procedure; that the Court certify a class action with respect to particular issues if appropriate, and that the Court designate and appoint Plaintiffs to serve as Class Representatives and the undersigned counsel as Class Counsel;

B.     Require that P&G place a warning on Tide Pods packaging stating that permanent staining may occur on white and light colored laundry if Tide Pods are used in cold water and/or on a short wash cycle even if the instructions are followed and that the stains cannot be removed;

C.     **Declare the conduct of P&G Companies as alleged herein to be unlawful;**

D.      Grant Plaintiffs and the other Class Members awards of actual and compensatory or other statutory damages or relief, in such amount to be determined at trial and as provided by applicable law;

E.      Grant Plaintiffs their costs of suit including reasonable attorneys' fees, and expenses, including expert fees, to the extent permitted by law; and

F.      Grant Plaintiffs and the other Class Members such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

October 2, 2015

Respectfully submitted,

STULL, STULL & BRODY

By: _____

Mark Levine
Melissa Emert
6 East 45th Street-5th floor
New York, New York 10017
Tel: 212-687-7230
Fax: 212-490-2022
mlevine@ssbny.com
memert@bellsouth.net
*Attorneys for Plaintiffs*

and

Patrice L Bishop
9430 West Olympic Boulevard
Suite 400
Beverly Hills, CA  90212
Tel: 310- 209-2468
Fax: 310- 209-2087

*Attorneys for Plaintiffs*

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, individually, and on behalf of all others similarly situated, hereby demand trial by jury.

October 2, 2015

Respectfully submitted,

STULL, STULL & BRODY

By: _____
Mark Levine
Melissa Emert
6 East 45th Street-5th floor
New York, New York 10017
Tel: 212-687-7230
Fax: 212-490-2022
mlevine@ssbny.com
memert@bellsouth.net

and

Patrice L Bishop
9430 West Olympic Boulevard
Suite 400
Beverly Hills, CA  90212
Tel: 310- 209-2468
Fax: 310- 209-2087

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2016, I caused the foregoing documents entitled

*Defendants' Notice of Motion and Memorandum of Law in Support of Defendants The Procter &*

*Gamble Company and The Procter & Gamble Distributing LLC's Motion to Dismiss and/or*

*Strike the Class Allegations* in the above-captioned action to be served on Attorneys for Plaintiffs

via electronic mail at the addresses indicated in the service list below:


Mark Levine
Melissa Emert
STULL, STULL & BRODY
6 East 45th Street-5th floor
New York, New York 10017
Tel: 212-687-7230
Fax: 212-490-2022
mlevine@ssbny.com
memert@ssbny.com

Patrice L Bishop
STULL, STULL & BRODY
9430 West Olympic Boulevard
Suite 400
Beverly Hills, CA 90212
Tel: 310- 209-2468
Fax: 310- 209-2087
pbishop@ssbla.com

*Attorneys for Plaintiffs*



Dated: November 3, 2016                    By: ____/s/ *Stephanie I. Fine*_____
                                                        Stephanie I. Fine