## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA GUARIGLIA, MICHELINE BYRNE and MICHELE EMANUELE, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| THE PROCTER & GAMBLE COMPANY, and THE PROCTER & GAMBLE DISTRIBUTING LLC, | ) ) ) |
| Defendants. | ) ) ) ) |

Case No.: 2:15-cv-04307(JMA)(SIL)

ORAL ARGUMENT REQUESTED

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS OR IN THE ALTERNATIVE
<u>STRIKE THE CLASS ALLEGATIONS</u>**

**STULL, STULL & BRODY**
**Mark Levine**
**Melissa Emert**
**6 East 45th Street, 5th floor**
**New York, New York 10017**
**Tel: 212-687-7230**

**Patrice L Bishop**
**9430 West Olympic Blvd., Suite 400**
**Beverly Hills, CA  90212**
**Tel: 310- 209-2468**

**Attorneys for Plaintiffs**

## TABLE OF CONTENTS

**Page**

I.      PRELIMNARY STATEMENT ................................................................................. 1

II.     STATEMENT OF FACTS .................................................................................... 2

III.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS ................. 3

        A.      Plaintiffs Adequately Allege Claims Under Rule 12(b)(6)..................................... 3

                1.      Legal Standards.................................................................................. 3

                2.      Plaintiffs Adequately Allege a Defect in the Tide Pods Sufficient
                        to Sustain All of Their Claims ........................................................ 4

                3.      Plaintiffs Adequately Plead Breach of Implied Warranty of
                        Merchantability and Fitness for a Particular Purpose ................................ 6

                4.      Plaintiffs Plead Material Misrepresentations and Omissions
                        Sufficient for Consumer Statute Claims ...................................... 8

                5.      Plaintiffs Adequately Plead Violations of Consumer Statutory Law ....... 11

                6.      Plaintiffs' Unjust Enrichment Claims Are Cognizable............................ 13

IV.     THE COURT SHOULD NOT STRIKE THE CLASS ALLEGATIONS ....................... 14

        A.      The Importance of Consumer Class Actions ...................................... 15

        B.      There is No Standing Issue Because the Class Is Sufficiently Ascertainable....... 15

        C.      The Typicality Requirement Can Be Satisfied .................................... 17

        D.      The Commonality and Predominance Requirements Can be Satisfied ............... 19

        E.      Defendants Fail to Establish the Impossibility of a Nationwide Class ................ 21

        F.      Damages Can Be Measured On a Class-Wide Basis ............................ 23

        G.      A Rule 23(b)(2) Class May Be Certified at the Appropriate Time...................... 24

V.      IF THIS COURT GRANTS ANY PART OF THE MOTION, PLAINTIFFS
        REQUEST LEAVE TO AMEND .......................................................... 25

VI.     CONCLUSION........................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
   2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) ............................................... 9, 13, 19

*Aguilar v. General Motors LLC*,
   2013 U.S. Dist. LEXIS 149108 (E.D. Cal. Oct. 16, 2013) ..................................................... 11

*Anonymous v. CVS Corp.*,
   188 Misc. 2d 616, 728 N.Y.S.2d 333 (N.Y. Sup. Ct. 2001) ................................................. 21

*Apodaca v. Whirlpool Corp.*,
   2013 U.S. Dist. LEXIS 176363 (C.D. Cal. Nov. 8, 2013) ..................................................... 11

*Belfiore v. P&G*,
   94 F. Supp. 3d 440 (E.D.N.Y. 2015) ............................................................................ passim

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................ 3

*Berenblat v. Apple, Inc.*,
   2010 U.S. Dist. LEXIS 46052 (N.D. Cal. 2010) .................................................................. 11

*Brazil v. Dole Packaged Foods, LLC*,
   2014 U.S. Dist. LEXIS 74234 (S.D. Cal. May 30, 2014) ...................................................... 24

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*,
   373 F.3d 296 (2d Cir. 2004) ................................................................................................. 13

*Brown v. Hain Celestial Grp., Inc.*,
   2014 U.S. Dist. LEXIS 162038 (N.D. Cal. Nov. 18, 2014) ................................................... 24

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
   310 F.R.D. 69 (S.D.N.Y. 2015) ........................................................................................... 23

*Catalano v. BMW of N. Am., LLC*,
   167 F. Supp. 3d 540 (S.D.N.Y. 2016) ................................................................................. 11

*Chaluisan v. Simsmetal E. LLC.*,
   698 F. Supp. 2d 397 (S.D.N.Y. 2010) ................................................................................. 13

*Chen v. Hiko Energy, LLC*,
   2014 U.S. Dist. LEXIS 181846 (S.D.N.Y. Dec. 29, 2014) .................................................... 15

*Civic Ass'n of the Deaf v. Giuliani*,
915 F. Supp. 622 (S.D.N.Y. 1996) .................................................. 19

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) .......................................................... 23, 24

*Conley v. Gibson*,
355 U.S. 41 (1957) ................................................................... 3

*Crazy Eddie Sec. Litig.*,
135 F.R.D. 39 (E.D.N.Y. 1991) .................................................. 23

*Denny v. Ford Motor Co.*,
87 N.Y.2d 248, n.4 (N.Y. 1995).................................................. 6, 8

*Derienzo v. Trek Bicycle Corp.*,
376 F. Supp. 2d 537 (S.D.N.Y. 2005) ............................................ 6

*DG v. Devaughn*,
594 F.3d 1188, 1201 (10th Cir. 2010) .......................................... 17

*Dial Corp. v. News Corp.*,
314 F.R.D. 108 (S.D.N.Y. 2015).................................................. 17

*DiBartolo v. Abbott Labs.*,
914 F.Supp.2d 601 (S.D.N.Y. 2012) ............................................. 8

*Donovan v. The Aeolian Co.*,
270 N.Y. 267 (1936) ................................................................ 7

*Ebin v. Kangadis Food, Inc.*,
297 F.R.D 561 (S.D.N.Y. 2014).......................................... 15, 16, 19, 22

*Elias v. Ungar's Food Prods.*,
252 F.R.D. 233 (D.N.J. 2007) .................................................... 22

*Factory Assocs. & Exps. v. Lehigh Safety Shoe Co.*,
2007 U.S. Dist. LEXIS 46290 (N.D.N.Y. 2007)................................... 7

*Ferracane v. United States*,
2007 U.S. Dist. LEXIS 6569 (E.D.N.Y. 2007) ................................... 6

*Forcellati v. Hyland's, Inc.*,
2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014)......................... 16

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
2016 U.S. Dist. LEXIS 137780 S.D.N.Y. Oct. 4, 2016)................. 16, 19, 21, 24

*Goldin v. Smith & Nephew, Inc.*,
2013 U.S. Dist. LEXIS 58811 (S.D.N.Y. Apr. 24, 2013) .................................. 10

*Gorat v. Capala Bros., Inc.*,
2010 U.S. Dist. LEXIS 35451, (E.D.N.Y. Apr. 9, 2010) ................................... 15

*Guido v. L'Oreal, USA, Inc.*,
2014 U.S. Dist. LEXIS 165777 (C.D. Cal. July 24, 2014) ................................ 24

*Hughes v. Ester C. Co.*,
930 F. Supp. 2d 439 (E.D.N.Y. 2013) ....................................................... 3, 13

*In re Bayer Corp. Combination Aspirin*,
701 F. Supp. 2d 356 (E.D.N.Y. 2010) ........................................................... 13

*In re Conagra Foods, Inc.*, 302 F.R.D. 537 (C.D. Cal. 2014) ................................... 17

*In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*,
270 F.R.D. 521 (N.D. Cal. 2010) ................................................................... 21

*In re GM LLC Ignition Switch Litig.*,
2016 U.S. Dist. LEXIS 23407 (S.D.N.Y. Feb. 25, 2016) ................................. 11

*In re Nigeria Charter Flights Contract Litig.*,
233 F.R.D. 297 (E.D.N.Y. 2004) ................................................................... 23

*In re Pharm. Indus. Average Wholesale Price Litig.*,
252 F.R.D. 83 (D. Mass. 2008) ..................................................................... 22

*In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ......................................................................... 22

*In re Vitamin C Antitrust Litig.*,
279 F.R.D. 90 (E.D.N.Y. 2012) ..................................................................... 17

*Koenig v. Boulder Brands, Inc.*,
995 F. Supp. 2d 274 (S.D.N.Y. 2014) ........................................................... 18

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338, 344 (1997) ............................................................................. 15

*Makaeff v. Trump Univ., LLC*,
2014 U.S. Dist. LEXIS 22392 (S.D. Cal. Feb. 21, 2014) ................................ 24

*Maywalt v. Parker & Parsley Petroleum Co.*,
147 F.R.D. 51, 58 (S.D.N.Y. 1993) ............................................................... 23

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002) ............................................................. 20, 22, 25

iii

*Nationwide Life Ins. Co. v. Haddock*,
   460 Appx 26 (2d. Cir. 2012) ..................................................................... 24

*Pai v. Springs Indus.*,
   18 A.D.3d 529 (2d Dep't 2005) ..................................................................... 8

*Parkinson v. Hyundai Motor Am., Falco v. Nissan N. Am. Inc.*,
   2013 U.S. Dist. LEXIS 147060 (C.D. Cal. Oct. 10, 2013) ..................................... 10

*Procter & Gamble, Co. v. Xetal, Inc.*,
   2006 U.S. Dist. LEXIS 24342 (E.D.N.Y. Mar. 23, 2006) ....................................... 3

*Punian v. Gillette Co.*,
   2016 U.S. Dist. LEXIS 34164 (N.D. Cal. Mar. 15, 2016) ..................................... 10

*Rikos v. P & G*,
   799 F. 3d 497 (6th Cir. 2015) ..................................................... 19, 21, 24

*Robidoux v. Celani*,
   987 F. 2d 931 (2d Cir. 1992) ..................................................................... 17

*Rodman v. Safeway, Inc.*,
   2014 U.S. Dist. LEXIS 31438 (N.D. Cal. Mar. 10, 2014) ..................................... 17

*Rodriguez v. It's Just Lunch, Int'l*,
   07-CV-9227, 2010 U.S. Dist. LEXIS 16622 (S.D.N.Y. Feb. 23, 2010) ..................... 18

*Ronzani v. Sanofi SA.*, 899 F.2d 195 (2d Cir.1990) ........................................... 25

*Saratoga Spa & Gath v. Beeche Sys. Corp.*,
   656 N.Y.S.2d 787 (3rd Dept. 1997) ................................................................. 7

*Scotts EZ Seed Litig.*
   304 F.R.D. 397 (S.D.N.Y. 2015) ..................................................... 16, 20, 23

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
   323 F.3d 32 (1st Cir. 2003) ..................................................................... 20

*Starr v. Sony BMG Music Entertainment*,
   592 F.3d 314 (2d. Cir. 2010) ..................................................................... 3

*Steinberg v. Nationwide Mut. Ins. Co.*,
   224 F.R.D. 67 (E.D.N.Y. 2006) ................................................................... 23

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
   2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sept. 22, 2015) ............................... 9, 14

*Stolz v. Fage Dairy Processing Indus., S.A.*,
   2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. 2015) ............................................... 14

*Sykes v. Mel Harris & Assocs.,*
    *LLC,* 285 F.R.D. 279 (S.D.N.Y 2012) ................................................................. 21

*Takata Airbag Prods. Liab. Litig.,*
    2016 U.S. Dist. LEXIS 138976 (S.D. Fla. 2016) .............................................. 10

*Tsereteli v. Residential Asset Securitization Trust 2006-A8,*
    283 F.R.D. 199 (S.D.N.Y. 2012) ........................................................................ 20

*Viscusi v. P&G,*
    2007 U.S. Dist. LEXIS 51307 (E.D.N.Y. July 16, 2007) ................................... 8

*Windley v. Starion Energy, Inc.,*
    2016 U.S. Dist. LEXIS 5504 (S.D.N.Y. Jan. 8, 2016) ...................................... 15

*Wojcik v. Empire Forklift, Inc.,*
    783 N.Y.S. 2d 698 (3d Dep't. 2004) .................................................................... 6

*Woods v. Maytag Co.,*
    807 F. Supp. 2d 112 (E.D.N.Y. 2011) ............................................................... 10

*Zhang v. Wang,*
    2006 U.S. Dist. LEXIS 74203 (E.D.N.Y. Oct. 12, 2006) ................................. 22

**Statutes**

UNIFORM COMMERCIAL CODE § 2-314 (1) ............................................................ 6

**Other Authorities**

Notes on Uniformity and Individuality in Mass Litigation", 64 *DePaul L. Rev.* 251, 256
    (2015) ............................................................................................................... 15

**Rules**

FED. R. CIV. P. 15(a) ............................................................................................... 25

FED. R. CIV. P. 23 .............................................................................................. 14, 15

Plaintiffs hereby oppose Defendants' Motion to Dismiss or in the Alternative Strike the Class Allegations (the "Motion").

## I.   PRELIMNARY STATEMENT

To avoid the potential mess of an ordinary laundry detergent, Plaintiffs[1] bought and paid extra for Tide Pods. According to package instructions, a consumer needed to: "(1) Handle with dry hands; (2) Add pac to drum; (3) Add clothes; and (4) Close package after use." ¶ 31. The packaging further claimed it was a "detergent," "stain remover," "brightener" and "[d]issolve[d ] in all temperatures." *Id.* Yet, as set forth in the Complaint, rather than providing an easy way to get clean laundry, despite following directions, the use of Tide Pods resulted in stained clothes – something P&G,[2] its manufacturer, acknowledged to customers. Indeed, as evidenced by its numerous customer complaints, and detailed in the Complaint and below, the representation that the product would "[d]issolve[ ] in all temperatures" was patently false. Tellingly, to avoid staining, P&G told complaining consumers to not follow Tide Pods' written instructions.

Yet, P&G now attempts to convince the Court that Plaintiffs have not set forth a claim for relief under any of the ten claims submitted, and that this action is so lacking in class certification requirements that such allegations should be immediately stricken. P&G is wrong. As demonstrated below and in the Complaint, Plaintiffs sufficiently plead actionable claims, and any consideration regarding Plaintiffs' ability to satisfy RULE 23 should be reserved for the time when they move for class certification and have the opportunity to take class discovery.

---

[1] Plaintiffs bring this action on themselves and a proposed class (the "Class") of all persons in the United States who purchased Tide Pods laundry detergent from the time they were first distributed for purchase by the public in mid-March 2012 through the present and were damaged thereby. *See* Amended Class Action Complaint (the "Complaint"), Dkt. No. 9 (Oct. 2, 2015) at ¶¶ 1, 58-60. Hereinafter, all "¶ __" or "¶¶ __" mean and refer to the Complaint.

[2] The Procter & Gamble Company and Procter & Gamble Distribution LLC are referenced herein as "Defendants" or "P&G"

## II.      STATEMENT OF FACTS

In early 2012, P&G embarked on a $150 million marketing campaign for Tide Pods with the slogan "Pop in. Stand out." This campaign appeared in numerous media outlets. The campaign invited customers to simply "pop" the product into the washing machine and see the resulting "stand out" clean. ¶ 29.

In a March 6, 2012 press release, P&G introduced Tide Pods as a new "breakthrough technology" laundry detergent that took eight years to develop. It stated that Tide Pods contained three chambers "especially designed to brighten, fight stains and clean." ¶ 30. The press release emphasized that "40% of people do their laundry in cold water most of the time" and "Tide Pods are made with a new, best in class film that dissolves and works effectively in all water temperatures-even those that are nearly freezing." *Id.*

Plaintiffs allege, among other things, that they bought Tide Pods laundry detergent, in significant part, based on P&G's representations that Tide Pods was a detergent, stain remover; and brightener which were convenient to use; they followed the manufacturer directions; and that its use resulted in permanent stains on their laundry that they were unable to remove after numerous attempts and by varied means. ¶¶ 6-25. There have been many, many reports of other consumers having similar experiences, only a small sample of which are cited in the Complaint. ¶¶ 31-40. These complaints allege that the Tide Pods did not dissolve properly and as a result laundry was stained. *Id.* Accordingly, Plaintiffs allege that P&G engaged in deceptive practices while manufacturing and distributing a defective product.

In the Complaint, Plaintiffs allege a variety of common law and statutory claims including breach of implied warranties, violations of the various unfair and deceptive trade practices acts, and unjust enrichment. ¶¶ 71-168.

## III.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS

### A.    Plaintiffs Adequately Allege Claims Under Rule 12(b)(6)

#### 1. Legal Standards

FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2) states, in pertinent part, that a Complaint include "a short and plain statement of the claiming showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Its purpose is to ensure that a "defendant is given fair notice what the … claim is and the grounds upon which it rests." *Id.*, *quoting Conley v. Gibson*, 355 U.S. 41, 74 (1957).

In deciding a Rule 12(b)(6) motion, the Court must "accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Hughes v. Ester C. Co.*, 930 F. Supp. 2d 439, 451-52 (E.D.N.Y. 2013). Questions of fact should not be disposed under FED. R. CIV. P. 12(b)(6). *Procter & Gamble, Co. v. Xetal, Inc.*, 2006 U.S. Dist. LEXIS 24342, at *5 (E.D.N.Y. Mar. 23, 2006). A complaint should not be dismissed if plaintiff asserts factual allegations sufficient "to raise a right to relief above the speculative level." *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 321 (2d. Cir. 2010).

"The question on a Rule 12(b)(6) motion is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (citations omitted).[3] To survive a motion to dismiss, a party need only plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Complaint more than meets this standard.

---

[3] Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 118–19 (E.D.N.Y. 2011), *quoting Ashcroft v. Iqbal*,  556 U.S. 662 (2009) (denying motion to dismiss GBL § 349 claim).

2.  **Plaintiffs Adequately Allege a Defect in the Tide Pods Sufficient to Sustain All of Their Claims**

P&G's flawed premise for dismissal of all claims is that Plaintiffs make only conclusory allegations and fail to allege the exact defect. Defs. at 4-12.[4] Plaintiffs allege the staining was caused by the inability of Tide Pods' "best-in-class film" to dissolve properly, resulting in stains even when used as directed. ¶¶ 31-32, 40. Therefore, Plaintiffs adequately allege a defect.

For example, the Complaint pleads a sample of customer complaints maintained on Defendants' website that Tide Pods do not dissolve properly, including:

- **'Tide Pods' October 10, 2014**

  'Absolutely hate this product!  I was done washing my clothes so I put them in the dryer. When I took them out I noticed a hard light purple spot on my clothes. I soon realized that it was what was left of the pod. *It apparently did not dissolve all the way when they were getting washed so when I dried my clothes they were little hard spot on multiple laundry.*

- **'Stains clothes, leaves sticky residue 'lump'' July 9, 2014**

  *'I am tired of seeing people being told that if instructions are followed as directed, the pods will dissolve completely. This is not true.* I've had a sticky residue 'lump' left on my clothes at least three times, (doesn't come off, btw) and now my favorite white shorts are stained with a blue streak. *There are times I have to fill the washer completely and the pod still doesn't dissolve, and then I have to run it with no clothes in for a minute to get the pods to pop.* Then I have to add the clothes, pushing them down into the water. FAR from convenient!
  It's sad when you have to check your clothes completely when they come out of the washer to make sure you don't set the stains by putting them directly into the dryer. And the sticky lump will also remain on your clothes after the dryer.

- **'As everyone said-They don't dissolve.'** May 25, 2014

  'I got these, wanting to simplify my laundry room, having a pretreater, oxi, and tide pods, but its (sic) not meant to be. I read the instructions, and followed them to a T. *My laundry came out with the casing fused to my husband's clothes, and*

---

[4] "Defs. at ___" means the Memorandum of Law in Support of Defendants the Procter & Gamble and the Procter & Gamble Distributing LLC's Motion to Dismiss the Complaint or in the Alternative to Strike the Class Allegations.

> ***with blue dye all over.*** I use soft water, and a great washing machine, so what
> gives?
> ***I have resorted to pre-dissolving my 'easy and simple' pods before I add them to
> the wash.*** I am doing this, just so I don't waste them.

¶ 40 (emphasis added).

In fact, P&G itself acknowledged that the blue/purple stain on fabrics is due to Tide

Pods not dissolving completely. ¶¶ 35, 37. For example, as the *Consumerist* reported on

April 18, 2014, P&G responded to a customer complaint, in part:

> ***I'm sorry your Tide Pods didn't dissolve and stained some of your laundry.*** We
> appreciate your bringing this to our attention, and I'm sharing your report with the
> rest of our Tide Team. If you haven't done so already, I hope you'll try the
> product again with the following tips for best results:
>
> •   Always add Tide Pods to the drum of the washing machine BEFORE
>     loading the clothes.
> •   Do not use a 'delicate' cycle for heavy loads. Do not use a quick cycle or
>     less than 30 minutes.
> •   Switch to a warm setting during the winter months or whenever water is
>     exceptionally cold.
> •   Do not overload your washer.

¶ 37.

P&G also acknowledged, in response to customer complaints on its website, that

improperly dissolving Tide Pods caused staining. For example:

•   Fabric Care Community Manager, Consumer Care, June 5, 2014

> ***We're sorry to hear about the Pods not dissolving completely in your washing
> machine and your husbands work laundry. We've extensively tested the Pods
> and feel certain they'll dissolve completely and not stain when used as directed.***
> Here are some tips for using the Pods so they dissolve completely:
> Add the Pod to drum of washing machine before loading the clothes.
> Do not use 'Delicate' cycle for heavy loads.
> Do not use a quick cycle less than 30 minutes.
> Pods cannot be used in pre-wash cycles.
> Do not place in the dispenser drawer.
> Pods can be used in temperatures ranging from 20 to 95 degrees C (68 to 203
> degrees F).

•   Fabric Care Community Manager, Consumer Care, August 1, 2014

. . .. So we always advise putting the POD right in the drum before you add water or laundry. *If you get any plastic dried on your clothes, be sure to soak the garment in hot water for at least an hour. This should ensure that it dissolves.*

• Fabric Care Community Manager, Consumer Relations, April 25, 2014

We're sorry to hear about your experience with the Tide Pods. Due to the extensive testing we've done, *we feel certain that when used as directed, Tide Pods will dissolve completely and not stain laundry*.

¶ 40 (emphasis added).

### 3. Plaintiffs Adequately Plead Breach of Implied Warranty of Merchantability and Fitness for a Particular Purpose

Plaintiffs assert a breach of the implied warranty of merchantability under the UNIFORM COMMERCIAL CODE § 2-314 (1) which provides "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." U.C.C. § 2-314 (1). "The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Wojcik v. Empire Forklift, Inc.*, 783 N.Y.S. 2d 698, 700-701 (3d Dep't. 2004) (citations omitted).

While this warranty "does not mean that the product will fulfill [a] buyer's every expectation," *Denny v. Ford Motor Co*., 87 N.Y.2d 248, 258, n.4 (N.Y. 1995), it does "provide[] for a minimal level of quality." *Id*.; *see also Ferracane v. United States*, 2007 U.S. Dist. LEXIS 6569, *25-26 (E.D.N.Y. 2007). Whether goods are merchantable "focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners". *Wojcik*, 783 N.Y.S.2d at 701, *quoting Denny*, 87 N.Y.2d at 258–259. Plaintiffs allege that "Tide Pods are not fit for their ordinary purposes which involved cleaning laundry without adding permanent stains" due to their inability to properly dissolve. ¶ 80. See *Derienzo v. Trek Bicycle Corp*., 376 F. Supp. 2d 537, 570 (S.D.N.Y. 2005) (liability for "breach of warranty [of

merchantability] depends on the 'expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners.").

Plaintiffs' breach of implied warranty of fitness for a particular purpose is implied in "every sale or contract of sale, without evidence that the seller either promised or represented that the goods supplied would possess such quality." *Donovan v. The Aeolian Co.,* 270 N.Y. 267, 269 (1936). "[T]he buyer must establish that the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods are required and that the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods, and that the buyer did in fact rely on that skill." *Factory Assocs. & Exps. v. Lehigh Safety Shoe Co.,* 2007 U.S. Dist. LEXIS 46290, at *29 (N.D.N.Y. 2007), *quoting Saratoga Spa & Gath v. Beeche Sys. Corp.,* 656 N.Y.S.2d 787, 790 (3rd Dept. 1997). Plaintiffs satisfy this standard.

Plaintiffs allege that: P&G knew Tide Pods were purchased for a particular purpose (to use as laundry detergent); Plaintiffs "reasonably relied upon the expertise, skill, judgment, and knowledge of [Defendants] and upon their implied warranty that Tide Pods were of merchantable quality and fit for their particular purpose…"; and Plaintiffs "were influenced to purchase Tide Pods because of [Defendants'] expertise, skill, judgment, and knowledge in creating laundry detergent with this new technology, and furnishing Tide Pods for that use to consumers." ¶¶ 82-88. Nothing more need be pled.

P&G argues that Plaintiffs' breach of implied warranties claims fail to properly plead facts in support of Plaintiffs' allegations that Tide Pods are defective. Defs. at 8-9. However, the Complaint contains sufficient allegations related to the defective nature of the Tide Pods. In addition, contrary to P&G's argument, a claim for breach of the implied warranty of merchantability does not require pleading the same defect elements as is necessary to prove a

strict products liability or negligence claims. *DiBartolo v. Abbott Labs.,* 914 F.Supp.2d 601, 627 (S.D.N.Y. 2012) (breach of implied warranty of merchantability sustained where plaintiff alleged drug was not for its ordinary purpose where label did not adequately warn of risks).

In addition, P&G is incorrect in asserting that breach of implied warranty, strict products liability and negligence are essentially the same action. See *Denny v. Ford Motor Co*., 87 N.Y.2d at 258-59. The New York Court of Appeals offered the following guidance with respect to strict products liability and implied warranty claims:

> While the strict products concept of a product that is "not reasonably safe" requires a weighing of the product's dangers against its over-all advantages, the UCC's concept of a "defective" product requires an inquiry only into whether the product in question was "fit for the ordinary purposes for which such goods are used" (UCC 2-314 [2] [c]). The latter inquiry focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners.

*Id.* Here, Tide Pods were manufactured for the use as a laundry detergent and as a result of the staining, were clearly not fit for its ordinary purpose of cleaning laundry (¶¶ 77-79).

*Viscusi v. P&G*, 2007 U.S. Dist. LEXIS 51307 (E.D.N.Y. July 16, 2007), cited by P&G (Defs. at 8), is distinguishable. First, *Viscusi* was a summary judgment motion based on evidence. 2007 U.S. Dist. LEXIS 51307, at *32-33. Second, the injury in *Viscusi* was related to an allergic reaction limited to a few people, not whether a product functioned as warranted. *Id.* at *3-4; *see also Pai v. Springs Indus*., 18 A.D.3d 529, 530 (2d Dep't 2005) ("An injury is not foreseeable if it 'is due to some allergy or other personal idiosyncrasy of the consumer, found only in an insignificant percentage of the population'" (citations omitted)).

### 4. Plaintiffs Plead Material Misrepresentations and Omissions Sufficient for Consumer Statute Claims

P&G wrongly argues that Plaintiffs' consumer statute claims must fail because the Complaint does not allege an underlying defect as the basis for the alleged misrepresentations

and omissions. Defs. at 9; *see Stoltz v. Fage Dairy Processing Indus., S.A.,* 2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sept. 22, 2015) (allegations that defendants' yogurt commanded a price premium as a result of defendants' deceptive acts sufficiently pled New York, California and Florida consumer law claims); *Ackerman v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 73156, at *77, 85, 90 (E.D.N.Y. July 21, 2010) (sufficiently pled New York and California consumer law claims were premised on misleading statements made in connection with the labeling of vitaminwater.); *Belfiore v. P&G*, 94 F. Supp. 3d 440 (E.D.N.Y. 2015) (allegations that defendant P&G's marketing of Charmin Freshmate wipes as flushable, when they were not in fact flushable, sufficiently pled New York consumer law claim).

Although the Tide Pods' failure to dissolve properly in all water temperatures, resulting in staining to laundry, could be characterized as a defect, Plaintiffs need not plead that there was a defect to maintain their claims for alleged violations of consumer statutes. Rather, the issue is whether the product does as P&G represented – clean, brighten and remove stains from laundry in all temperatures.  It does not.

Instead, the Complaint properly alleges deceptive conduct arising out of P&G's affirmative misstatements and omissions in their marketing Tide Pods as a "detergent" "stain remover" and "brightener," and representations and instructions on Tide Pods' packaging. Specifically, the Complaint alleges:

- Defendants deceptively marketed Tide Pods as a laundry detergent that is designed to brighten, fight stains and clean. ¶¶ 7, 13, 19, 30, 31, 32.

- Defendants deceptively represented that Tide Pods dissolve effectively in all water temperatures, specifically stating that Tide Pods "… features a best-in-class film that dissolves and works effectively in all water temperatures." ¶¶ 30, 31.

- Defendants failed to disclose that Tide Pods not only do not dissolve and work effectively in all water temperatures or in all washing cycles but actually cause permanent staining to clothing due to the inability of the

Tide Pods to dissolve effectively in colder water temperatures and in shorter washing cycles. ¶¶ 31-40, 45, 47, 48, 51-53, 133.

The cases P&G rely on are distinguishable. In *Goldin v. Smith & Nephew, Inc.*, 2013 U.S. Dist. LEXIS 58811 (S.D.N.Y. Apr. 24, 2013), the court dismissed plaintiff's New York General Business Law ("GBL") claims as conclusory. *Punian v. Gillette Co.,* 2016 U.S. Dist. LEXIS 34164 (N.D. Cal. Mar. 15, 2016), was evaluated under Rule 9(b), not the relevant Rule 8, and leave to amend had already been given.

a.  Defendants Had a Duty to Disclose Material Facts Regarding Tide Pods Staining Issues

P&G argues that Plaintiffs' consumer statute claims also fail because P&G did not have a duty to disclose Tide Pods' potential for staining. Defs. at 10. In Florida, a plaintiff need not plead a duty to disclose in alleging claims for violations of consumer protection laws. *In re Takata Airbag Prods. Liab. Litig.,* 2016 U.S. Dist. LEXIS 138976, at *156  (S.D. Fla. 2016). However, Plaintiffs satisfy the New York and California requirement of pleading a duty to disclose. A duty to disclose arises when defendant: (1) had exclusive knowledge of material facts not known to the plaintiff and; (2) actively concealed a material fact from the plaintiff. *Parkinson v. Hyundai Motor Am., Falco v. Nissan N. Am. Inc.,* 2013 U.S. Dist. LEXIS 147060 (C.D. Cal. Oct. 10, 2013); *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 129 (E.D.N.Y. 2011).

Here, although P&G had a duty to disclose, it failed to do so. Indeed, Plaintiffs allege that P&G: (1) had knowledge that Tide Pods had the potential to stain clothing even if used properly; and (2) actively concealed this information. ¶¶ 33, 35, 36-43, 45, 48-53.

b.  Defendants Were Aware of Tide Pods' Potential for Staining

Plaintiffs adequately allege that P&G was aware of Tide Pods' propensity to stain from a variety of sources. Among other things, the Complaint provides a small sampling of customer complaints (taken from a much larger collection) that appeared on P&G's website (with

10

responses from P&G). *See* ¶¶ 34-40. Courts have held that allegations regarding numerous complaints of a defect are sufficient to plead defendants knew or should have been aware of the defect. For example, in *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 562 (S.D.N.Y. 2016), the court held that plaintiff adequately alleged BMW's awareness based on allegation that BMW knew through a variety of sources including numerous customer complaints. *Id.*; *see also Apodaca v. Whirlpool Corp.*, 2013 U.S. Dist. LEXIS 176363, at *21 (C.D. Cal. Nov. 8, 2013) (knowledge sufficiently pled where complaint alleged "Defendant had exclusive knowledge through testing at the design stage . . . and numerous consumer complaints of the defect"); *Aguilar v. General Motors LLC*, 2013 U.S. Dist. LEXIS 149108, at *14-15 (E.D. Cal. Oct. 16, 2013)(sufficient allegations where plaintiff "submit[ted] a sampling of consumer complaints" dated prior to the date of sale of his vehicle).[5]

## 5. Plaintiffs Adequately Plead Violations of Consumer Statutory Law

The Complaint alleges violations of Florida's Deceptive and Unfair Practices Act ("FDUTPA"), Fla. Stat. Ann. §501.204(1), GBL § 349, California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq., California Unfair Competition Law ("UCL"), and Cal. Bus. & Prof. Code §§ 17200, et seq. See, e.g., Counts VII-X, ¶¶ 119-68.

The FDUTPA broadly proscribes "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce…." FLA. STAT. ANN.

---

[5] Defendants' cases are distinguishable. In *Berenblat v. Apple, Inc*., 2010 U.S. Dist. LEXIS 46052, at *8-9 (N.D. Cal. 2010), there had been prior dismissal with leave to amend. The amended complaint was dismissed, after the court ruled that the additional facts pled were not helpful. Court nonetheless granted leave to amend again with respect to consumer statute violation. *Id.* at * 28; *In re GM LLC Ignition Switch Litig.*, 2016 U.S. Dist. LEXIS 23407, at * 661-662 (S.D.N.Y. Feb. 25, 2016), summary judgment related to evidentiary issues on motion *in limine* in strict product liability, where "plaintiffs fail to identify the specific complaints they propose to use."; *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) (customer complaints alleged in plaintiff's complaint failed to "indicate where or how the complaints were made" and twelve out of the fourteen customer complaints were undated.)

§501.204(1). Deception occurs "where there is a representation, omission, or practice that is likely to mislead a consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Molina v. Aurora Loan Svcs., LLC*, 635 Fed. App'x 618, 627 (11th Cir. 2015), quoting *Zlotnick v. Premier Sales Grp., Inc*., 480 F.3d 1281, 1284 (11th Cir. 2007)).

GBL § 349 prohibits "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). A § 349 claim must allege that: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result. *See, e.g., Goldemberg v. Johnson & Johnson Consumer Cos., Inc*., 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014). Whether a particular act or practice is deceptive is intensely-factual, and motions to dismiss are disfavored. *See, e.g., Sims v. First Consumers Nat. Bank*, 303 A.D.2d 288, 289 (1st Dep't 2003).

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services." Cal. Civ. Code §1770(a). The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §17200. "Virtually any law—federal, state or local—can serve as a predicate" for a UCL claim, including the CLRA. *Stevens v. Super. Ct.*, 75 Cal. App. 4th 594, 602 (1999). Both claims require plaintiffs prove reliance upon the defendants' alleged misrepresentation, but reliance can be informed as to the Class. *See, e..g., Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1043-44 (N.D. Cal. 2014). *See St. John's Univ. v. Bolton,* 757 F. Supp. 2d. 144, 183 (E.D.N.Y. 2010) ("[D]ismissal of . . . unjust enrichment on motion to dismiss would violate the liberal policy of Rule 8.").

**6.  Plaintiffs' Unjust Enrichment Claims Are Cognizable**

In New York, unjust enrichment requires "proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd. v. Phoenix Pictures, Inc*., 373 F.3d 296, 306 (2d Cir. 2004); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 472 (E.D.N.Y. 2013) (sustained unjust enrichment under New York law). The Complaint easily establishes these elements by alleging (1) that P&G received payment for its Tide Pods from Plaintiffs without their knowledge that the product had the capacity to cause permanent stains; (2) that Plaintiffs conferred a benefit on P&G by purchasing the Tide Pods; and (3) that P&G accepted and retained this benefit and it would be unjust and inequitable if P&G is allowed to retain such funds. ¶¶ 98-100. Thus, Plaintiffs have stated a claim for unjust enrichment.

P&G does not dispute that Plaintiffs have pled and factually supported these elements. Rather, in addition to arguing that Plaintiffs' unjust enrichment claim fails because Plaintiffs failed to allege a defect or adequately allege P&G's misrepresentations, P&G advances the argument that Plaintiffs' claim must be dismissed because it is duplicative of "a conventional contract or tort claim." Defs. at 12. As set forth in *Chaluisan v. Simsmetal E. LLC.* 698 F. Supp. 2d 397, 409 (S.D.N.Y. 2010), it is inappropriate at this phase to dismiss an unjust enrichment claim as duplicative because that question may be answered through discovery. Moreover, this Court sustained similar unjust enrichment claims in *Ackerman,* 2010 U.S. Dist. LEXIS 73156, at *99-100, and in *In re Bayer Corp. Combination Aspirin,* 701 F. Supp. 2d 356, 384 (E.D.N.Y. 2010), where it held:

> [P]laintiffs charge defendant with employing misleading statements about the virtues of the combination product to market them to consumers. Because of these misrepresentations, plaintiffs purchased the combination products and defendant retained those benefits. If the allegations in the Complaint are true, then defendant

> reaped a financial reward at plaintiffs' expense. This is sufficient to state a claim
> for unjust enrichment.

*Id.*

P&G's reliance on *Stolz v. Fage Dairy Processing Indus., S.A.,* 2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. 2015), is distinguishable because that dismissal was without prejudice and the New York unjust enrichment claim was duplicative of the negligent misrepresentation claim, which Plaintiffs do not allege here. *Id.* at *80-82. However, *Stoltz* upheld plaintiffs' Florida unjust enrichment claim which was not duplicative of the FDUPTA claim which is the routine practice of Florida courts. *Id.* at *82-83. Since "it is only upon a showing that an express contract exists [between the parties] that the unjust enrichment … count fails." *Id.* (citations omitted). *Stolz* also upheld plaintiffs' unjust enrichment claim under California law. *Id.*

## IV.     THE COURT SHOULD NOT STRIKE THE CLASS ALLEGATIONS

Although Plaintiffs have not yet moved for class certification, P&G asserts that this action is not capable of meeting Rule 23 requirements, and the Court should summarily strike the class allegations. Defs. at 14. P&G fails to establish the legitimacy of this argument. This action is easily capable of satisfying FED. R. CIV. P. 23. As such Plaintiffs should, at the appropriate time, be permitted to file a motion for class certification and obtain any necessary class related discovery.

P&G asserts two reasons why Class certification is allegedly not appropriate, that: (i) not all Class members have standing because not all class members had stained laundry; and (ii) there will be individual issues based on the presence or degree of staining and thus a need for "mini-hearings." Defs. at 14. Neither of these reasons are a roadblock to class certification.

Contrary to P&G's assertion, courts do not routinely strike class allegation before a plaintiff has moved for certification and taken class related discovery. Indeed, "[a] motion to

strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiff's are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Belfiore*, 94 F. Supp. 3d at 447; *Windley v. Starion Energy, Inc.*, 2016 U.S. Dist. LEXIS 5504, at *9 (S.D.N.Y. Jan. 8, 2016) (declining to strike class action allegations before discovery); *Chen v. Hiko Energy, LLC*, 2014 U.S. Dist. LEXIS 181846, at *18 (S.D.N.Y. Dec. 29, 2014) (same).

### A.     The Importance of Consumer Class Actions

"[T]he class action is one way of equalizing the power of enfeebled individuals and the powerful entities they confront." *Belfiore v. P & G*, 311 F.R.D. 29, 59 (E.D.N.Y 2015), *quoting* "Notes on Uniformity and Individuality in Mass Litigation", 64 *DePaul L. Rev.* 251, 256 (2015). "The policy at the very core of [FED. R. CIV. P. 23] . . . is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997), *quoting Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997)). "Consumer protection claims are usually suited to class certification." *Belfiore*, 311 F.R.D. at 60 (citation omitted).

### B.     There is No Standing Issue Because the Class Is Sufficiently Ascertainable

P&G is mistaken in its assertion that the class is not ascertainable. Defs. at 16. Although the Second Circuit does require Plaintiffs show ascertainability, that issue does require the striking of Plaintiffs' class allegations. Indeed, "[t]he standard for ascertainability is 'not demanding' and is 'designed only to prevent the certification of a class whose membership is truly indeterminable.'" *Ebin v. Kangadis Food, Inc.*, 297 F.R.D 561, 567 (S.D.N.Y. 2014), *quoting Gorat v. Capala Bros., Inc.*, 2010 U.S. Dist. LEXIS 35451, (E.D.N.Y. Apr. 9, 2010). Moreover, the requirement should not be used to prevent this case from going forward as a class

15

action. As the *Ebin* court cautioned:

> Yet the class action device, at its very core, is designed for cases like this where a large number of consumers have been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit. Against this background, the ascertainability difficulties, while formidable, should not be made into a device for defeating the action.

*Id.*

P&G, in a footnote (Defs. at 17, n.4), asserts that the lack of uniformly available sales records is also a block to ascertainability. This is not a significant issue. In *Ebin*, defendants pointed to the unlikelihood that class members would have receipts, still have the product, or even recall the particulars of a purchase. Yet, the Court found ascertainability satisfied even if the only proof of purchase was a declaration from class members. 297 F.R.D at 566 (rejecting the standard set in a case which did not permit the use of declarations to identify class members). Similarly, the court in *Goldemberg v. Johnson & Johnson Consumer Cos*., 2016 U.S. Dist. LEXIS 137780 (S.D.N.Y. Oct. 4, 2016), found that "the implied ascertainability requirement of Rule 23 can, at a minimum, be met on the basis of sworn statements indicating class members purchased the products at issue[.]" *Id.* at *54. There is no reason why a similar approach would not work here. *See also Belfiore*, 311 F.R.D. at 66-67 (finding a class ascertainable even though its identification was in large part dependent on the submission of affidavits); *In re Scotts EZ Seed Litig*. 304 F.R.D. 397, 407 (S.D.N.Y. 2015); *Forcellati v. Hyland's, Inc*., 2014 U.S. Dist. LEXIS 50600, at *13-14 (C.D. Cal. Apr. 9, 2014) (certifying a proposed class of individuals who purchased homeopathic products although "purchasers likely have not retained proof of purchase").

P&G also asserts that a class is not ascertainable because not everyone who used Tide Pods suffered stained laundry and the class may not include persons whose clothes were not stained. First, P&G ignores that even those whose laundry might not have appeared stained have

been injured because, as P&G recognizes, an injury can include class members not getting the benefit of their bargain after paying a premium for Tide Pods. Defs. at 16, n.3, 18-19. But even if the test were to prove staining, a class is not necessarily precluded by virtue of there being both persons who had stained clothes and unstained clothes. *See DG v. Devaughn*, 594 F.3d 1188, 1201 (10th Cir. 2010) ("That a class possibly or even likely includes persons unharmed by a defendant's conduct should not preclude certification"); *In re Conagra Foods, Inc.*, 302 F.R.D. 537, 567 (C.D. Cal. 2014); *Rodman v. Safeway, Inc.*, 2014 U.S. Dist. LEXIS 31438, at *16 (N.D. Cal. Mar. 10, 2014).

## C.      The Typicality Requirement Can Be Satisfied

P&G asserts that the Plaintiffs' claims are not typical of other members of the class. P&G seems to suggest that typicality can only be shown if each and every member of the class suffered stained laundry. Defs. at 18. P&G is wrong. Moreover, at this stage of the litigation, there is no need to consider whose laundry was stained and whose was not. Typicality "is not highly demanding." *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015). "[C]omplete symmetry between the class representative's claims and those of the absent class members" is not required. *See In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 105 (E.D.N.Y. 2012) (citation omitted). All that is required is that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented" even if there are minor variations. *Robidoux v. Celani*, 987 F. 2d 931, 936-37 (2d Cir. 1992)

P&G moved to strike the *Belfiore* plaintiff's class allegations because, among other things, the proposed class included both members who suffered clogged toilets as the result of using P&G's "wipes" and members who did not.[6] Judge Weinstein indicated that he had already

---

[6] Contrary to P&G's assertion, the Complaint's allegations do not "show" that Tide Pods clean laundry for "the overwhelming majority of the proposed class members". Defs. at 18. First, the

ruled in essence on that issue when he denied a motion to dismiss. *Belfiore*, 311 F.R.D. at 42.

Judge Weinstein also rejected P&G's argument that typicality is absent to the extent the plaintiff

claimed, as Plaintiffs herein do, that the proposed class paid an unjustified premium for P&G's

product:

> Courts have construed the payment of a premium price to be an injury in and of
> itself. See *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y.
> 2014) (all consumers are harmed for purposes of New York General Business
> Law section 349 in the amount of the purchase price of a misrepresented product
> or in the amount of the premium paid for the product); *Rodriguez v. It's Just
> Lunch, Int'l*, 07-CV-9227, 2010 U.S. Dist. LEXIS 16622, 2010 WL 685009, at *9
> (S.D.N.Y. Feb. 23, 2010) (premium price paid based on misrepresentations is
> injury under New York General Business Law section 349).

*Belfiore*, 94 F. Supp. 3d at 447.

P&G is therefore wrong in its assertion that typicality cannot be found based on the

concept of paying a premium for Tide Pods. Defs. at 18. As *Belfiore* states, "[i]n the instant case,

typicality is satisfied. The named plaintiff purchased defendant's 'flushable' wipes at a price

higher than that of non-flushable wipes." *Belfiore,* 311 F.R.D. at 64. Similarly, in this action

Plaintiffs and the proposed Class were not paying just to have laundry detergent that did not

stain. Consumers paid more for Tide Pods because of the convenience of the pod – but they were

still expecting a high performing detergent based on P&G's marketing and packaging

representations.

Tellingly, Judge Weinstein did not strike class allegations even though the *Belfiore*

plaintiff, seeking damages for misrepresentations leading to sales of a product at a premium, was

---

complaint alleges more than unclean laundry – it alleges staining. Second, *Belfiore* impliedly
rejected this argument after P&G asserted that plaintiff's "experience is not typical of the
majority of purchasers, many of whom have been using the product for years, and for whom the
product has always been fully 'flushable.'" 311 F.R.D. at 48-49. Even to the extent it would be
relevant to establish a certain percentage of the Class suffered staining, Plaintiffs cannot be
expected to be able to determine that percentage at this stage of the litigation. At a minimum,
class related discovery must occur first.

also seeking plumbing costs incurred as a result of the supposedly flushable wipes – something all wipes users did not incur.[7] Thus, the typicality requirement is not impacted by the alleged fact that some members of the instant class may not have suffered stained laundry. Similarly, the court in *Ebin* rejected a challenge to typicality in a case alleging that the class was misled into buying a product labeled as pure olive oil when it was not. *Ebin*, 297 F.R.D. at 566, *quoting Civic Ass'n of the Deaf v. Giuliani*, 915 F. Supp. 622, 633 (S.D.N.Y. 1996) (rejecting typicality objection that, even if some of the containers did not contain pure olive oil, some of the containers purchased by class members may have actually contained pure olive oil); *see also Goldemberg v. Johnson & Johnson Consumer Cos.*, 2016 U.S. Dist. LEXIS 137780, at *58 (finding typicality and noting that "[c[onsumers of the same product, exposed to the same marketing and packaging, will have almost entirely the same claims with at most 'minor variations' in the facts surrounding their purchase of the products.").

### D. The Commonality and Predominance Requirements Can be Satisfied

P&G also asserts that this Court should strike the class allegations because, they claim, the need to prove highly individualized issues and facts prevent the action from satisfying the commonality requirement of Rule 23(a)(2). Defs. at 19. P&G is wrong. "For purposes of Rule 23(a)(2) '[e]ven a single [common] question'" will do. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) "The fact that some 'consumers were satisfied with the product is irrelevant.'" *Belfiore*, 311 F.R.D. at 62, *quoting Rikos v. P & G*, 799 F. 3d 497, 507 (6th Cir. 2015). "It is not necessary for all of the plaintiffs to have had a 'uniform' experience with respect to the product."

---

[7] The *Belfiore* court also rejected the defendant's challenge to typicality even though the toilets in plaintiff's home was connected to a sewer system, not a septic tank; plaintiff's plumbing was poorly maintained; and plaintiff experienced clogs prior to his use of the wipes. 311 F.R.D. at 64. As the Court stated, "What happened after his purchase, as a result of his sewage disposal system or the condition of his pipes, is irrelevant to the class's premium price theory." *Id*.

*Id.*, *quoting Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, at * 42. Indeed, commonality was found in *Belfiore* where some users apparently had no problems after flushing P&G's wipes, while others sustained damage to their toilet's pipes – resulting in class members incurring drastically different expenses. *See Belfiore*, 311 F.R.D. at 42, 48-49 Commonality similarly exists in this action.

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 623. Predominance does not require that all questions are common or that there are no individual issues. *See Smilow v. Sw. Bell Mobile Sys.*, Inc., 323 F.3d 32, 39-40 (1st Cir. 2003). In making its predominance determination, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class" and, where that is the case, "common questions are held to predominate over individual questions." *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 210 (S.D.N.Y. 2012) (internal quotation marks omitted). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re Scotts EZ Seed Litig.*, 2015 U.S. Dist. LEXIS 9116, at *18 (S.D.N.Y. Jan. 26, 2015) (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

Here, generalized, class-wide proof will determine whether and the extent to which, among other things, Defendants' statements describing Tide Pods as being a "detergent, stain remover, and brightener," that dissolves in all temperatures, injured Plaintiffs and the Class. *See, e.g.*, ¶ 31. In connection with whether common questions predominate for a claim that P & G misrepresented wipes as flushable, *Belfiore* stated,

> If Freshmates [wipes] are found to be not "flushable," then all consumers were injured. This question predominates. The question of whether Freshmates do not disintegrate "for some individuals goes solely to the merits; it has no relevance to the class certification issue." *Rikos,* 2015 U.S. App. LEXIS 14613, 2015 WL 4978712, at \*17 (finding that where probiotic supplement worked for some individuals goes to merits of plaintiff's claim and not to commonality); cf. *Anonymous v. CVS Corp.*, 188 Misc. 2d 616, 728 N.Y.S.2d 333, 340 (N.Y. Sup. Ct. 2001) (finding dismissal of the N.Y.G. B.L. § 349 putative class unwarranted even where some customers appeared not to suffer injury and continued to conduct business with defendant).

311 F.R.D. at 69. Therefore, P&G wrongly asserts that individualized inquiries into each customer's experience with Tide Pods prevent a finding of preponderance of common issues across the Class. As with *Belfiore*, it does not matter whether some class members incurred staining and some did not. The real question is whether P&G's representations would have misled a reasonable consumer. That is an objective question for the jury to decide and does not vary from class member to class member. *See, e.g.*, *Sykes v. Mel Harris & Assocs., LLC,* 285 F.R.D. 279, 293 (S.D.N.Y 2012); *Goldemberg v. Johnson & Johnson Consumer Cos*., 2016 U.S. Dist. LEXIS 137780, at \*25 (objective standard used regarding meaning of product labeling). There is no need, as P&G suggests, to consider whether a particular Class member had: damaged laundry; a faulty washing machine; a washing machine where directions were not followed; and/or overloaded the machine, or if the damage to the laundry was caused by other reason. *See* Defs. at 21.

### E.      Defendants Fail to Establish the Impossibility of a Nationwide Class

Although P&G disputes that a nationwide class can be certified, it is not unusual for courts to certify them. For example in *In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 528-29 (N.D. Cal. 2010), in an action alleging claims for breach of contract, declaratory judgment, breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation, which would invoke the laws of many states, the court

certified a national class. The Court pointed out that variations in state law could be handled at trial by creating groups of the most similar state laws, which would be a workable solution to defendant's concerns. *Id.* at 529; *see also In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998) ("We also reject Krell's contention that predominance is defeated because the class claims are subject to the laws of the fifty states. Courts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit"). Similarly, a nationwide class was certified in *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 107 (D. Mass. 2008), despite the application of many states' laws.

 With respect to consumer cases, a class was also certified on a national basis in *Ebin*, 297 F.R.D. at 569-70. Relying on *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002), the *Ebin* court found nationwide certification appropriate because "defendant uniformly misrepresented its pomace oil to be 100% Pure Olive Oil to all class members, this action with its standardized misrepresentations established by generalized proof is appropriate for class certification." *Id.* at 569. The instant case similarly points to uniform misrepresentations and/or omissions on the product label.

Because P&G has not demonstrated any significant differences in the laws of different states, class allegations should be sustained. Indeed, in the end this Court may decide to apply the law of the forum jurisdiction. *See Elias v. Ungar's Food Prods.*, 252 F.R.D. 233, 249-50 (D.N.J. 2007) (magistrate recommendation (subsequently adopted) applying forum law on breach of warranty claim where defendants did not establish any difference in the laws of the various jurisdictions); *Zhang v. Wang*, 2006 U.S. Dist. LEXIS 74203, at *4 n.l (E.D.N.Y. Oct.

12, 2006) ("As the parties have not identified any substantive difference between New York and New Jersey law . . . the Court applies New York law."). Even the possibility of applying the laws of different states would not justify striking the class allegations. See *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 58 (S.D.N.Y. 1993) ("application of the laws of different states, if necessary, does not preclude class action litigation."), *citing In re Crazy Eddie Sec. Litig.*, 135 F.R.D. 39, 41 (E.D.N.Y. 1991); *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297 (E.D.N.Y. 2004) (certifying claims under laws of different states); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 78 (E.D.N.Y. 2006) (claim certified under laws of 50 states). Plaintiffs' proposed nationwide class should not be stricken at this stage of the litigation.

## F.   Damages Can Be Measured On a Class-Wide Basis

P&G reaches for yet another reason to preemptively attack the possibility of plaintiffs achieving class certification, suggesting that Plaintiffs are required to be able to prove damages on a class wide basis in satisfaction of *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). Defs. at 23. P&G creates false issues asserting that each class member's damages depend on different factors such as whether a garment was irreparably stained, the value of replacement garments, and whether the damage was caused by a defect in Tide Pods or the user's error. Defs. at 23. But it is not unusual for plaintiffs to provide a class wide model for damages, and there is nothing unique about this case to suggest that when Plaintiffs move for class certification they cannot present a workable model for class wide damages.

*Belfiore* rejected defendant's argument that the court should not approve the use of a statistical model to determine class wide damages. *Belfiore*, 311 F.R.D. at 70 (approving model to determine premium paid by class members). *See also In re Scotts*, 304 F.R.D. at 413 (***model sufficient at the class certification stage*** where same expert as in *Belfiore* identified the "statistical methodologies" he would use and described that "methodology in detail"); *Carpenters*

*Pension Trust Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 99  (S.D.N.Y. 2015) (***only "minimal scrutiny" of the damages model is required for class certification*** under *Comcast Corp.*, and Rule 23(b)(3)). Indeed, courts accept the use of models to establish class wide damages in cases alleging that each member was misled into paying a price premium that they otherwise would not have paid had they known the truth, something on which an expert can opine. *See Brown v. Hain Celestial Grp., Inc.*, 2014 U.S. Dist. LEXIS 162038 (N.D. Cal. Nov. 18, 2014) (accepting proposed price premium damages model proposed by a reputable expert. *See also Goldemberg* 2016 U.S. Dist. LEXIS 137780, at *45-46 (expert used to show uniform method for determining damages); *Guido v. L'Oreal, USA, Inc.*, 2014 U.S. Dist. LEXIS 165777 (C.D. Cal. July 24, 2014) (***certifying class*** based on expert damages model); *Rikos*, 799 F.3d at 524 (***Class certified*** where expert damage model used); *Makaeff v. Trump Univ.*, LLC, 2014 U.S. Dist. LEXIS 22392 (S.D. Cal. Feb. 21, 2014) (same). Thus, Plaintiffs should be given the opportunity to present a uniform damage model – when they move for class certification.

### G.   A Rule 23(b)(2) Class May Be Certified at the Appropriate Time

With zero basis for their claim that there have been an "infinitesimal number of complaints regarding Tide Pods" (Defs. at 24), P&G seeks to strike Rule 23(b)(2) allegations on the grounds that such a class is inappropriate because it would not provide relief to a "majority of the class," and because the complaint seeks damages. In so doing, P&G cites to the non-precedential case of *Nationwide Life Ins. Co. v. Haddock*, 460 Appx 26, 29 (2d. Cir. 2012). In *Brazil v. Dole Packaged Foods, LLC*, 2014 U.S. Dist. LEXIS 74234, at *37 (S.D. Cal. May 30, 2014), the plaintiff also sought an injunction and damages. That court solved the dilemma by ruling that "certification of the Rule 23(b)(2) class is granted for the purposes of declaratory and injunctive relief, but denied to the extent Brazil seeks monetary damages, which are more properly brought under Rule 23(b)(3)." *Id.* Thus, that Court resolved the issue in a way that did

not fall afoul of the rule enunciated by the Supreme Court in *Wal-Mart*. This Court should do the same, and sustain the Rule 23(b)(2) and Rule 23(b)(3) allegations.[8]

## V.   IF THIS COURT GRANTS ANY PART OF THE MOTION, PLAINTIFFS REQUEST LEAVE TO AMEND

If this Court is inclined to grant any part of the Motion, Plaintiffs respectfully request leave to file an amended complaint. Such leave should be freely granted upon dismissal of a complaint. FED R. CIV. P. 15(a); *see also Ronzani v. Sanofi SA.,* 899 F.2d 195, 198 (2d Cir.1990); 2A Moore & Lucas, Moore's Federal Practice ¶ 12.14 at 12.99 (2d ed. 1989).

While Plaintiffs believe their Complaint is sufficiently pled, if this Court perceives it has any deficiencies leave to amend is appropriate. If the Motion and leave to amend are both granted, among other things, Plaintiffs will plead additional allegations regarding: P&G's knowledge of potential staining; the defect and/or cause of the staining; misrepresentations and omissions related to the staining; and allegations related to price premium injury.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court deny P&G's Motion in its entirety, or in the alternative grant Plaintiffs leave to amend.

---

[8] To the extent P&G cite cases that it believes support striking of class allegations and are contrary to Plaintiffs' cases, that merely illustrates that the issues are too complex for the Court to deprive Plaintiffs the opportunity to move for class certification.

December 16, 2016

Respectfully submitted,

STULL, STULL & BRODY

By:   /s/ Mark Levine
Mark Levine
Melissa Emert
6 East 45th Street, 5th floor
New York, NY 10017
Tel:    212-687-7230
Fax:    212-490-2022
Email: mlevine@ssbny.com
         memert@ssbny.com

Patrice L Bishop
9430 West Olympic Blvd., Suite 400
Beverly Hills, CA  90212
Tel:    310- 209-2468
Fax:    310- 209-2087
Email: service@ssbla.com

*Attorneys for Plaintiffs*