UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LISA GUARIGLIA, MICHELINE BYRNE, and
MICHELE EMANUELE, *individually*
*and on behalf of all others similarly situated*,

Plaintiffs,

**MEMORANDUM OF
DECISION & ORDER**

-against-
2:15-cv-04307 (ADS) (SIL)

THE PROCTER & GAMBLE COMPANY, and
THE PROCTER & GAMBLE DISTRIBUTING LLC,

Defendants.
-------------------------------------------------------------------X

**<u>APPEARANCES:</u>**

**Stull, Stull & Brody**
*Attorneys for the Plaintiffs*
6 East 45th Street
5th Floor
New York, NY 10017
       By:    Mark Levine, Esq.,
               Melissa Robin Emert, Esq.,
               Patrice L. Bishop, Esq., Of Counsel

**Arnold & Porter Kaye Scholer LLP**
*Attorneys for the Defendants*
250 West 55th Street
New York, NY 10019
       By:    Stephanie Fine, Esq.,
               Susan L. Shin, Esq.,
               Trenton H. Norris, Esq., Of Counsel

**SPATT, District Judge:**

The Plaintiffs Lisa Guariglia ("Guariglia"), Micheline Byrne ("Byrne"), and Michele

Emanuele ("Emanuele") (collectively, the "Plaintiffs") brought this putative class action against

the Defendants the Procter & Gamble Company, and the Procter & Gamble Distributing LLC

(collectively, the "the Defendants," "Procter & Gamble," or "P&G"), alleging that the Defendants'

1

Tide Pods are defective.

Presently before the Court is a motion by the Defendants pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6) to dismiss the complaint in its entirety, or in the alternative, to strike the class allegations pursuant to Rule 12(b)(f). For the reasons stated below, the Defendants' motion is granted in part, and denied in part.

## I. BACKGROUND

### A. The Relevant Facts

The following facts are taken from the Plaintiffs' amended complaint. The Court assumes the truth of these factual allegations, as it must on a motion to dismiss.

This case concerns the efficacy of Tide Pods single unit dose laundry detergent. Tide Pods are dissolving packets of laundry detergent (referred to as "pacs"), which are placed directly into the drum of a washing machine. (Am. Compl. ¶ 31, ECF No. 1). According to marketing materials from 2012, this "detergent," "brightener," and "stain remover," which features "a best-in-class film that dissolves and works effectively in all water temperatures," allows the consumer to simply, "[p]op in," a pac and have their clean laundry "stand out." (Id. ¶ 30). According to the Plaintiffs, Tide Pods stain, rather than clean their laundry.

Guariglia alleges that she first purchased Tide Pods in New York in August 2012. (Id. ¶ 6–7). After she began using the pacs, but before August 2013, Guariglia noticed blue and purple stains on her white and light colored laundry. She determined that the stains "were caused by" the pacs. (Id. ¶ 7). She claims that the pacs ruined at least $200 worth of laundry.

Byrne first purchased Tide Pods in Florida in or about October 2012. (Id. ¶ 13). Byrne noticed blue and purple stains on her white and light colored laundry in December 2012. (Id. ¶ 15). She used the pacs for another year and a half, until approximately June 2014, "before she

realized it was the Tide Pods that were causing the blue/purple stains." (Id.). Byrne claims at least $500 worth of damages to her laundry. (Id. ¶ 16).

Emanuele first purchased Tide Pods in California in March 2013. (Id. ¶ 19). After she began using the pacs, but before September 2013, she noticed blue and purple stains on her white and light colored laundry. She alleges that the stains "were caused by" the pacs. (Id. ¶ 20). Emanuele claims at least $650 in damage to her laundry. (Id. ¶ 23).

Relevant here, each of the named Plaintiffs observed unused portions of Tide Pods when their clothes were stained. That is, the Tide Pods apparently did not completely dissolve when the named Plaintiffs found that their clothes were stained.

In the amended complaint, the Plaintiffs included excerpts from numerous articles and websites where other individuals complained about the pacs staining their laundry. Many of the complaints noted that the Tide Pods failed to dissolve. The Defendants responded to many of these complaints by informing the consumers that Tide Pods should be placed in the washing machine before any clothes are added; to not use a delicate cycle for heavy loads; to not use a quick cycle or wash for less than thirty minutes; to not overload washers; and to switch to a warm setting whenever water is exceptionally cold. P&G also often provided directions for removing stains. The Plaintiffs allege that neither of these sets of directions are provided on the Tide Pods' packaging.

**B.  The Relevant Procedural History**

On July 23, 2015, the Plaintiffs filed their putative class action complaint.

On October 2, 2015, before the Defendants filed a responsive pleading, the Plaintiffs filed an amended complaint. The Plaintiffs assert various common law and statutory claims against the Defendants—claims for strict products liability and negligence based on theories of design defect,

manufacturing defect, and failure to warn; breach of warranty of merchantability; breach of warranty of fitness for a particular purpose; violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), F.S.A., 501.201, et seq.; violations of Sections 349 and 350 of New York's General Business Law ("GBL"); violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; and unjust enrichment. The Plaintiffs seek class certification, injunctive and declaratory relief, damages, and costs and attorneys' fees.

On January 20, 2017, the Defendants filed the instant motion to dismiss the amended complaint pursuant to Rule 12(b)(6), or in the alternative, to strike the class allegations.

## II. DISCUSSION

### A. As to the Defendants' Motion to Dismiss

#### 1. The Relevant Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a the Plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). A claim is facially plausible only "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 868 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

Because the majority of the Plaintiffs' claims turn on the alleged existence of a defect, the Court addresses the Plaintiffs' products liability claims first. The Court then discusses the remaining claims in turn.

### 2. As to the Choice of Law

Neither party addresses whether New York, Florida, or California law governs the Plaintiffs' products liability claims. The Defendants rely exclusively on New York law when addressing these claims. On the other hand, the Plaintiffs do not rely on <u>any</u> legal authority in their discussion of these claims. In any event, a review of the strict products liability law of all three jurisdictions reveals that the laws are equivalent for the purposes of this motion. Thus, the Court references only New York law, consistent with the parties' submissions.

### 3. Negligence and Strict Products Liability

A plaintiff may allege three types of product defects under a theory of strict liability or negligence: (1) a design defect, (2) a manufacturing defect, and (3) a failure to warn. <u>Colon ex. Rel. Molina v. BIC USA, Inc.</u>, 199 F. Supp. 2d 53, 82–83 (S.D.N.Y. 2001). "A strict product liability claim arises against a manufacturer . . . if (1) the product is defective, and (2) the defect caused the Plaintiff's injury." <u>Lewis v. Abbott Labs.</u>, No. 08-CV-7480, 2009 WL 2231701, at *4 (S.D.N.Y. July 24, 2009). "A negligence claim requires the plaintiff to show that (1) the manufacturer owed the Plaintiff a duty to exercise reasonable care; (2) the manufacturer breached that duty by failing to use reasonable care so that the product was rendered defective; (3) the defect was the proximate cause of the Plaintiff's injury; and (4) the plaintiff suffered loss or damage." <u>Id.</u> (internal quotation marks omitted). The Plaintiffs claim all three types of defects under both theories.

### a. **Design Defect**

#### i. *Legal Standard*

"To prove negligent design, a plaintiff must demonstrate that the product defect was a substantial factor in causing the injury, and that it was feasible to design the product in a safer manner." Kosmynka v. Polaris Indus., Inc., 462 F.3d 74, 80 (2d Cir. 2006) (internal citations and quotation marks omitted). That is, "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing the plaintiff's injury." Simon v. Smith & Nephew, Inc., 990 F. Supp. 2d 395, 403 (S.D.N.Y. 2013) (quoting Colon, 199 F. Supp. 2d at 83). The only difference between a strict products liability design defect claim and a negligent design claim is that "to show negligence, the plaintiff must also prove that the injury caused by the defect could have been reasonably foreseen by the manufacturer." Kosmynka, 462 F.3d at 86.

To satisfy the first element, the Plaintiffs must state "sufficiently detailed facts that would allow a reasonable person to conclude that the product should not have been marketed in its present form." Am. Guar. and Liab. Ins. Co. v. Cirrus Design Corp., No. 09-CV-8357, 2010 WL 5480775, at *3 (S.D.N.Y. Dec. 30, 2010). Many courts have interpreted this standard as requiring the Plaintiffs to allege a specific defect. In other words, the Plaintiffs must identify a particular problem in the design of a product; generally pleading that a product is "defective" is insufficient. See, e.g., Reed v. Pfizer, Inc., 839 F. Supp. 2d 571, 578 (E.D.N.Y. 2012) (dismissing claim where the Plaintiff "eschew[ed] the opportunity to plead facts identifying [a drug's] design defect," and "merely plead[ed] the legal conclusion that the [drug] was defective"); Surdo v. Stamina Prods, Inc., No. 15-CV-2532, 2015 WL 5918318, at *4 (E.D.N.Y. Oct. 9, 2015) (dismissing claim where the Plaintiff alleged that inversion table was "inherently dangerous," "defective," "hazardous,

unsuitable," and "defectively designed," but did not allege how the product was defectively designed); Cavanagh v. Ford Motor Co., No. 13-CV-4584, 2014 WL 2048571, at *3 (E.D.N.Y. May 19, 2014) (dismissing claim as conclusory and granting leave to amend where the Plaintiff simply alleged truck "was defective," and finding that later amendment identifying defective component of truck as the stairs leading to the passenger cab cured the pleading deficiency); Goldin v. Smith & Nephew, Inc., No. 12-CV-9217, 2013 WL 1759575, at *4 (S.D.N.Y. Apr. 24, 2013) (dismissing claim where the Plaintiff alleged "propensity" of hip implant "to dislocate," but did not "identify any particular problem in the design"); Am. Guar. and Liability Ins., 2010 WL 5480775, at *2 (dismissing claim where the Plaintiffs failed to specify the actual defective component of a product because "this unspecified defect could encompass any one of hundreds, if not thousands, of component parts"); Lewis, 2009 WL 2231701, at *4 (dismissing claim as conclusory where the Plaintiff alleged only that drug was "inherently dangerous" because (1) it caused disease and (2) the "negative consequences of high doses of [the drug] outweigh[ed] the benefits").

To satisfy the second element, a the Plaintiff must plead "facts alleging the existence of a feasible alternative design." Reed, 839 F. Supp. 2d at 578; see also Cowan v. Costco Wholesale Corp., No. 15-CV-5552, 2017 WL 59080, at *2 (E.D.N.Y. Jan. 5, 2017) (concluding feasible alternative design was adequately pleaded where the Plaintiff identified combustible gas in cooking spray and alleged six feasible alternative gases, that if used, "would have produced a safer design[]"); Lewis, 2009 WL 2231701, at *4 (dismissing claim where the Plaintiff failed to plead that the Defendant could have designed drug in a safer manner); Surdo, 215 WL 5918318, at *4 (dismissing claim where the Plaintiff did not plead an alternative feasible design); Am. Guar. and Liab. Ins., 2010 WL 5480775 at *3 (dismissing claim where the Plaintiffs "d[id] not specify a

particular design defect, nor d[id] they make any mention of a feasible alternative design.").

As other courts have noted, "for purposes of analyzing a design defect claim, theories of strict liability and negligence are virtually identical." <u>Lewis</u>, 2009 WL 2231701, at *4.

## ii. Application to the Plaintiffs' claims

The Defendants argue that the Plaintiffs have failed to identify a specific design defect, alleging only a general "defect" in the amended complaint, and that they have failed to identify an alternative feasible design. The Plaintiffs argue that they sufficiently alleged a design defect— i.e., that Tide Pods' "best-in-class film" does not dissolve effectively in colder water temperatures or in shorter washing cycles and this failure results in blue and purple stains. (Pls.' Opp'n at 4, 9– 10, ECF No. 32). The Plaintiffs do not address, in any way, the Defendants' arguments about an alternative feasible design. The Court finds that, reading the amended complaint liberally, the Plaintiffs have sufficiently alleged a design defect, but have failed to adequately plead an alternative feasible design.

The amended complaint includes excerpts from consumer complaints taken from a February 2014 Consumer Reports article; an April 2014 Consumerist article; and seventeen anonymous posts made to the Defendants' website in 2014. Of the articles and posts quoted, five note that the Tide Pods "dissolve poorly," (Am. Compl. ¶¶ 34, 37, 40), while six suggest that the blue and purple stains are a result of the product's film's failure to dissolve, (<u>id.</u> ¶¶ 34, 37, 40).

The amended complaint also includes several of P&G's responses to these complaints. (<u>Id.</u> ¶¶ 35, 40). P&G has, on at least two occasions, acknowledged the failure of a pac to dissolve. (<u>Id.</u> ¶¶ 37 ("I'm sorry your Tide Pods didn't dissolve and stained some of your laundry."), 40 ("If you get any plastic dried on your clothes, be sure to soak the garment in hot water for at least an hour.")). P&G has also, on occasion, further advised that consumers not use Tide Pods in certain

washing cycles (i.e., prewash cycles, delicate cycles, and quick cycles) or below certain temperatures.  (Id. ¶¶ 36, 37, 40).

Each of the named Plaintiffs allegedly found "unused portion[s] of the Tide Pods,"  (Id. ¶¶ 9, 16, 22), when their clothes were stained.  Furthermore, the amended complaint repeatedly references P&G's claims that Tide Pods feature a best-in-class film that dissolves and works effectively.  Reading the complaint as a whole, it is clear that the Plaintiffs claim that the stains were caused by the Tide Pods' failure to dissolve, which plausibly alleges that the product posed a substantial likelihood of harm and that the defective design was a substantial factor in causing the Plaintiffs' injuries.  Simon, 990 F. Supp. 2d at 403.

However, the Plaintiffs have not alleged that a feasible alternative design exists.  Nor do they argue that any exception to this requirement applies to their claims.  Therefore, the Plaintiffs have failed to state a claim for design defect, whether under a theory of negligence or strict liability.  Accordingly, the Defendants' motion to dismiss the Plaintiffs' design defect claims pursuant to Rule 12(b)(6) is granted.

### b.  Manufacturing Defect

#### i.  Legal Standard

"To plead and prove a manufacturing flaw under either negligence or strict liability, the plaintiff must show that [(1)] a specific product unit was defective as a result of 'some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction,' and [(2)] that the defect was the cause of plaintiff's injury." Colon, 199 F. Supp. 2d at 85 (quoting Caprara v. Chrysler Corp., 52 N.Y.2d 114, 129, 436 N.Y.S.2d 251, 417 N.E.2d 545 (N.Y. 1981)).  Because "a manufacturing defect exists when the unit in question deviates in quality and other performance standards from all of the other identical units,"  Cavanagh, 2014

WL 2048571, at *3, a claim devoid of allegations that a particular unit differed when compared to others in the same product line will be dismissed, see e.g., Cowan, 2017 WL 59080, at *4 (dismissing manufacturing defect claim where the Plaintiff failed to plead that the can of cooking spray she purchased differed from other units of the same cooking spray in the market). A plaintiff need not, however, plead specific facts about the manufacturing process, improper workmanship, or use of defective materials at the motion to dismiss stage if doing so would require technical or scientific knowledge about the inner workings of the product. See Williamson v. Stryker Corp., No. 12 CIV. 7083 CM, 2013 WL 3833081, at *4 (S.D.N.Y. July 23, 2013) (citing Ohuche v. Merck & Co., No. 11 CIV. 2385 SAS, 2011 WL 2682133, at *2–3 (S.D.N.Y. July 7, 2011)). "[A] manufacturing defect claim pled in the alternative to a design defect claim is subject to dismissal at the motion to dismiss stage where the complaint makes only 'offhand references to manufacturing defects' and the purported class includes 'all purchasers or lessees' of the [products] at issue." Catalano v. BMW of N. Am., LLC, 167 F. Supp. 3d 540, 555 (S.D.N.Y. 2016) (emphasis in original).

The standards for assessing a manufacturing defect under strict liability and negligence theories are similar. Id.

### ii. The Plaintiffs Have Abandoned their Manufacturing Defect Claims

In their opening brief, the Defendants argue that the Plaintiffs' manufacturing defect claims should be dismissed for several reasons. (Supp. Mem. 7). The Plaintiffs do not respond to any of these arguments, nor do they make any reference to their manufacturing defect claims in their opposition papers. Because the Plaintiffs never defended their manufacturing defect claims, the Court concludes that the Plaintiffs have abandoned these claims. See Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003); see also Douglas v. Victor Capital Grp., 21 F. Supp. 2d

379, 393 (S.D.N.Y.1998) (collecting cases).

In any event, these claims are not plausibly alleged because the Plaintiffs failed to allege how the units they purchased were manufactured differently from other Tide Pods. See Cavanagh, 2014 WL 2048571, at *3; Cowan, 2017 WL 59080, at *4. That is, they do not allege that the Tide Pods stained their clothes because of a mishap in construction, or because of some mistake. Instead, they seemingly contend that *all* Tide Pods are defectively designed. In that way, the Court does not see any way forward for the Plaintiffs' manufacturing defect claims.

Accordingly, the Defendants' motion to dismiss the Plaintiffs' manufacturing defect claims is granted

### c. Failure to Warn

#### i. Legal Standard

"To prevail on a failure to warn claim, a the Plaintiff must prove that '(1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm.'" Goldin, 2013 WL 1759575, at *5 (quoting State Farm Fire & Cas. Co. v. Nutone, Inc., 426 F. App'x 8, 10 (2d Cir. 2011)). "[A] failure to warn cause of action is appropriately dismissed if a plaintiff does not plead facts indicating how provided warnings were inadequate." Reed, 839 F. Supp. 2d at 575 (citation omitted). "Failure to warn theories are identical under strict liability and negligence theories of recovery." Lewis, 2009 WL 2231701, at *5 (quoting Colon, 199 F. Supp. 2d at 84).

#### ii. The Plaintiffs Have Abandoned their Failure to Warn Claims

In the amended complaint, the Plaintiffs appear to allege that Tide Pods possessed a defect, which the Defendants failed to disclose to consumers, resulting in a failure to warn.

The Defendants contend that the Plaintiffs have not properly alleged a failure to warn claim

for several reasons. (Defs.' Mem in Supp. of Mot. to Dismiss at 4–8, 8 n.2). The Plaintiffs neither respond to these arguments, nor make any reference to their failure to warn claims in their opposition. Because the Plaintiffs never defended the failure to warn claims, the Court concludes that the Plaintiffs have abandoned these claims.

Accordingly, the Defendants' motion to dismiss the Plaintiffs' claims for failure to warn pursuant to Rule 12(b)(6) is granted.

### 4. <u>Breach of Implied Warranties</u>

#### a. Breach of the Implied Warranty of Merchantability

##### i. Legal Standard

Neither party addresses whether New York, Florida, or California law governs the Plaintiffs' claims for breach of the implied warranty of merchantability. The parties, however, rely exclusively on New York law when addressing this claim. In any event, a review of the laws of all three jurisdictions reveals that they are equivalent for the purposes of this motion. <u>See</u> CAL. COM. CODE § 2314 (adopting and codifying Uniform Commercial Code § 2-314); FLA. STAT. ANN. § 672.314 (same); N.Y. U.C.C. § 2-314 (same).

"The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." <u>Wojcik v. Empire Forklift, Inc.</u>, 783 N.Y.S.2d 698, 700 (N.Y. App. Div. 2004). Notably, the warranty provides for only "'a minimal level of quality'" and "is not a guarantee that the product will be perfectly safe or 'fulfill [a] buyer's every expectation." <u>Ferracane v. United States</u>, No. 02-CV-1037, 2007 WL 315570, at *8 (E.D.N.Y. Jan. 30, 2007) (quoting <u>Denny v. Ford Motor Co.</u>, 87 N.Y.2d 248, 258, 639 N.Y.S.2d 250, 662 N.E.2d 730, 736 n.4 (N.Y. 1995)).

For a good to be merchantable, it must be, *inter alia*, "fit for the ordinary purposes for

which such goods are used." N.Y. U.C.C. § 2–314(2)(c). The warranty of fitness for an ordinary purpose "provides for a minimal level of quality," <u>Denny</u>, 87 N.Y.2d at 258 n.4 (internal citation and quotation marks omitted), and "is a guarantee by the seller that its goods are fit for the intended purpose for which they are used," <u>Wojcik</u>, 14 A.D.3d at 66 (internal quotation marks and citation omitted).

In pleading a claim for breach of the implied warranty of merchantability, a plaintiff must show, that "a defect in the product was a substantial factor in causing the injury and . . . that the defect complained of existed at the time the product left the manufacturer or entity in the line of distribution being sued." <u>Macaluso v. Herman Miller, Inc.</u>, No. 01 Civ. 11496, 2005 WL 563169, at *4 (S.D.N.Y. Mar. 10, 2005) (quoting <u>Tardella v. RJR Nabisco, Inc.</u>, 178 A.D.2d 737, 576 N.Y.S.2d 965, 966 (N.Y. App. Div. 1991)). "The defect may arise from 'a manufacturing flaw, improper design, or a failure to provide adequate warnings regarding use of the product'—again similarly to strict products liability or negligence claims." <u>DiBartolo v. Abbott Labs.</u>, 914 F. Supp. 2d 601, 627 (S.D.N.Y. 2012) (quoting <u>Adesina v. Aladan Corp.</u>, 438 F. Supp. 2d 329, 345 (S.D.N.Y. 2006)).

The law recognizes that claims for breach of an implied warranty and products liability claims are not identical. <u>Denny</u>, 87 N.Y.2d at 259, 262 ("While the strict products concept of a product that is 'not reasonably safe' requires a weighing of the product's dangers against its over-all advantages . . . [the implied warranty concept] focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners.") For instance, an implied warranty claim, unlike a design defect claim, will not turn on the feasibility of alternative designs or a manufacturer's reasonableness in marketing a product, despite its unsafe condition. <u>Id.</u>

*ii. Application to the Plaintiffs' Merchantability Claims*

The Defendants argue that the Plaintiffs' claims for breach of the implied warranty of merchantability fail for two reasons: (1) the Plaintiffs have failed to state a claim for products liability and the Plaintiffs' warranty claims fall with those claims; and (2) the Plaintiffs' allegations, at most, amount to an infinitesimal number of failures. The Plaintiffs argue that their warranty claims do not fall with their products liability claims.

As stated above, the Court has found that the Plaintiffs have adequately plead that a design defect existed. The Court granted the Defendants' motion to dismiss the Plaintiffs' design defect claims based solely on the Plaintiffs' failure to adequately allege a feasible alternative design. As that element is not required when pleading a claim for a breach of the implied warranty of merchantability, the Plaintiffs' merchantability claims do not necessarily fall with their products liability claims.

In the Court's opinion, the Plaintiffs have alleged sufficient facts to plausibly allege a breach of the implied warranty of merchantability. The Tide Pods had a defect—they failed to completely dissolve and stained clothes as a result. As Tide Pods are designed and marketed to clean clothes, it stands to reason that if they leave permanent stains, they are not fit for their ordinary purpose. This defect, moreover, existed at the moment the Tide Pods left P&G's factories.

The Plaintiffs' claims also survive based on their allegation that the Defendants failed to warn consumers that the Tide Pods may not completely dissolve. As illustrated in the amended complaint, when consumers complained to P&G about the defect, P&G gave them several instructions which were not included on the packaging. The Plaintiffs plausibly allege that had they received such a warning on the label, their clothes would not have been stained.

As to the Defendants' argument that the Plaintiffs' complaints represent an infinitesimal number relative to the total number of consumers, the Court disagrees. The Plaintiffs have presented numerous complaints from consumers who experienced similar defects. Furthermore, the Defendants have not presented any authority supporting their proposition that a certain number of complaints is necessary at this stage of the litigation. The two cases cited by the Defendants dealt with motions for summary judgment. (Defs.' Mem. in Supp. of Mot. to Dismiss at 8–9 (citing Viscusi v. Proctor & Gamble, No. 05-CV-01528, 2007 WL 2071546, at *13 (E.D.N.Y. July 16, 2007); Pai v. Springs Indus., Inc., 795 N.Y.S.2d 98, 100 (N.Y. 2005)).

In the Court's view, the number of staining instances presented by the Plaintiffs are sufficient at the pleadings stage. Therefore, the Court finds that the Plaintiffs have alleged sufficient facts to plausibly bring claims for breach of the implied warranty of merchantability. Accordingly, the Defendants' motion to dismiss those claims pursuant to Rule 12(b)(6) is denied.

### b. Breach of the Implied Warranty of Fitness for a Particular Purpose

#### i. Legal Standard

Neither party addresses whether New York, Florida, or California law governs the Plaintiffs' claims for breach of the implied warranty of fitness for a particular purpose. The parties, however, rely on California and New York law when addressing this claim. In any event, a review of the law of all three jurisdictions reveals that they are equivalent for the purposes of this motion. See CAL. COM. CODE § 2314 (adopting and codifying Uniform Commercial Code § 2-314); FLA. STAT. ANN. § 672.314 (same); N.Y. U.C.C. Law § 2-314 (same).

"To establish a claim for the breach of an implied warranty of fitness for a particular purpose, 'the buyer must establish that the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods are required and that the buyer was justifiably

relying upon the seller's skill and judgment to select and furnish suitable goods, and that the buyer did in fact rely on that skill.'" Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoe Co. LLC, No. 05-CV-837, 2007 WL 1834599, at *9 (N.D.N.Y. June 26, 2007) (quoting Saratoga Spa & Bath v. Beeche Sys. Copr., 656 N.Y.S.2d 787, 790 (N.Y. App. Div. 1997)). Where a plaintiff fails to plead that a defendant knew of the particular purpose for which that plaintiff was buying a product, a complaint will be dismissed. See e.g., Catalano, 167 F. Supp. 3d at 558 (finding, as an alternative ground for dismissal, that the plaintiff did not plausibly allege that the Defendant "could have been aware of any particular purpose for which [the plaintiff] sought to use his vehicle beyond the extent to which it would be aware of any buyer's purpose for purchasing a BMW vehicle" when the defendant never engaged directly with the Plaintiff).

*ii. Application to the Plaintiff's Claims*

The Defendants, repeating their arguments used to challenge the Plaintiffs' implied warranty of merchantability claims, contend the Plaintiffs' claims for breach of the implied warranty for a particular purpose fail for two reasons: (1) the Plaintiffs have failed to state a claim for products liability and the Plaintiffs' warranty claims fall with those claims; and (2) the Plaintiffs' allegations, at most, amount to an infinitesimal number of failures. In response, the Plaintiffs assert that the claims are sufficiently pled. The Court has already found that neither of those arguments are persuasive here. As the Defendants do not raise any other arguments in support of their motion to dismiss the Plaintiffs' claims for breach of the implied warranty of fitness for a particular purpose, that portion of their motion is accordingly denied.

**5. Consumer Protection Laws**

The Plaintiffs also allege violations of the consumer protection laws of three jurisdictions—California, Florida, and New York.

In order to state a claim under CLRA and FDUTPA, a the Plaintiff must allege: "(1) a deceptive act or practice, (2) causation, and (3) actual damages." Stoltz v. Fage Dairy Processing Industry, S.A., No. 14-CV-3826, 2015 WL 5579872, at *14 (E.D.N.Y. Sept. 22, 2015); see also Bower v. AT&T Mobility, LLC, 196 Cal. App. 4th 1545, 127 Cal. Rptr. 3d 569 (Cal. Ct. App. 2011) ("An individual seeking to recover damages under the [California Consumers Legal Remedies Act] . . . [must show (1)] a misrepresentation[,] . . . [(2) actual injury[,] . . . [and (3)] . . . that the [the Defendant's deceptive conduct] . . . caused them harm."); Lustig v. Bear Stearns Residential Mortg. Corp., 411 F. App'x 224, 225 (11th Cir. 2011) ("A consumer claim for damages under [the Florida Deceptive and Unfair Trade Practices Act] has three elements: (1) a deceptive ac or unfair practice; (2) causation; and (3) actual damages." (citation omitted)).

To state a claim under New York's General Business Law ("GBL"), a the Plaintiff must allege "(1) that the act, practice or advertisement was consumer-oriented; (2) that the act, practice, or advertisement was misleading in a material respect, and (3) that the Plaintiff was thereby injured." Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000).

Additionally, California's UCL prohibits business practices which are fraudulent, unlawful, or unfair.  "A claim based upon the fraudulent prong of the UCL may be brought based upon conduct akin to common-law fraud or an alleged course of conduct that is likely to deceive members of the public.  Accordingly, the Plaintiffs must allege with specificity that the Defendants' misrepresentations or omissions were likely to deceive members of the public." Berenblat v. Apple, Inc., Nos. 08-CV-4969 & 09-CV-1649, 2010 WL 1460297, at *8 (N.D. Cal. 2010) (quoting Daugherty v. Am. Honda Motor Co., 144 Cal. App. 4th 824, 838 (Cal. Ct. App. 2006) and citing Bardin v. DaimlerChrysler Corp., 135 Cal. App. 4th 1255, 1274 (Cal. Ct. App. 2006)); see also  Punian v. Gillette Co., No. 14-CV-05028-LHK, 2016 WL 1029607, at *3 (N.D.

Cal. Mar. 15, 2016) ("Generally a violation of . . . the CLRA is also a violation of the fraudulent prong of the UCL.").

The unlawful prong of California's UCL "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163, 180 (Cal. 1999). Here, the Plaintiffs' unlawfulness claims are premised on violations of California Civil Code §§ 1709 and 1710, as well as California Commercial Code § 2313.

While the standard for determining whether a practice is unfair under the UCL is somewhat unsettled, courts applying this prong continue to employ a traditional balancing test to claims brought by consumers. See Aguilar v. General Motors, LLC, No. 13-CV-437, 2013 WL 5670888, at *6 (E.D. Cal. Oct. 16, 2013) (recognizing that the California Supreme Court's decision in Cel-Tech is limited to claims brought by competitors). Under this traditional balancing test, "the determination whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." Id.

### a. CLRA, FDUTPA, the GBL Claims, and the Fraudulent Prong of UCL

#### i. Legal Standard for Deceptive or Misleading Practice

CLRA, FDUTPA, the GBL, and the fraudulent prong of the UCL all require a the Plaintiff to allege a deceptive or misleading business practice. Because this element is common to several of the Plaintiffs' consumer protection claims, the Court addresses it first.

Under the relevant laws of each state, an affirmative misrepresentation or omission is misleading if it is likely mislead a reasonable consumer acting reasonably under the circumstances. See Stoltz, 2015 WL 5579872, at *14. An omission is only actionable, however, if a the Defendant

had a duty to disclose the omitted fact. <u>Punian</u>, 2016 WL 1029607, at *9. "A duty to disclose arises . . . when the Defendant had exclusive knowledge of material facts not known to the Plaintiff; [or] when the Defendant actively conceals a material fact from the Plaintiff." <u>Id.</u> (citation omitted). The Court notes that with the exception of the GBL claims, all the Plaintiffs' consumer protections claims, which sound in fraud are subject to the heightened pleading requirements of Rule 9(b). However, the Defendants do not move for dismissal based on the Plaintiffs' failure to meet the heightened pleading standard of Rule 9(b), and therefore, the Court does not reach the question of whether the Plaintiffs meet that standard.

### ii. As to whether the Plaintiffs Have Plausibly Plead Any Misrepresentations or Omissions

The amended complaint references two affirmative statements made by the Defendants: (1) Tide Pods' packaging describes the product as a "detergent," "stain remover," and "brightener"; and (2) Tide Pods' packaging and a press release from 2012 represent that Tide Pods dissolve in all water temperatures. (Am. Compl. ¶¶ 30–31). The Plaintiffs contend the amended complaint references two omissions: (1) the Defendants failed to disclose that Tide Pods do not dissolve in all water temperatures—in particular, the Defendants failed to disclose that Tide Pods do not dissolve in colder water temperatures; and (2) the Defendants failed to disclose that Tide Pods do not dissolve in all washing cycles—in particular, the Defendants failed to disclose that Tide Pods do not dissolve in shorter washing temperatures.

The Defendants move to dismiss on three separate grounds: (1) the Plaintiffs' claims fail because the Plaintiffs have failed to allege any underlying defect; (2) the Plaintiffs' claims fail because the Defendants had no duty to disclose a non-existent defect; and (3) even assuming Tide Pods possess a defect, the Plaintiffs' claims fail because the Defendants had no duty to disclose a defect of which they had no knowledge.

The Plaintiffs argue that "the issue is whether the product does as P&G represented—clean, brighten and remove stains from laundry in all temperatures. It does not." (Opp'n 9). The Plaintiffs further contend that their omission-based claims are adequately alleged because (1) alleging a defect is not a necessary element of a consumer protection claim; (2) there is no duty to disclose requirement under Florida law; and (3) the Defendants' had a duty to disclose because they had exclusive knowledge of material facts and actively concealed those material facts from the Plaintiffs.

As to the Defendants' first two points, the Court has already found that the Plaintiffs have sufficiently alleged an underlying defect—that in certain situations, the Tide Pods failed to dissolve. Therefore, the only question that remains is whether the Defendants knew of the underlying defect.

The Defendants state that a collection of consumer complaints is insufficient to impute knowledge of a defect to P&G. The Court disagrees. Under some circumstances, allegations of consumer complaints directed at a defendant are sufficient to establish a defendant's knowledge at the pleading stage. See, e.g., Wilson v. Hewlett–Packard Co., 668 F.3d 1136, 1146 (9th Cir. 2012) (discussing with approval cases finding exclusive knowledge successfully alleged from allegations of consumer reports and testing results); Catalano, 167 F. Supp. 3d at 562 (finding that the complaint adequately alleged that the defendant BMW knew of the defect in the subject vehicle where numerous complaints were made to the National Highway Transportation Safety Administration and on other consumer forums, and where BMW had told its dealers about the defect); Aguilar, 2013 WL 5670888 at *5–6 (finding that defendant knew of the defect because of, *inter alia*, consumer complaints).

The Court finds that those circumstances are present here. The Plaintiffs provided

numerous complaints to which P&G responded in their amended complaint. P&G apparently acknowledged the defect in several instances, warning customers to not overload the washing machine, and not to use exceptionally cold water. As noted above, these directions were allegedly not provided with the product.

Therefore, the Court finds that the Plaintiffs have sufficiently alleged that Tide Pods had a defect, and that the Defendants were aware of it. As those are the only two grounds upon which the Defendants move to dismiss the Plaintiffs' statutory consumer protection claims, that portion of their motion is accordingly denied.

### 6. Unjust Enrichment

"The basis of a claim for unjust enrichment is that the Defendant has obtained a benefit which in 'equity and good conscience' should be paid to the Plaintiff." Corsello v. Verizon N.Y. Inc., 18 N.Y.3d 777, 790 (N.Y. 2012) (collecting cases). In New York, "an unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Id.; see also Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp. 3d 467, 472 (S.D.N.Y. 2014) ("Certainly, if in New York courts the instant claim for unjust enrichment would be unavailable—as here, where the Plaintiff simply restates elements of other claims—it must equally be unavailable in the Federal courts.").

Although the parties rely primarily on New York law, in their opposition memorandum, the Plaintiffs make passing reference to Florida and California law. The Plaintiffs cite Stoltz., 2015 WL 5579872, which dismissed the Plaintiffs' New York unjust enrichment claim as duplicative of a common law negligent misrepresentation claim, but upheld the Plaintiffs' Florida and California unjust enrichment claims.

Because the Court grants leave to amend with regard to the Plaintiffs' products liability

claims, see infra, and these claims may ultimately bear on the Plaintiffs' unjust enrichment claims, the Court reserves decision on whether to dismiss the Plaintiffs' unjust enrichment claims.

**B.  As to the Defendants' Motion to Strike the Class Allegations**

**1.  Rule 12(f) in the Class Action Context**

Rule 12(f) provides that a court may "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  When considering a Rule 12(f) motion, the standard applied is the "mirror image" of the standard applied to a Rule 12(b)(6) motion. FED. R. CIV. P. 12(f); Sony Fin. Srvcs., LLC, v. Multi Video Group, Ltd., 2003 WL 22928602, *8 (S.D.N.Y. Dec.13, 2003).  However, "[m]otions to strike under Rule 12(f) are rarely successful," Reynolds v. Lifewatch, Inc., 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015), particularly in the class-action context where such a motion "'requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'"  Reynolds, 136 F. Supp. 3d at 511 (quoting Belfiore v. Procter & Gamble Co., 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) (further citations omitted)).  "Put differently, motions to strike class allegations are often denied as premature."  Id.  Accordingly, "to succeed on a motion to strike class allegations, a defendant must 'demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery.'"  Id. (quoting Mayfield v. Asta Funding, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015) (internal alterations omitted)).

**2.  Class Certification and Rule 23**

In order for a class to be certified, the party seeking certification must comport with the requirements of Federal Rule of Civil Procedure 23. Federal Rule of Civil Procedure 23(a)

provides that:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>> (1) the class is so numerous that joinder of all members is impracticable;
>> (2) there are questions of law or fact common to the class;
>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

### 3. Standing in the Class Context

Here, the Defendants argue that not all members of the Plaintiffs' proposed class have standing. Article III, Section 2 of the Constitution limits federal jurisdiction to actual cases and controversies. U.S. CONST. ART. III § 2. It is well-established that:

> the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (internal citations and quotation marks omitted); see also Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ("In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit.").

A class action suit must also meet these requirements. See Allen v. Wright, 468 U.S. 737, 750, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984) (discussing standing requirement in class action context). That is, "no class may be certified that contains members lacking Article III standing."

Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir. 2006) (collecting cases); see also Calvo v. City of New York, No. 14-CV-7246 (VEC), 2017 WL 4231431, at *3 (S.D.N.Y. Sept. 21, 2017) ("Put differently, 'Article III's jurisdictional requirements [apply] to each member of a class.'" (quoting In re Literary Works in Elec. Databases Copyright Litig., 509 F.3d 116, 126 (2d Cir. 2007)). Ultimately, the question of standing must "be examined through the prism of the class definition and, in this Circuit, a class cannot be certified if any person captured within that definition lacks Article III standing." Calvo, 2017 WL 4231431, at *3 (citing Denney, 443 F.3d at 263–64.

### 4. Application to the Plaintiffs' Class Allegations

As stated above, motions to strike class allegations are only granted where it is clear "from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery." Reynolds, 136 F. Supp. 3d at 511 (quoting Mayfield, 95 F. Supp. 3d at 696 (internal alterations omitted)). The Defendants contend, *inter alia*, that the Plaintiffs would be unable to ever certify a class because the proposed class lacks standing. Specifically, the Defendants argue that under the Plaintiffs' proposed definition of the class, many or most of the class members would not have suffered any injury. In opposition, the Plaintiffs contend that a lack of injury is not a bar to establishing a class, and that all of the members of the proposed class have at least suffered the injury of paying an inflated price. The Court finds that the members of the Plaintiffs' proposed class have standing.

The Plaintiffs seek a nationwide class defined as "[a]ll persons in the United States who purchased Tide Pods laundry detergent from the time that they were first distributed for purchase by the public, in mid-March 2012 through the present." (Am. Compl. ¶ 58-A). The Plaintiffs also seek to represent subclasses in New York, Florida, and California, and those subclasses are defined

in the same way as the nationwide class. As the Plaintiffs admit, millions of individuals have purchased Tide Pods from March 2012 through the present, but only hundreds have experienced staining on their clothes due to the alleged defect.

First, the Court notes that courts in this circuit "have construed the payment of a premium price to be an injury in and of itself." Belfiore, 94 F. Supp. 3d at 447 (citing Koenig v. Boulder Brands, Inc., 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014); Rodriguez v. It's Just Lunch, Int'l, 07–CV–9227, 2010 WL 685009, at *9 (S.D.N.Y. Feb. 23, 2010)). That is, where plaintiffs allege that customers paid a premium price based on a misrepresentation, those customers can have standing under Article III. Therefore, all of the members of the class under the Plaintiffs' proposed definition have standing.

More importantly, even if the Court were to find that the Plaintiffs' definition of the class was overly broad, and included class members who did not have standing, that would not require the Court to strike the class allegations. This is because it is within the Court's discretion to modify the class definition. See Blagman v. Apple Inc., No. 12 CIV. 5453 ALC JCF, 2013 WL 2181709, at *6 (S.D.N.Y. May 20, 2013) (denying the defendant's motion to dismiss the class allegations for lack of standing because "th[e] court can modify the class if later it becomes clear that any of the putative class members do not have standing. [] [T]he court has other available mechanisms for determining the size or propriety of a class at the appropriate stage . . . ." (citing New Jersey Carpenters Health Fund v. Residential Capital, LLC, 288 F.R.D. 290 (S.D.N.Y. 2013); Janes v. Triborough Bridge and Tunnel Auth., 889 F. Supp. 2d 462, 466 (S.D.N.Y. 2012); Dupler v. Costco Wholesale Corp., 249 F.R.D. 29, 45 (E.D.N.Y. 2008)).

Therefore, the Court finds that the members of the Plaintiffs' proposed class have standing. The Court is able to deal with many of the Defendants' remaining arguments in a summary

fashion. While ascertainment of class members will likely be difficult, that alone is insufficient to strike class allegations. See Reynolds, 136 F. Supp. 3d at 517–18. As to typicality, even if the Court were to grant certification to a class defined to include all purchasers of Tide Pods, "Plaintiff[s], even under the microscope of a class certification motion, [are] not required to demonstrate that *all* of the putative class members had identical motivations or injuries in purchasing [the product]. One common motivation and one common injury, payment of a premium price, are sufficient." Belfiore, 94 F. Supp. 3d at 447.

Therefore, the name Plaintiffs' claims are sufficiently typical at this stage. Additionally, the Defendants have not shown that a nationwide class is impossible. See Greene v. Gerber Prod. Co., 262 F. Supp. 3d 38, 80 (E.D.N.Y. 2017) ("Before discovery into the class, it is impossible for the Court to determine how many states' laws are implicated in this action, how many of those laws vary, and how many variances are material to the factors the Court will consider in deciding whether to certify the class. Nor has Defendant yet established that the standards of liability in relevant states are sufficiently different that they would raise insurmountable case management issues or render class issues insufficiently predominant."); Steinberg v. Nationwide Mut. Ins. Co., 224 F.R.D. 67, 79 (E.D.N.Y.2004) ("When a class action raises common issues of conduct that would establish liability under a number of states' laws, it is possible for those common issues to predominate and for class certification to be an appropriate mechanism for handling the dispute." (internal quotation marks omitted)); In re Buspirone Patent Litig., 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) (same); In re LILCO Secs. Litig., 111 F.R.D. 663, 670 (E.D.N.Y. 1986) ("The spectre of having to apply different substantive law does not warrant refusing to certify a class on . . . common-law claims.").

The Court does not address the Defendants' remaining arguments at this juncture, as they

will be considered at the appropriate time—that is, after discovery, upon the Plaintiffs' motion for class certification. See Greene, 262 F. Supp. 3d at 78–80 (denying the defendant's motion to strike the class allegations because determining whether the Rule 23 requirements are met is best left to the class certification stage, and that the defendant had not demonstrated that a nationwide class was impossible); Belfiore, 94 F. Supp. 3d at 447 ("The question of whether the putative class members meet the commonality requirements of the Federal Rules will be further considered after appropriate discovery."); Mazzola v. Roomster Corp., 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) (denying the defendants' motion to strike where they argued that membership in the class would require individualized inquiries, stating that "district courts in this Circuit have frequently found that a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination" (collecting cases)); id. ("The motion to strike the class allegations should await a decision on class certification when the Court would have the benefit of a full factual record and can better assess the defendants' arguments. The defendants' motion to strike is therefore denied without prejudice to renewal after a period of preliminary discovery or in opposition to class certification.").

The Court finds that the Defendants' remaining arguments do not "address[] issues 'separate and apart from the issues that will be decided on a class certification motion,'" Chen-Oster v. Goldman, Sachs & Co., 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (quoting Rahman v. Smith & Wollensky Rest. Group, Inc., 06 Civ. 6198, 2008 WL 161230, at *3, 2008 U.S. Dist. LEXIS 2932, at *11 (S.D.N.Y. Jan. 16, 2008)), and have not demonstrated that "it would be futile to allow Plaintiffs to conduct discovery . . . ." Therefore, the Defendants' remaining argument are procedurally premature. Id.

Accordingly, the Defendants' motion to strike the class allegations pursuant to Rule 12(f) is denied.

## C. <u>Leave to Amend</u>

Leave to amend a pleading "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). The Plaintiffs have requested leave to amend in the event the Court grants any part of the Defendants' motion.

The Plaintiffs have failed to adequately plead their products liability claims. Specifically, the Plaintiffs have failed to identify a feasible alternative design. Because these deficiencies may be cured with the addition of factual allegations, the Plaintiffs are given thirty (30) days from the date of this Order to amend their complaint. <u>See</u> <u>Surdo</u>, 2015 WL 5918318 (granting leave to amend products liability claims); <u>Cavanagh</u>, 2014 WL 2048571 (same); <u>Goldin</u>, 2013 WL 1759575 (same); <u>Am. Guar. and Liab. Ins.</u>, 2010 WL 5480775 (same).

## III.  CONCLUSION

For the above stated reasons, the Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6), or in the alternative, to strike the class allegations pursuant to Rule 12(b)(f) is granted in part, and denied in part. It is granted to the extent that the Plaintiffs' products liability claims are dismissed without prejudice. The remainder of the Defendants' motion is denied.

The Plaintiffs have thirty (30) days from the date of this Order to cure any deficiencies in these claims. Additionally, the Court reserves decision on whether to dismiss the Plaintiffs' unjust enrichment claims until the motion to dismiss the Plaintiffs' products liability claims is resolved.

It is **SO ORDERED:**

Dated: Central Islip, New York

March 14, 2018

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge